AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
MICHAEL R. ADELE (BAR NO. 138339)
CHARLENE J. WILSON (BAR NO. 222497)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail:   awintersheimer@allenmatkins.com
          madele@allenmatkins.com
          cwilson@allenmatkins.com

Attorneys for Defendant
BIORX, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRISHARE, INC., a California corporation, | Case No. 2:08-cv-01252-WBS-EFB |
| Plaintiff, | Complaint filed June 4, 2008 |
| v. | **DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE PURSUANT TO FRCP RULE 12(b)(2) AND (3)** |
| BIORX, LLC, an Ohio Limited Liability Company, | |
| Defendant. | DATE:     August 11, 2008<br>TIME:     2:00 p.m.<br>DEPT:     Courtroom 5<br>JUDGE:    Hon. William B. Shubb |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

    A.   The State of California Does Not Have General Jurisdiction Over
        BioRx Because BioRx Does Not Have Sufficient Contacts With
        California ...........................................................................................................2

        1.   Mere Registration with the California Board of Pharmacy
            Does Not Automatically Confer General Jurisdiction over
            BioRx ...................................................................................................2

        2.   There is Insufficient Evidence of Any Other Contacts
            Between BioRx and California to Establish General
            Jurisdiction ..........................................................................................4

        3.   Plaintiff's Case Authority is Inapplicable and Does Not
            Support a Finding of General Jurisdiction .........................................5

    B.   This Court Does Not Have Specific Jurisdiction Over BioRx ...............................6

        1.   BioRx Has Not Purposefully Availed Itself of the Benefits
            and Privileges of California ...................................................................7

        2.   BioRx Has Not Purposefully Directed its Activities Toward
            California ...............................................................................................8

    C.   This Court Should Dismiss Plaintiff's Claim Because it Does Not
        "Arise Out of" BioRx's Attenuated Contacts with California ...............................12

    D.   The Exercise of  Personal Jurisdiction Over BioRX is Not
        Reasonable .......................................................................................................13

        1.   Purposeful Interjection ........................................................................13

        2.   Burden on Defendant ..........................................................................14

        3.   Extent of Conflict with Sovereignty of Foreign State .........................15

        4.   Forum State's Interest in Adjudication ................................................15

        5.   Most Efficient Judicial Resolution .......................................................15

        6.   Convenience and Effectiveness of Relief for Plaintiff .........................16

        7.   Availability of Alternative Forum .........................................................16

    E.   Alternatively, the Court Should Transfer This Case to the Southern
        District of California .........................................................................................16

III. CONCLUSION ....................................................................................................17

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

(i)

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3 **Cases**

4  *AMF, Inc. v. Sleekcraft Boats,*
        599 F.2d 341 (9th Cir. 1979)................................................................. 13, 14
5
   *Amini Innovation Corp., v. JS Imports, Inc.,*
6        497 F. Supp. 2d 1093 (C.D. Cal. 2007)................................................ 12

7  *Bancroft & Masters v. Augusta National,*
        223 F.3d 1082 (9th Cir. 2000)............................................................... 9, 12
8
   *Burger King Corp. v. Rudzewicz,*
9        471 U.S. 462 (1985) ............................................................................ 7

10 *Cf. Rio Props v. Rio Int'l Interlink,*
        284 F.3d 1007 (9th Cir. 2002)............................................................... 11
11
   *Core-Vent v. Nobel Industries,*
12       11 F.3d 1482 (9th Cir. 1993)................................................................. 9, 14

13 *Cybersell, Inc. v. Cybersell, Inc.,*
        130 F.3d 414 (9th Cir. 1997)................................................................. 7, 10
14
   *Data Disc, Inc. v. Systems Technology Associates,*
15       557 F.2d 1280 (9th Cir. 1977)............................................................... 6

16 *Digital Equipment Corp. v. Altavista Technology, Inc.,*
        960 F.Supp. 456 (D. Mass. 1997) ........................................................ 12
17
   *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,*
18       907 F.2d 911 (9th Cir. 1990)................................................................. 13

19 *Gates Learjet Corp. v. Jensen,*
        743 F.2d 1325 (9th Cir. 1984)............................................................... 6, 7
20
   *Goodman Ball, Inc. v. Clear Water USA, Inc.,*
21       2007 U.S. Dist. LEXIS 83996, *9-10 (N.D. Cal. 2007) ...................... 11

22 *Helicopteros Nacionales de Colombia v. Hall, S.A.,*
        466 U.S. 408 (1984) ............................................................................ 2
23
   *Insurance Company of North America v. Marina Salina Cruz,*
24       649 F.2d 1266 (9th Cir. 1981)............................................................... 14

25 *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
        408 F.3d 596 (9th Cir. 2005)................................................................. 13
26
   *Kransco Manufacturing v. Markwitz,*
27       656 F.2d 1376 (9th Cir. 1981)............................................................... 6, 7

28 *Mahroom v. Best Western Int'l, Inc.,*
        2007 U.S. Dist. LEXIS 56006, *7 (N.D. Cal. 2007)........................ 5, 6, 7, 8

(ii)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

**Page(s)**

*Morgan Stanley High Yield Secs., Inc. v. Jecklin,*
2006 U.S. Dist. LEXIS 53489 (D. Nev. July 28, 2006) ................................. 4, 7, 8

*New Tech Stainless Steel Prods. Co. v. Sun Mfg. Corp.,*
2004 U.S. Dist. LEXIS 29132, *10-11 (C.D. Cal. 2004) ................................. 11

*Panavision Int'l v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998) ................................................. 12, 15, 16

*Pebble Beach Co. v. Caddy,*
453 F.3d 1151 (9th Cir. 2006) ................................................... 7, 10

*Roth v. Garcia Marquez,*
942 F.2d 617 (9th Cir. 1991) ................................................... 15, 17

*Shute v. Carnival Cruise Lines,*
863 F.2d 1437 (9th Cir. 1988) ....................................................... 16

*Telco Communications v. AN Apple A Day,*
977 F. Supp. 404 (E.D. Va. 1997) .................................................. 11

*Tuazon v. R.J. Reynolds Tobacco Co.,*
433 F.3d 1163 (9th Cir. 2006) .................................................. 5, 6, 7

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
952 F. Supp. 1119 (W.D. Pa. 1997) ................................................. 10

**Statutes**

28 U.S.C. § 1391(b)(2). ............................................................. 18

28 U.S.C. § 1404 .................................................................. 18

28 U.S.C. § 1406 .................................................................. 18

Cal. Bus. & Prof. Code § 4112 ....................................................... 2

Cal. Bus. & Prof. Code § 4120 .................................................. 2, 3, 8

Cal. Bus. & Prof. Code § 4303 ....................................................... 3

Cal. Bus. & Prof. Code § 4320 ....................................................... 3

Cal. Bus. & Prof. Code § 4339 ....................................................... 3

Cal. Corp. Code § 17061 ............................................................. 4

Cal. Corp. Code § 17451 .......................................................... 3, 8

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

(iii)
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

## I.    INTRODUCTION

Plaintiff, Nutrishare, Inc. ("Plaintiff") greatly overstates the facts in its opposition to Defendant BioRx, LLC's ("BioRx") Motion to Dismiss.  BioRx does have very limited contacts with California, but they are minimal at most, and are not the "substantial, continuous and systematic" activities that are required to provide general jurisdiction and to drag an Ohio limited liability company into federal court in California.  BioRx is not authorized to conduct business in California, is not registered with the California Secretary of State, has no offices or employees located in the state, does not own property in the state and has done no direct marketing nor engaged in political activity of any kind in the state of California.

BioRx's limited contacts with the state of California are likewise not sufficient to subject it to the specific jurisdiction of this Court.  BioRx's NutriThrive product has only a  handful of dedicated employees, several of whom are part-time, and all of whom are located in Ohio and Massachusetts.  NutriThrive has a total of only 36 customers, the majority of whom are located in the Boston area.  NutriThrive has only 2 customers within the state of California, both of whom are located in Southern California and receive "enteral only" products and services (which Nutrishare does not provide).  NutriThrive does not currently provide any TPN products or services to customers within the state of California (contrary to Plaintiff's allegations based only on internet web searches) and does not have any contractual relationships with any local nursing agencies in California.

The fact that NutriThrive has an informational website that users in California can access, has been represented at national conferences that periodically take place in California and has sent non-competitive products to two customers in Southern California, does not demonstrate the type of "purposeful availment" necessary to establish specific jurisdiction.  Requiring this litigation to proceed in Ohio would not be unreasonable, particularly given that Plaintiff is likewise registered as a non-resident pharmacy within the state of Ohio, has an office and pharmacy located in Louisville, Kentucky, and one of the declarants in support of Plaintiff's opposition to this motion actually signed her declaration in Cleveland, Ohio.  For these reasons, BioRx requests that its motion to dismiss be granted.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-1-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

## II.    ARGUMENT

### A.    The State of California Does Not Have General Jurisdiction Over BioRx Because BioRx Does Not Have Sufficient Contacts With California.

#### 1.    Mere Registration with the California Board of Pharmacy Does Not Automatically Confer General Jurisdiction over BioRx.

As discussed in BioRx's opening brief, general jurisdiction exists when a defendant is domiciled in the forum state or his activities there are substantial, continuous, and systematic. *Helicopteros Nacionales de Colombia v. Hall, S.A.*, 466 U.S. 408, 413-14 (1984). Plaintiff does not contend, nor could it contend, that BioRx is incorporated in California, or that it has physical facilities, employees or bank accounts there. However, Plaintiff contends that "[b]ased solely on its appointment of [a process] agent, BioRx is subject to jurisdiction in California" (Pltf's Opp. (Doc. 30), p. 10). This is an obvious overstatement and misinterpretation of the law.

BioRx has registered as a non-resident pharmacy with the California State Board of Pharmacy ("Pharmacy Board"), which was required prior to the shipment of any controlled substances into California from outside the state. (*See* Cal. Bus. & Prof. Code §§ 4112(a) and (b), 4120(a); Declaration of Douglas Eric Hill in Support of Motion to Dismiss or Transfer ("Hill Decl."), ¶¶ 3-4). In connection with its application, BioRx was required to designate an agent for service of process in California. (*See id.*; Cal. Bus. & Prof. Code § 4112(c)(1)).[1] Such an agent enables the Pharmacy Board to bring legal action against a non-resident pharmacy to recover civil penalties and enjoin violations of the California Pharmacy Law (Cal. Bus. & Prof. Code §§ 4120 *et seq.*), including requesting criminal prosecution. *See, e.g.,* Cal. Bus. & Prof. Code §§ 4320, 4339.

---

[1]    The statement in BioRx's opening brief, that BioRx does not have an agent for service of process in California, was incorrect and is hereby withdrawn. BioRx is not registered with the California Secretary of State, and thus does not have an agent for service of process listed with the Secretary of State, which was confirmed by defense counsel before filing the moving papers. Counsel for BioRx was unaware at the time of filing its moving papers that BioRx had been licensed by the Pharmacy Board and designated an agent for service of process through the Pharmacy Board (Wintersheimer Decl., ¶ 2-3). Counsel incorrectly referenced Mr. Reilly's declaration in support of its misstatement. However, Mr. Reilly's declaration did not say that there was no registered agent for service of process. Rather, it correctly stated simply that BioRx is not qualified to do business in California, which it is not. (Reilly Decl. (Doc. 27-3), ¶ 2).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-2-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1    The California legislature has expressly rejected the very inference Plaintiff asks this Court

2    to make from BioRx's registration with the California Pharmacy Board as a non-resident

3    pharmacy.  Specifically, the California legislature declared that in enacting the non-resident

4    pharmacy registration requirements, it "*does not intend a license issued to any nonresident*

5    *pharmacy pursuant to this section to serve as any evidence that the nonresident pharmacy is*

6    *doing business within this state*."  (Cal. Bus. & Prof. Code § 4120(d) (emphasis added); *see also*

7    § 4161 (license issued to out-of-state manufacturer or wholesaler does not serve as evidence that

8    such entity is doing business within the state)).  Furthermore, registration with the California

9    Pharmacy Board does not give the Board unlimited jurisdiction to take action against an out-of-

10   state pharmacy.  For example, the Board may not deny, revoke or suspend a non-resident

11   pharmacy registration for conduct that causes serious bodily or psychological injury to a

12   California resident unless it has first referred the matter to the regulatory or licensing agency in the

13   state where the pharmacy is located and that agency fails to initiate an investigation within 45 days

14   thereafter.  (Cal. Bus. & Prof. Code § 4303(b)).  Accordingly, registration as a non-resident

15   pharmacy alone does not – and cannot – serve as evidence that BioRx does business within the

16   state of California for purposes of establishing jurisdiction.[2]

17       In fact, BioRx does not do business in California.  As noted above, it has *not* registered

18   with the California Secretary of State, as it would be required to do if it were doing business here.

19   (Cal. Corp. Code § 17451).  Similarly, it has not designated with the Secretary of State an agent

20   for service of process for actions such as the instant one brought by Plaintiff.  (*Id.* at § 17061).

21   Accordingly, Plaintiff's reliance upon *Morgan Stanley High Yield Secs., Inc. v. Jecklin*, 2006 U.S.

22   Dist. LEXIS 53489 (D. Nev. July 28, 2006) for the proposition that voluntary compliance with a

23   state's corporation law is a significant contact for jurisdictional purposes, is irrelevant to the

24   current situation.

25

26

27   [2]   Contrary to Plaintiff's assertion in their opposition, BioRx is unequivocally ***not*** licensed to
     "conduct sterile compounding activities within California."  They are *only* licensed as a non-
28   resident pharmacy, and are only licensed to compound drugs in their Ohio facility.  (Hill Decl.,
     ¶ 3.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
702222.01/SD
-3-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1         **2.**     **There is Insufficient Evidence of Any Other Contacts Between BioRx and California to Establish General Jurisdiction.**

2

3         In addition to Plaintiff's arguments regarding BioRx's registration with the Pharmacy

4 Board, Plaintiff provides a smattering of other alleged "evidence" of contacts with California,

5 gathered from Google searches or other hearsay sources. These alleged "facts" are inaccurate and

6 unreliable, as demonstrated herein and as detailed in the accompanying Objections to Evidence

7 filed herewith.

8         Specifically, Plaintiff asserts that BioRx has business partners and "at least four customers"

9 in California, and hypothesizes that BioRx "may have customers for its other product lines . . . in

10 California," "may have contracts or relationships with local nursing agencies, other medical

11 professionals, and vendors," and "may also have California-based employees and/or sales

12 representatives." To the contrary, NutriThrive has only two customers in California. They are

13 both located in southern California, and receive enteral only services that do not compete with

14 Nutrishare's TPN product. (Rielly Decl. (Doc. 27-3), ¶¶ 12-13; Declaration of Deborah Pfister in

15 Support of Motion to Dismiss or Transfer ("Pfister Decl."), ¶ 8).[3] To date, the total revenue

16 charged by BioRx for the NutriThrive product shipped to these customers is less than $5,000.

17 (Pfister Decl., ¶ 8). BioRx does not have any contracts or established relationships with nursing

18 agencies in California. (*Id.*, ¶ 13). BioRx has no California-based employees or sales

19 representatives. (*Id.*, ¶ 3; Rielly Decl., ¶ 2). For the twelve months ending July 31, 2008, BioRx

20 had total cash receipts of nearly $31 million – only $316.03 of which were for nutrition services

21 provided in California. (Hill Decl., ¶ 10.) NutriThrive does not conduct any direct marketing

22 targeting residents of California. It has not issued any press releases in the state, has not

23 advertised with any local forms of media, and has conducted no "direct to physician" marketing in

24 the state. (Pfister Decl., ¶ 6). Further, NutriThrive has not engaged in any form of political

25 activity in California. (*Id.*).

26

27 _____

28 [3]   In addition to the two NutriThrive customers, BioRx does have one additional customer located in Granada Hills, California, who receives in-house Immunoglobulin G (IgG) infusion services. This is not a product offered by NutriThrive or Nutrishare. (Pfister Decl., ¶ 8.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD     REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE

1    Finally, Plaintiff's contention that BioRx is "business partners" in California with Bayer

2  Healthcare (whose offices are in the Northeast) is incorrect and misleading.  The only project that

3  BioRx has ever undertaken with Bayer Healthcare was in connection with Bayer's hemophilia

4  products division.  BioRx and Bayer co-funded the publication of two children's education books

5  about hemophilia.  The books were both created, printed, written and produced in North Carolina,

6  and were given to children with hemophilia for free, in order to educate them and their families

7  about the disease.  This project has no connection to California and has no relationship to TPN or

8  NutriThrive.  (Hill Decl., ¶ 5).

9       **3.    Plaintiff's Case Authority is Inapplicable and Does Not Support a**

10      **Finding of General Jurisdiction.**

11      In support of its argument for general jurisdiction, Plaintiff cites *Tuazon v. R.J. Reynolds*

12  *Tobacco Co.*, 433 F.3d 1163, 1174 (9th Cir. 2006) and *Mahroom v. Best Western Int'l, Inc.*, 2007

13  U.S. Dist. LEXIS 56006, *7 (N.D. Cal. 2007).  These cases are inapposite and do not support

14  Plaintiff's arguments.  In *Tuazon*, the court correctly found general jurisdiction appropriate

15  because of the extensive interactions the defendant, R.J. Reynolds, had with the state of

16  Washington.  Specifically, R.J. Reynolds had been licensed to do business in Washington state

17  since 1940, had an office with up to 40 employees, advertised extensively in purely local and state

18  publications, and frequently engaged in sophisticated local political activity.  In the four years

19  prior to the litigation, the defendant had generated *$145-240 million* in net cigarette sales in

20  Washington, *each year,* and its market share in the state was higher than its market share nation

21  wide.  433 F.3d 1163, 1174.  Clearly, such facts have no relation to the current situation.

22      Similarly, in *Mahroom*, the court recognized that the defendant, Best Western Hotels, not

23  only had an agent for service of process in the state, but also regularly sent its employees and

24  agents to the state to inspect the hotel at issue in the litigation.  Most importantly, however, was

25  the court's finding that the defendant regularly conducted business in the state, as evidenced by the

26  fact that it had *ninety-four motels located within 100 miles of the courthouse*.  Moreover, neither

27  party in the action asserted that the court lacked personal jurisdiction.  Instead, the issues related

28  only to whether venue was proper and the application of a forum selection clause.  2007 U.S. Dist.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-5-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1    LEXIS 56006, *7.  Needless to say, the facts in *Mahroom* are dramatically different than the facts

2    presented here.

3    　　As detailed above, BioRx's contacts with California were clearly "more occasional than

4    continuous, and more infrequent than systematic" and therefore do not suffice to establish general

5    jurisdiction.  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-1331 (9th Cir. 1984).  For

6    instance, in *Gates*, the court concluded there were insufficient contacts to create general

7    jurisdiction, even where the contacts were dramatically greater than BioRx's.  Specifically, the

8    defendant's contacts with the state included solicitation of a distributorship agreement, multiple

9    visits to the state, purchase of parts within the state, and submission of letters and calls to the area

10   in question.  The defendant had even designated the state's law in the contract's choice of law

11   provision.  More similar to the current situation is the case of *Kransco Manufacturing v. Markwitz*,

12   656 F.2d  1376, 1377-1387 (9th Cir. 1981).  There, the Court found there was no personal

13   jurisdiction because the defendant maintained no office, home or personnel in the state, and the

14   only contacts were letters sent within the state and defendant's presence at a trade show to promote

15   and take orders for the product.  *See also Data Disc, Inc. v. Systems Technology Associates*, 557

16   F.2d 1280, 1283-1284, 1287 (9th Cir. 1977) (finding no personal jurisdiction over Florida

17   corporation with principal place of business in Virginia despite the fact that the contract at issue

18   was negotiated and executed in California, defendant's personnel visited the state on five

19   occasions, and one of defendant's employees was sent to California to work on the project for a

20   period of time).

21   　　In short, the current situation is far more similar to the *Gates* and *Kransco* cases and have

22   no relation whatsoever to the defendants in *Tuazon* and *Mahroom*.  There are simply insufficient

23   contacts between BioRx and the state of California, let alone the systematic and continuous

24   contacts necessary to establish general jurisdiction.

25   **B.    This Court Does Not Have Specific Jurisdiction Over BioRx.**

26   　　The Ninth Circuit uses a three-part test to determine if a defendant's contacts are

27   sufficiently related to the forum state to permit a district court to exercise specific jurisdiction: (1)

28   The nonresident defendant must do some act by which he purposely avails himself of the privilege

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-6-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  of conducting activities in the forum; (2) the claim must be one which arises out of or results from

2  defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

3  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997); *Burger King Corp. v.*

4  *Rudzewicz*, 471 U.S. 462, 477-78 (1985).  If any of the three requirements are not satisfied,

5  jurisdiction in the forum would deprive the defendant of due process of law.  *Pebble Beach Co. v.*

6  *Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

7         **1.    BioRx Has Not Purposefully Availed Itself of the Benefits and**

8              **Privileges of California.**

9         Plaintiff argues that BioRx purposefully availed itself of California law by applying for

10  non-resident pharmacy licenses.  (Pltf's Opp. (Doc. 30), p. 12).  In its Opposition, Plaintiff cites

11  the decision of the District of Nevada in *Morgan Stanley High Yield Secs., Inc. v. Jecklin*, for the

12  proposition that "[e]ven if . . . Defendants . . . never conducted any business in Nevada besides

13  obtaining a license, voluntary compliance with a state's corporation law is a contact which

14  facilitates significant privileges for conducting activities within that state."  2006 U.S. Dist. LEXIS

15  53489, * 7-8 (D. Nev. 2006).  In *Morgan Stanley*, the plaintiff sought to enforce a New York

16  judgment for default on a note purchase agreement against a corporate entity by piercing the

17  corporate veil and holding the individual defendants responsible.  The plaintiff argued that specific

18  jurisdiction against the individual defendants existed because they purposefully availed

19  themselves of the state's laws by their acquisition of a gaming license, conduct of business in the

20  state, ownership of a personal residence, and personal investment in the resort that was the subject

21  of the underlying judgment.  The court concluded that the defendant's registration to do business

22  within the state was sufficient because it allowed them to conduct business with the state.

23         As such, *Morgan Stanley* and likewise, *Mahroom*, 2007 U.S. Dist. LEXIS 56006 (see

24  Section A.3, *supra*), cited for a similar proposition, are inapplicable to the current situation.

25  BioRx does not regularly conduct business in California and, accordingly, has not been required to

26  and has not registered with the California Secretary of State.  (Cal. Corp. Code § 17451(a)).

27  BioRx has merely obtained permits from the Pharmacy Board as a non-resident pharmacy,

28  permitting it to ship its products into the state.  By doing so, BioRx did not subject itself to the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-7-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  jurisdiction of California courts in relation to a trademark infringement suit brought by Plaintiff.

2  As detailed above, the California legislature has explicitly cautioned that the issuance of such a

3  license is not to be used as evidence that the nonresident pharmacy is doing business within the

4  state.  (Cal. Bus. Prof. Code § 4120(d)).  Although BioRx is subject to the jurisdiction of the

5  California Pharmacy Board in relation to violations of the California Pharmacy Law, the current

6  litigation has nothing to do with BioRx's use of its pharmacy license.

7      **2.**    <u>**BioRx Has Not Purposefully Directed its Activities Toward California.**</u>

8         When a defendant has been alleged to have committed some type of tortious conduct, the

9  Ninth Circuit courts apply the "*Calder* effects" test requiring that personal jurisdiction be

10  predicated on (1) intentional actions that are (2) expressly aimed at the forum state, and (3) cause

11  harm, "the brunt of which is suffered – and which the defendant knows is likely to be suffered – in

12  the forum state." *Core-Vent v. Nobel Industries*, 11 F.3d 1482, 1486 (9th Cir. 1993); *Bancroft &*

13  *Masters v. Augusta National*, 223 F.3d 1082, 1087 (9th Cir. 2000).  Plaintiff contends that BioRx

14  has purposefully availed itself of the privileges of conducting business by intentionally infringing

15  Plaintiff's mark, with full knowledge of Nutrishare, its location, and its mark." (Pltf's Opp. (Doc.

16  30), p. 15).  Plaintiff, of course, cites no evidence in support of this allegation of intentional

17  infringement.

18         The evidence, however, shows that BioRx did not intentionally infringe Plaintiff's mark.

19  In fact, BioRx's "NutriThrive" name was selected independent of, and without any reference to,

20  Plaintiff's "Nutrishare" mark.  BioRx utilized the services of independent consultants who

21  ultimately selected the NutriThrive name based upon the "Thrive" component of the name.

22  (Pfister Decl., ¶ 15).  NutriThrive filed applications at the US Patent and trademark offices to

23  register the NutriThrive mark, and such applications were allowed, after examination by an

24  Examining Attorney, with no citation to the Nutrishare mark as being confusingly similar.

25  Further, the actual use of the marks shows the lack of intentional infringement.  The logos of the

26  two companies are in different typeface, different colors, and contain very different logo features.

27  If BioRx had intended infringement, one would expect a great deal of similarity in these features.

28  (*Id.*, ¶ 16).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-8-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1    Moreover, BioRx has not "expressly aimed" any allegedly infringing conduct at California.

2    BioRx has shipped NutriThrive product to only two customers in California, and only products

3    that do not compete with Plaintiff's Nutrishare TPN product. (Pfister Decl., ¶¶ 4-5, 8-9).  The

4    enteral product sells for approximately $600 per month, and involves the use of feeding tubes.  To

5    the contrary, the TPN product consists of feeding the patient intravenously, and sells for nearly

6    $6,000 per month. (*Id.*, ¶ 8).  Plaintiff's allegation that BioRx has sold infringing products or

7    services in California is simply untrue.

8    Nor does BioRx perform any direct marketing of NutriThrive directed at California

9    residents or physicians. (*Id.*, ¶ 6).  Although it attended the Oley Conference in San Diego,

10    California, there was no "California specific" marketing conducted during the event at any time –

11    no press releases, no advertising in local media and no meetings with doctors or potential

12    customers. (*Id.*, ¶ 6).  It has sent one letter, including an orientation package, to a person who

13    called to inquire about BioRx's NutriThrive products, and had a California address; but that

14    customer has not followed up or purchased any services from BioRx. (*Id.*, ¶ 10, Exhibit A).

15    Further, apparently that potential customer is named Katherine Bundy, and signed a declaration in

16    this matter submitted with Plaintiff's opposition papers, that was signed on July 25, 2008, in

17    Cleveland, Ohio – not California. (Bundy Decl. (Doc. 33), p. 3, line 6).  As discussed above,

18    Plaintiff's allegations that BioRx has established relationships with California nursing agencies are

19    also categorically false. (Pfister Decl., ¶ 8).

20    Finally, Plaintiff contends that BioRx's website opens them to specific jurisdiction in

21    California.  The Ninth Circuit's test for jurisdiction in cases involving websites is the "level of

22    interactivity and commercial nature of the exchange of information that occurs on the Web site to

23    determine if sufficient contacts exist to warrant the exercise of jurisdiction." *Cybersell, Inc. v.*

24    *Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997), citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,

25    952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  As Plaintiff acknowledges, a "passive" website,

26    without specific action to encourage residents of the forum state to use the website and do

27    business with the defendant, is insufficient to warrant a finding of jurisdiction. *E.g., Pebble Beach*

28    *Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).  Only an "interactive" website, where users

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-9-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  can exchange information with the host computer, is relevant for jurisdictional purposes.

2  *Cybersell,* 130 F.3d at 418.

3         BioRx's NutriThrive website does not reach the level of interactivity and commercial

4  nature contemplated by the *Cybersell* court. The NutriThrive website has a "discussion board"

5  with eight members, a "contact us" page with a listing of e-mail addresses and phone numbers and

6  a referral page. Of critical importance to this analysis is whether a user of the website can

7  purchase product or place orders on the website. Visitors to the NutriThrive site are not permitted

8  or able to purchase products over the internet. Rather, products can only be purchased with a valid

9  prescription and under controlled situations as with other pharmacy products. (Pfsiter Decl., ¶ 14).

10  *See Goodman Ball, Inc. v. Clear Water USA, Inc.*, 2007 U.S. Dist. LEXIS 83996, *9-10 (N.D. Cal.

11  2007) (finding lack of personal jurisdiction based on website that displayed products for sale and

12  allowed visitors to request further information but did not allow visitors to place orders on the

13  site); *New Tech Stainless Steel Prods. Co. v. Sun Mfg. Corp.*, 2004 U.S. Dist. LEXIS 29132, *10-

14  11 (C.D. Cal. 2004) (website that "does not permit the user to actually place product orders" and is

15  "purely information" does not rise to the level of interactivity that warrants an assertion of

16  personal jurisdiction).

17         Plaintiff alleges that BioRx's website "touts" its licenses "to conduct business in most

18  states"; and "boasts" of a clinical staff that "reaches all 50 states". While this information is

19  contained on the website, it is hardly prominent, as the Court will easily determine from a quick

20  review of Exhibit B to Okamoto's declaration (Doc. 31), and is insufficient to establish specific

21  jurisdiction. Such innocuous statements on a website are not the same as running directed,

22  purposeful advertisements within the forum state. *Cf. Rio Props v. Rio Int'l Interlink*, 284 F.3d

23  1007, 1020 (9th Cir. 2002) ("All told, RII's actions in Nevada, including its radio and print

24  advertisements, demonstrate an *insistent* marketing campaign directed toward Nevada") (emphasis

25  added). Nor is an announcement regarding a conference held within the forum state, such as the

26  Oley conference, the same as releasing multiple press releases specifically targeted at the forum

27  state. *See Telco Communications v. AN Apple A Day*, 977 F. Supp. 404, 407 (E.D. Va. 1997)

28  (multiple press releases in the forum rise to the level of regularly doing or soliciting business).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-10-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1    In fact, each of the cases cited by Plaintiff in support of its contention that BioRx has done

2    "something more" contain actions far beyond any cited by Plaintiff in support of its arguments.

3    *See Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (defendant knew that his

4    registration of Panavision's trademarks as his domain names for the sole purpose of extorting

5    money had the effect of injuring Panavision at its principal place of business in California);

6    *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (defendant

7    knew that letter sent to Network Solutions, Inc. challenging plaintiff's use of domain name was

8    targeting a California corporation); *Digital Equipment Corp. v. Altavista Technology, Inc.*, 960

9    F.Supp. 456, 462 (D. Mass. 1997) (website coupled with contract with a forum state corporation

10   agreeing to apply forum state law, soliciting forum state business through the website, and three

11   sales to forum state residents together and more constituted personal jurisdiction).  The actual

12   items contained on the BioRx website do not equate to the extensive and purposeful contacts with

13   the forum displayed in the cases cited by Plaintiff.

14   Moreover, even if the court were to find BioRx's web site is not purely passive, Plaintiff

15   still cannot show purposeful availment based upon the website alone.  *Amini Innovation Corp., v.*

16   *JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1103-1104 (C.D. Cal. 2007) (plaintiff failed to show the

17   defendant's purposeful availment or California business done via the web site; "the court is not

18   prepared to broadly hold . . . that the mere act of maintaining an interactive website that includes

19   interactive features ipso facto establishes personal jurisdiction over the sponsor of that website

20   anywhere in the United States").

21   BioRx has neither purposefully availed itself of the privileges and benefits of California

22   nor purposefully directed its activities to California.[4]

23

24   ---

[4]   Plaintiff has submitted a Declaration from its President, Rodney Okamoto, in which he

25   discusses at length BioRx's participation in an Oley conference in San Diego, California in late
     June, 2008.  Indeed, its appears from the record and from Plaintiff's Opposition that Plaintiff

26   made a calculated decision to file its Complaint on June 4, 2008, and then serve it when BioRx
     appeared for the Oley conference later that month.  As explained in BioRx's opening brief,

27   however, its participation in the Oley conference is irrelevant for purposes of the jurisdictional
     analysis because it occurred after Plaintiff filed its Complaint in this action.  *See Farmers Ins.*

28   *Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-11-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

**C.**    **This Court Should Dismiss Plaintiff's Claim Because it Does Not "Arise Out**

**of" BioRx's Attenuated Contacts with California.**

Plaintiff cites no evidence to contradict the showing made by BioRx that its two

NutriThrive customers in southern California receive enteral nutrition products only, a product

unrelated to Plaintiff's Nutrishare TPN product.  Plaintiff contends, however, that its claims

somehow arise from the product supplied to those two customers because, under *Sleekcraft*,[5]

competition of products is supposedly not required.  (Pltf's Opp. (Doc. 30), pp. 19-21).

However, in determining whether the public is likely to be confused about the source of a

product, courts assess whether the goods are related or complementary. *AMF, Inc. v. Sleekcraft*

*Boats*, 599 F.2d 341, 350 (9th Cir. 1979).  Courts also assess whether the marketing channels are

"parallel" so that "the general class of . . . purchasers exposed to the products overlap." *Id.* at 353.

Plaintiff contends that because some of its TPN customers do incidentally receive enteral

nutrition services, BioRx's provision of solely enteral services to two California customers

somehow "give rise" to Plaintiff's claims for infringement of its Nutrishare mark.  This contention

is specious, and directly contradicts the sworn testimony of Plaintiff's President that Plaintiff

focuses exclusively on TPN services.  (Okamoto Decl. in Supp. of Mot. for Preliminary Injunction

(Doc. 7), ¶ 2).  While Plaintiff may provide some limited enteral nutrition services to some of its

customers, it provides those services only in conjunction with its TPN services and only for

existing TPN customers.  (Pfister Decl., ¶ 9).  Unlike BioRx, Plaintiff does not market enteral

nutrition as a sole therapy offering, nor will Plaintiff provide enteral nutrition to customers who do

not require TPN.  (*Id.*).  In fact, BioRx has at least one enteral therapy customer in Ohio who was

formerly a Nutrishare TPN and enteral customer.  When he no longer required TPN and only

---

[5]  In a Lanham Act claim, the plaintiff must show: (1) "that it owns a valid mark, and thus a
protectable interest," and (2) "that the alleged infringer's use of the mark is likely to cause
confusion."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602
(9th Cir. 2005).  The *Sleekcraft* decision established a multi-factor test for determining
whether a user's mark is likely to cause confusion: (1) strength of the mark; (2) proximity of
the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels
used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7)
defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.
*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD    REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  required enteral nutrition, Plaintiff would no longer provide service to him.  As a result, he became

2  a customer of NutriThrive.  (*Id.*).

3       The only NutriThrive products or services that BioRx provides to its California customers

4  are stand-alone enteral products.  These products are distinct from and unrelated to the TPN

5  products distributed by Plaintiff.  BioRx's understands and believes that Plaintiff does not provide

6  enteral therapy products or services on a stand-alone basis.  Customers seeking enteral nutrition

7  are not seeking TPN, thus, the "general class of purchasers" do not overlap.  *Sleekcraft*, 599 F.2d

8  at 353.  Accordingly, Plaintiff's contention that its claims for infringement of its marks arise from

9  activities by BioRx in California has no merit whatsoever.

10  **D.      The Exercise of  Personal Jurisdiction Over BioRx is Not Reasonable.**

11       The Ninth Circuit has articulated seven factors to determine whether the exercise of

12  jurisdiction over a nonresident defendant would be reasonable, none of which is dispositive, but

13  all of which the Court must consider:

14       (1) the extent of the [defendant's] purposeful interjection into the
     forum state's affairs; (2) the burden on the defendant of defending in

15       the forum; (3) the extent of conflict with the sovereignty of the
     [defendant's] state; (4) the forum state's interest in adjudicating the

16       dispute; (5) the most efficient judicial resolution of the controversy;
     (6) the importance of the forum to the plaintiff's interest in

17       convenient and effective relief; and (7) the existence of an
     alternative forum.

18

19  *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

20       **1.      Purposeful Interjection.**

21       "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated

22  and the less reasonable is its exercise." *Insurance Company of North America v. Marina Salina*

23  *Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).  If a party has purposefully availed itself of the

24  privilege of conducting activities within the forum state, there is often no need to analyze this

25  factor separately. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991).  However, as

26  explained in detail above, BioRx has not purposefully availed itself of the privileges or

27  purposefully directed its activities within California.  The extent of BioRx's contacts within

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-13-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1   California consist of three total customers of non-TPN products[6], a visit to an Oley Conference

2   *after* Plaintiff's Complaint was filed, a passive website, and a non-resident pharmacy license and

3   accompanying agent for service of process.  These contacts fall far short of the level required to

4   show purposeful interjection.  *See Panavision*, 141 F.3d at 1323 (registration of Panavision's

5   trademarks as domain names and sending letter to Panavision in California demanding $13,000 for

6   release of domain name constitutes purposeful interjection).

7                    **2.      Burden on Defendant.**

8         BioRx has its principal place of business in the state of Ohio and has no office or

9   headquarters located within California.  It has no employees, representatives, or witnesses there.

10  Substantially all of the witnesses that BioRx would call in this action are domiciled within the

11  states of Ohio, North Carolina and Massachusetts.  All of BioRx's records and documentation

12  surrounding its marketing, advertising, and sales decisions related to NutriThrive are located in

13  Ohio.  NutriThrive currently has only 36 customers, the majority of whom are located in the

14  Boston area and has only a handful of employees, all located in either Ohio or the Boston area.

15  While email and electronic communication may lessen the burden in discovery, the expense of

16  litigating the action within California would be high.

17        Plaintiff, to the contrary, would not have the same inconvenience in litigating this matter in

18  Ohio.  Nutrishare is licensed by the Ohio State Board of Pharmacy, and has offices and a

19  pharmacy located in Louisville, Kentucky, which is approximately 100 miles from Cincinnati,

20  Ohio.  (Hill Declaration, ¶ 6).  As discussed above, while BioRx has provided no TPN services to

21  any California resident, Plaintiff formerly provided TPN services to a customer in Ohio until that

22  customer no longer required TPN and then came to NutriThrive.  Moreover, Katherine Bundy,

23  who filed a declaration on behalf of Plaintiff's opposition to this motion, signed the Declaration in

24  Cleveland, Ohio.  (Bundy Decl. (Doc. 33), p. 3, line 6).  Given the extensive costs involved in

25  litigating the matter in California, the minimal contacts that BioRx has with the state, and the fact

26

27

---

28  [6]   Two NutriThrive enteral only customers and one in-home Immunoglobulin G (IgG) infusion
      services customer.  (Pfister Decl., ¶ 8.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-14-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  that Plaintiff has connections with the state of Ohio and surrounding area, the burden on BioRx

2  would be unreasonably high.

3           **3.      Extent of Conflict with Sovereignty of Foreign State.**

4           As conceded by Plaintiff, this factor has no applicability to this analysis "because there is

5  no conflict between the sovereignty of Ohio and California." (Pltfs Opp. (Doc. 30), p. 23).

6           **4.      Forum State's Interest in Adjudication.**

7           This factor traditionally favors jurisdiction due to the fact that plaintiffs generally file

8  tortious claims in their home state and states have a strong interest in protecting their citizens from

9  injury. *See Shute v. Carnival Cruise Lines*, 863 F.2d 1437, 1446 (9th Cir. 1988).  However, this

10  factor is outweighed when compared to the unreasonable burden imposed upon BioRx in litigating

11  this matter in California and the lack of any real purposeful interjection in the state of California.

12  Plaintiff makes much of the fact that BioRx is licensed to sell its pharmacy products in all 50

13  states. Plaintiff, of course, is also licensed in most, if not all states, including Ohio.  (Hill Decl., ¶

14  6).  California has no unique interest in adjudicating Plaintiff's claims.

15           **5.      Most Efficient Judicial Resolution.**

16           "This factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d

17  at 1324.  The operative facts and evidence regarding Plaintiff's claims of alleged trademark

18  infringement and unfair competition stem from the business, marketing, advertising and sales

19  decisions of BioRx in Ohio.  Therefore, the majority of evidence and witnesses will reside in or be

20  stored within Ohio itself.  Plaintiff, of course, focuses upon its own witnesses and evidence but

21  fails to address the substantial testimony and documentary evidence that is based in Ohio, and as

22  noted above, fails to point out that one of its declarants signed her declaration in Cleveland, Ohio,

23  that Nutrishare is licensed in Ohio and that Nutrishare has offices and a pharmacy in Louisville,

24  Kentucky.  Further, given BioRx's minimal contacts with the state and the lack of credible

25  evidence of infringement, it is clear that the majority of evidence involved in this action will come

26  from Ohio or even Massachusetts, but certainly *not* from California.

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-15-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1    **6.    Convenience and Effectiveness of Relief for Plaintiff.**

2          Plaintiff claims, with no citation to authority or evidence, that this forum is the only place

3    where it will be able to "effectively litigate its state law unfair competition claims." (Pltf's Opp.

4    (Doc. 30), p. 23). This assertion is patently erroneous. Even if substantive California law were

5    deemed to apply (which is doubtful), the courts of Ohio are more than competent to follow and

6    apply California law.

7    **7.    Availability of Alternative Forum.**

8          It is the burden of the *plaintiff* to prove the unavailability of an alternative forum. *Roth,*

9    942 F.2d at 624. In its Opposition, Plaintiff argues that while BioRx may believe that this lawsuit

10   should have been filed in Ohio, that is only an issue when the forum state is shown to be

11   unreasonable. (Pltf's Opp. (Doc. 30), pp. 23-24). However, Plaintiff has made no attempt to meet

12   its burden of showing that there is no other forum available to hear its claims. Naturally, any such

13   assertion would not be credible.

14         A review of these factors taken together as a whole clearly demonstrates that forcing

15   BioRx to litigate this case in California, given its isolated and attenuated contacts there, would be

16   an unreasonable burden and a deprivation of due process.

17   **E.    Alternatively, the Court Should Transfer This Case to the Southern District of**

18   **California.**

19         Although BioRx denies that personal jurisdiction exists within the state of California,

20   should the Court find that personal jurisdiction is proper in California, venue should be held in the

21   Southern District of California. BioRx's only relevant contacts with the state of California consist

22   of a non-resident pharmacy license and related appointed process server in California, three non-

23   TPN customers, and attendance at the Oley Conference in San Diego, California. As discussed

24   above, the only customers are located in Southern California. Plaintiff's contention that BioRx has

25   other customers in the Eastern District is wrong. (Pfister Decl., ¶ 8). The mere fact that the

26   Pharmacy Board happens to be located in the Capitol city of Sacramento does not transform

27   BioRx's non-resident pharmacy licensure into a "contact" with the Eastern District – otherwise,

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-16-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1 every foreign corporation that holds a license or is qualified to do business in California would be

2 subject to suit in the Eastern District.

3        Thus, if the Court determines that these limited contacts are sufficient for general or

4 specific jurisdiction over BioRx, personal jurisdiction (and thus venue) is proper within the

5 Southern District of California, pursuant to 28 U.S.C. § 1391(b)(2).

6        The Court has discretion pursuant to 28 U.S.C. § 1406(a) to dismiss this action, or to

7 transfer it to a proper venue. Plaintiff's discussion of Section 1404 is misplaced. BioRx is not

8 seeking permissive transfer based upon the convenience of witnesses, etc.

9 **III.        CONCLUSION**

10        For all of the foregoing reasons, Defendant, BioRx respectfully requests that this Court

11 dismiss this action for lack of personal jurisdiction. Alternatively, if the Court finds that the

12 exercise of jurisdiction is appropriate, then BioRx requests that the Court dismiss the action

13 pursuant to 28 U.S.C. § 1406 or, in its discretion, transfer the action to an appropriate venue.

14

15 Dated: August 4, 2008                        ALLEN MATKINS LECK GAMBLE
                                                 MALLORY & NATSIS LLP
16

17                                        By:        s/Amy Wintersheimer Findley

18                                                AMY WINTERSHEIMER FINDLEY
                                                 Attorneys for Defendant
19                                                 BioRx, LLC

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702222.01/SD

-17-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER VENUE

1  AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
   MICHAEL R. ADELE (BAR NO. 138339)
2  CHARLENE J. WILSON (BAR NO. 222497)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   501 West Broadway, 15th Floor
4  San Diego, California 92101-3541
   Phone: (619) 233-1155
5  Fax: (619) 233-1158
   E-Mail:   awintersheimer@allenmatkins.com
6            madele@allenmatkins.com
             cwilson@allenmatkins.com
7
   Attorneys for Defendant
8  BioRx, LLC

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11

12  NUTRISHARE, INC., a California corporation,    Case No. 2:08-cv-01252-WBS-EFB

13              Plaintiff,                         Complaint filed June 4, 2008

14       v.                                        **DECLARATION OF AMY
                                                   WINTERSHEIMER FINDLEY IN
15  BioRx, LLC, an Ohio Limited Liability          SUPPORT OF DEFENDANT'S MOTION
    Company,                                       TO DISMISS OR TRANSFER VENUE
16                                                 PURSUANT TO FRCP RULE 12(b)(2) AND
                Defendant.                         (3)**
17
                                                   DATE:       August 11, 2008
18                                                 TIME:       2:00 P.M.
                                                   DEPT:       Courtroom 5
19                                                 JUDGE:      Hon. William B. Shubb

20       I, Amy Wintersheimer Findley, declare:

21       1.       I am an attorney admitted to practice before the above-captioned court, and I am a

22  partner with the law firm of Allen Matkins Leck Gamble Mallory & Natsis LLP, attorneys for

23  Defendant BioRx, LLC ("Defendant" or "BioRx") in the above-captioned action. I am one of the

24  attorneys responsible for handling this matter on behalf of Defendant. The following facts are

25  within my own personal knowledge and, if called upon to do so, I could and would competently

26  testify personally thereto under oath.

27  / / / / /

28  / / / / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702211.01/SD

DECLARATION OF AMY WINTERSHEIMER FINDLEY IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

1      2.     We were retained to work on this matter for BioRx on July 11, 2008 and have not

2 previously represented BioRx.  We are working on this matter in conjunction with BioRx's

3 primary counsel located in Cincinnati, Ohio.  Prior to filing the motion to dismiss, which

4 contained the assertion that BioRx did not have an agent for service of process in California, a

5 search of the California Secretary of State's website was conducted, to confirm that BioRx was not

6 registered as doing business in the state and that no agent for service of process had been

7 designated with the Secretary of State.  Based on that review and discussions with the client, the

8 statement was erroneously made in the moving brief that BioRx did not have an agent for service

9 of process in the state.  I was not aware that BioRx was registered with the California Board of

10 Pharmacy at that time, and was not aware that they had identified an agent for service of process

11 as a result of that registration.

12      I declare under penalty of perjury under the laws of the United States of America that the

13 foregoing is true and correct.

14      Executed on August 4, 2008 at San Diego, California.

15

16

17                   s/ Amy Wintersheimer Findley

                     AMY WINTERSHEIMER FINDLEY

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702211.01/SD

-2-

DECLARATION OF AMY WINTERSHEIMER FINDLEY IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

1 | AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
  | MICHAEL R. ADELE (BAR NO. 138339)
2 | CHARLENE J. WILSON (BAR NO. 222497)
  | ALLEN MATKINS LECK GAMBLE
3 |   MALLORY & NATSIS LLP
  | 501 West Broadway, 15th Floor
4 | San Diego, California 92101-3541
  | Phone:  (619) 233-1155
5 | Fax:  (619) 233-1158
  | E-Mail:    awintersheimer@allenmatkins.com
6 |             madele@allenmatkins.com
  |             cwilson@allenmatkins.com
7 |
  | Attorneys for Defendant
8 | BioRx, LLC

9 | UNITED STATES DISTRICT COURT

10 | EASTERN DISTRICT OF CALIFORNIA

11 |

12 | NUTRISHARE, INC., a California corporation,    Case No. 2:08-cv-01252-WBS-EFB

13 |             Plaintiff,                          Complaint filed June 4, 2008

14 |       v.                                        **DECLARATION OF DOUGLAS ERIC HILL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE PURSUANT TO FRCP RULE 12(b)(2) AND (3)**

15 | BioRx, LLC, an Ohio Limited Liability Company,

16 |             Defendant.

17 |                                                 DATE:        August 11, 2008
   |                                                 TIME:        2:00 p.m.
18 |                                                 CRTM:        5
   |                                                 JUDGE:       Hon. William B. Shubb
19 |

20 |       I, Douglas Eric Hill, hereby declare:

21 |       1.    I am the Vice President and a Member of BioRx, LLC, an Ohio limited liability

22 | company.  I work and reside in High Point, North Carolina.

23 |       2.    I oversee the operations of BioRx and, in that capacity, I was involved in the

24 | applications by BioRx for licensure with the California State Board of Pharmacy as a non-resident

25 | pharmacy (license no. 819) and as a non-resident provider of sterile compounding (license no.

26 | 99504).

27 | / / / / /

28 | / / / / /

1      3.     The non-resident pharmacy application submitted by BioRx in January, 2008 is

2  attached as Exhibit E to the Declaration of Aparna Rajagopal Durbin filed in his matter on July 28,

3  2008. This application contains my signature as Vice President and Member of BioRx. The

4  Pharmacy Board requires that a non-resident pharmacy such as BioRx obtain a non-resident

5  license before shipping any controlled substances into California from outside the state. BioRx

6  holds similar non-resident licenses in the other 49 states in which it does not reside, and it holds a

7  resident license in Ohio, where BioRx is headquartered. BioRx is registered with the California

8  Pharmacy Board as only a non-resident sterile compounding provider. I have reviewed the

9  Plaintiff's Opposition papers filed in this matter, including their contention that BioRx is "licensed

10  to conduct sterile compounding activities within the state of California". This is incorrect. We are

11  *not* licensed to conduct sterile compounding activities within the state of California. We are only

12  licensed to compound drugs in our Ohio facility.

13      4.     As a condition of non-resident licensure in California, the Pharmacy Board requires

14  that the non-resident pharmacy designate an agent for service of process in California, for the

15  purpose of enabling the Pharmacy Board to bring legal action against a non-resident pharmacy to

16  recover civil penalties and enjoin violations of the California Pharmacy Law. I understand,

17  however, that the California legislature has stated its intention that obtaining such a non-resident

18  license is not to be considered as evidence that the non-resident pharmacy is "doing business in

19  California." As detailed in the Declarations filed in this matter by Phillip C. Rielly and Deborah

20  Pfister, BioRx does not "do business" in California.

21      5.     I have reviewed the filings and declarations made by Plaintiff, Nutrishare, in this

22  matter. Plaintiff's contention that BioRx is "business partners" in California with Bayer

23  Healthcare is incorrect. Bayer Healthcare's United States consumer operations are based in

24  Morristown, New Jersey. The only project that BioRx has ever undertaken with Bayer Healthcare

25  was in connection with Bayer's hemophilia products division. BioRx and Bayer co-funded the

26  publication of two children's education books about hemophilia. The books were both created,

27  printed, written and produced in North Carolina, and were given to children with hemophilia for

28  free in order to educate them and their families about the disease. While some California residents

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702228.01/SD

-2-

DECLARATION OF DOUGLAS ERIC HILL IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1  may have received a free copy of one or both books, this project has no connection to California

2  and has no relationship to TPN or NutriThrive.

3        6.      According to Nutrishare's website, as well as my independent knowledge,

4  Nutrishare has an office, which includes a pharmacy, in Louisville, Kentucky, in addition to its

5  office in Elk Grove, California. Louisville is approximately 100 miles from Cincinnati, Ohio,

6  where BioRx is located. In addition, to my knowledge, Nutrishare, like BioRx, has pharmacy

7  licenses in most, if not all states. Attached hereto as Exhibit A is a copy of a record from the Ohio

8  State Board of Pharmacy, showing that Nutrishare has held a license in Ohio since July 20, 2001.

9        7.      Nutrishare's website (www.nutrishare.com) declares that "Nutrishare is a Home

10  infusion pharmacy that specializes exclusively in caring for long-term Home TPN consumers.

11  Our staff is able to focus ALL of our attention on improving the quality of life for long-term

12  Home TPN consumers. The "benefits" of being a Nutrishare consumer primarily comes from our

13  decision to be specialists in Home TPN care." My review of Nutrishare's website indicates that

14  the words "enteral therapy" do not appear.

15        8.      The fact that Nutrishare specializes in TPN care, as opposed to the enteral therapy

16  that BioRx also provides through NutriThrive, is further emphasized in paragraph 2 of the

17  Declaration of Nutrishare's President, Rodney Okamoto, dated June 23, 2008. Specifically, Mr.

18  Okamoto declares that Nutrishare is "a company dedicated exclusively to providing TPN-related

19  products and services to long-term TPN consumers in their homes."

20        9.      In calendar year 2007, BioRx had no cash receipts or revenue in California. The

21  company was found to not have a business or tax nexus in California by our outside auditors and

22  no state income tax return was filed.

23        10.     For the last twelve months ending July 31, 2008, BioRx's total cash receipts were

24  $30,925,970.18. Of that, only $316.03 was for nutrition services provided in California. That

25  represents 0.001% (one one-thousands of one percent). To date, the company owes no taxes in

26  / / / / /

27  / / / / /

28  / / / / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702228.01/SD

-3-

DECLARATION OF DOUGLAS ERIC HILL IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1  California, has filed no sales or income tax returns there, and to our knowledge has no sales tax

2  obligation in California.

3         Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

4  United States of America that the foregoing is true and correct.

5         Executed this 4th day of August, 2008, at High Point, NC.

6

7

8                                             DOUGLAS ERIC HILL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702228.01/SD

-4-

DECLARATION OF DOUGLAS ERIC HILL IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

# EXHIBIT A



| **Name and Address** | [back] |
|---|---|
| **Name** | NUTRISHARE, INC. |
| **Public Address** | 10519 E. STOCKTON BLVD. #110<br>ELK GROVE, CA 956249703 |
| **Business Phone** | (916) 685-5034 |
| **County** | Out of State |

### License and Registration Information

| License | First Issue Date | Current Issue Date | Expiration Date | Status |
|---|---|---|---|---|
| NTP.021277250-03 | 07/20/2001 | 12/09/2007 | 12/31/2008 | ACTIVE |

**License Type:** Non-Territorial Pharmacy - Category Three
**Responsible Party:** ROD JIN OKAMOTO RPH

### Formal Action Information

No formal action exists.

This data is an accurate representation of information currently maintained by the Ohio State Board of Pharmacy as of 8/4/2008.

This secure online license verification system conforms with The Joint Commission's current policy on "Primary Source Verification".

This information is otherwise provided as a public service and no user may claim detrimental reliance thereon.

AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
MICHAEL R. ADELE (BAR NO. 138339)
CHARLENE J. WILSON (BAR NO. 222497)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:    awintersheimer@allenmatkins.com
           madele@allenmatkins.com
           cwilson@allenmatkins.com

Attorneys for Defendant
BioRx, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRISHARE, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>BioRx, LLC, an Ohio Limited Liability Company,<br><br>                    Defendant. | Case No. 2:08-cv-01252-WBS-EFB<br><br>Complaint filed June 4, 2008<br><br>**DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE PURSUANT TO FRCP RULE 12(b)(2) AND (3)**<br><br>DATE:        August 11, 2008<br>TIME:        2:00 P.M.<br>CRTRM:     5<br>JUDGE:     Hon. William B. Shubb |

I, Deborah Pfister, hereby declare:

1.      I am the Director of Nutrition for NutriThrive, which is a product line that is offered by BioRx.  I have been employed in this capacity since April 30, 2007, and work and reside in Littleton, Massachusetts.  The following facts are within my own personal knowledge and, if called upon to do so, I could and would competently testify personally thereto under oath.

2.      I am a registered dietician and have worked in the field of home infusion therapy for nineteen years.  In my role as Director of Nutrition for NutriThrive, I have responsibility for program development, marketing, clinical management of patients and business management.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.02/SD

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1    3.      The only other BioRx employees with direct responsibility for NutriThrive are as

2    follows:  a nurse who serves as our clinical coordinator, a part-time dietician, and one full time

3    sales representative, all located in Boston; and three part-time consumer advocates, one located in

4    Massachusetts and two located in Ohio.  There is also an independent sales contractor located in

5    Salt Lake City, Utah.

6    4.      Currently, NutriThrive has a total of 36 customers to whom we provide services, 29

7    of which are "enteral only" customers.  The majority of these customers are located in the Boston

8    area.  I am personally familiar with all of the customers and the services that we provide to each.

9    In addition, I have reviewed the customer lists as well as contact lists we have of potential

10   customers.  NutriThrive does not have any current or former customers by the name of Rosemarie

11   Mielke, nor is she listed on the "contacts list" of potential customers.

12   5.      I have reviewed the information attached to the Declaration of Rodney Okamoto

13   and Ms. Durbin as relates to a woman named Jessi.  I am familiar with this woman, but she is not

14   the mother of a current customer of NutriThrive.  She has contacted NutriThrive about the

15   possibility of using NutriThrive's enteral products for her child and NutriThrive has been working

16   with her to determine if NutriThrive is an option for her child's needs.  She has not indicated any

17   need for TPN products.  Jessica informed us that she became aware of NutriThrive through the on-

18   line consumer forum found at www.parent-2-parent.com as stated in the declarations referenced

19   above.  NutriThrive has no input or involvement in that website, which is established specifically

20   for parents, and has not communicated with Jessica through that website.  NutriThrive's

21   communications with Jessica have all been by way of email.  I am not aware of and have never

22   been aware of Jessica's address.

23   6.      As noted above, I have responsibility for marketing performed for NutriThrive.

24   There has been no direct marketing of NutriThrive in California.  Press releases have been issued

25   in Ohio and Southern Florida, and possibly Boston, but no press releases have ever been issued in

26   California.  There has been no "direct to physician" marketing performed in California, although

27   we do conduct such direct marketing in Ohio, Boston and Southern Florida.  To my knowledge,

28   while NutriThrive is promoted in national trade publications and in mailers to the fifty-two Oley

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.02/SD

-2-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1  Regional Volunteers nationwide, there has been no advertising or marketing in any local

2  publications specifically directed to residents of California. We have also not engaged in any

3  political activities on behalf of NutriThrive in the state of California.

4        7.     Julie Winton is one of BioRx's Director's of Hemophilia, who is located in Oregon.

5  She has no responsibilities with respect to NutriThrive and has never performed any marketing or

6  sales functions for NutriThrive.

7        8.     The two customers that NutriThrive has in California both receive enteral nutrition

8  services. One of these customers has used NutriThrive since April, 4, 2008 and the other has used

9  NutriThrive since May 23, 2008. The expected gross revenue for these services is approximately

10  $600 per month. Accordingly, the total amount of gross revenue that NutriThrive has booked

11  from these two California customers is less than $5,000. TPN product is much more expensive

12  than enteral, with typical expected gross revenue in the range of $6,000 per month per customer.

13  BioRx has one additional customer (a non-NutriThrive customer) who receives in-home

14  Immunoglobulin G (IgG) infusion services. That customer is located in Granada Hills, California.

15        9.     I am aware that Nutrishare does provide some limited enteral nutrition services to

16  certain of its customers. However, my understanding is that it provides those services only in

17  conjunction with its TPN services and only for existing customers. Nutrishare does not market

18  enteral nutrition as a sole therapy offering, nor will Nutrishare provide enteral nutrition to

19  customers who do not require TPN. This is information that is commonly known by people in this

20  industry. I am also aware of this as a result of my communications with a NutriThrive customer

21  who was formerly a Nutrishare TPN and enteral customer. When he no longer required TPN and

22  only required enteral nutrition, Nutrishare would no longer provide service to him. As a result, he

23  became a customer of NutriThrive. This customer is located in Galloway, Ohio.

24        10.    I am responsible for sending literature to potential new customers. A caller named

25  Mary Jacobs spoke with our pharmacist located in Cincinnati, Ohio and requested information

26  about our services. She claimed to be the personal assistant to an anonymous Los Angeles-based

27  celebrity who was researching potential providers. Attached as Exhibit A is a letter that I sent on

28  / / / / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.02/SD

-3-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1    or about May 20, 2008 in response to her call.  This is the only caller from California to my

2    knowledge to whom we have sent any literature.

3         11.    I personally attended the Oley Conference in San Diego, California in June 2008 on

4    behalf of NutriThrive.  Two consumer advocates also attended the conference with me on behalf

5    of NutriThrive.  I also attended the conference the previous year when it was held in Cape Cod,

6    Massachusetts.  NutriThrive also attended a regional Oley conference in Chicago in February,

7    2008.

8         12.    NutriThrive's participation at the Oley Conference held in San Diego had nothing

9    to do with any efforts to market product specifically to California consumers.  Rather, our

10    attendance was because NutriThrive is a regular sponsor of these events, and attends these

11    conferences  regardless of where they are held, as do all major infusion companies.  At no time

12    during the conference did anyone from NutriThrive conduct any marketing specifically targeted

13    towards any California consumers.  There was no direct marketing conducted to any doctors or to

14    any consumers in California that did not attend the conference.  For instance, there were no

15    meetings set up with any local California doctors or customers or potential customers.  I do not

16    believe that the two customers that NutriThrive has in California attended the conference and we

17    did not solicit any customers of our competitors during the conference, other than marketing at our

18    booth and other Oley events as accepted practice.  In fact, Oley has specific restrictions on

19    recruiting customers of other competitors during their conferences.  I have not made and am not

20    aware of any efforts by the two consumer advocates who attended the conference with me, to

21    recruit former Nutrishare customers at the conference.

22         13.    NutriThrive does not have any established relationships with any local nursing

23    agencies in California.  NutriThrive typically establishes contracts with such nursing agencies only

24    in order to provide service to TPN customers.  As noted above, the two California customers are

25    both enteral customers and either do not require nursing assistance or, have existing nursing

26    services, for their use of our product.  Accordingly, NutriThrive has not established any

27    relationships with any nursing agencies in California.

28    / / / / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.02/SD

-4-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

1    14.    NutriThrive's website (www.nutrithrive.com) includes a discussion board feature.

2  Currently, there are eight members of the discussion board.  The website also has a "contact us"

3  page with a listing of e-mail addresses and phone numbers, and a referral page.  Visitors to the

4  NutriThrive website are not permitted or able to purchase products over the internet.  Rather,

5  products must be purchased with a valid prescription and under controlled conditions as with other

6  pharmacy products.

7    15.    I was involved in the name selection process for NutriThrive.  Attached as Exhibit

8  B hereto is a true and correct copy of the Program Description given to three graphic designers

9  who were hired to produce names and logos which portrayed health, wellness and vibrancy within

10  the context of home nutrition support.  Fifty possible names were narrowed down to eight names

11  which were presented to a focus group of nutrition professionals.  This group rated the eight

12  names and logos and overwhelmingly preferred NutriThrive due to the THRIVE component and

13  its ability to convey wellness and positive energy.

14    16.    True and correct copies of the Nutrishare and NutriThrive logos currently in use are

15  attached hereto as Exhibit C.  The logos are in different typefaces, different colors, and contain

16  very different logo features.

17    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

18  United States of America that the foregoing is true and correct.

19    Executed this 4th day of August, 2008, at Boston, MA.

20

21                                    _Deborah E. Pfister_

22                                    DEBORAH PFISTER

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.02/SD    DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

# EXHIBIT A

Mary Jacobs
% SNF 357
South Fairfax Ave. #446
Los Angeles, CA  90036

Dear Mary,

Thank you for your inquiry about NutriThrive and the care we provide. I have enclosed our informational folder as well as an overview sheet that describes our services. Our mission is to optimize the nutritional well-being through our customized approach, caring for *each* NutriThrive consumer's individual needs.

I have also enclosed our Patient Orientation Guide which is given to all new Home Parenteral Nutrition (HPN) patients. It includes an introduction to intravenous nutrition and information specific to the supplies and equipment that have been ordered. Our Nutrition Liaison will customize this booklet for your client.

In addition to our clinical team, NutriThrive also has two Nutrition Consumer Advocates who are either on parenteral nutrition themselves or, have family members who are on HPN.  Our Advocates act as liaisons between our consumers and NutriThrive, to orient new patients and families to home nutrition therapy and to ensure that they receive excellent service. Please let me know if you would like to speak to either of these knowledgeable resources.

Thanks again for your interest in NutriThrive. As NutriThrive's program creator and manager, I am proud to offer an innovative and consumer friendly approach to home parenteral nutrition. Please feel free to contact me should you need additional information.

Regards,


Deborah Pfister, M.S., R.D., C.N.S.D.
Director of Nutrition Services
(978) 501-0801
dpfister@nutrithrive.com

# EXHIBIT B

# BioRx Nutrition Support Program
## Program Description

**Mission:**
To provide a high quality clinical nutrition program specializing in the provision of home enteral and parenteral nutrition. This program focus on nutrition support from a disease-management approach, providing highly individualized products, services and programs driven by customer needs.

**Customers:**
- ✓ Consumers of enteral and parenteral nutrition products and services who are non-acute ie: requiring prolonged therapy.
- ✓ Physicians and other clinicians who care for the above consumers, specifically in the areas of GI and oncology.

**Program Foundation:**
- ✓ Nutrition Support Team approach to care- Dietitians, Nurses and Pharmacists providing collaborative patient assessment and monitoring
- ✓ Highly skilled and credentialed clinicians who provide expert care
- ✓ Cutting-edge nutritional care driven by Evidence-Based Practice
- ✓ Comprehensive nutrition support disease-management
- ✓ Individualized treatment plans and attention

**Program Goal:**
To provide high quality clinical services aimed at maximizing nutritional outcomes, minimizing complications, reducing need for high-tech nutrition support and ultimately improving consumers' quality of life.

**Competitiors:**
- ✓ Apria Healthcare:  Apria Nutrition Advantage
  www.apria.com
- ✓ Coram: Advanced Nutrition Services
  www.coramhc.com
- ✓ Critical Care Systems: Specialize Nutrition Support Services,
  www.criticalcaresystem.com
- ✓ Optioncare: Home Infusion Therapy- National Reach, Local Touch
  www.optioncare.com
- ✓ Local mom-and-pops

# EXHIBIT C



