1  AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
   MICHAEL R. ADELE (BAR NO. 138339)
2  CHARLENE J. WILSON (BAR NO. 222497)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   501 West Broadway, 15th Floor
4  San Diego, California 92101-3541
   Phone:  (619) 233-1155
5  Fax:  (619) 233-1158
   E-Mail:   awintersheimer@allenmatkins.com
6           madele@allenmatkins.com
            cwilson@allenmatkins.com
7
   Attorneys for Defendant
8  BioRx, LLC

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11

| 12 NUTRISHARE, INC., a California corporation, | Case No. 2:08-cv-01252-WBS-EFB |
|---|---|
| 13          Plaintiff, | Complaint filed June 4, 2008 |
| 14     v. | **DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| 15 BioRx, LLC, an Ohio Limited Liability Company, | |
| 16          Defendant. | DATE:      August 18, 2008 |
| 17 | TIME:      2:00 p.m.<br>DEPT:      Courtroom 5<br>JUDGE:    Hon. William B. Shubb |

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................3

    A.    The Parties ..............................................................................................3

    B.    Development of NutriThrive ...................................................................3

    C.    Unveiling of NutriThrive to the Market .................................................4

    D.    Registration of the NutriThrive Mark .....................................................4

    E.    Rollout of NutriThrive .............................................................................5

    F.    Accreditation of NutriThrive ...................................................................6

III.    PROCEDURAL BACKGROUND .......................................................................6

IV.     ARGUMENT OF LAW ........................................................................................6

    A.    A Balancing of the Equities and Hardships Requires that Plaintiff's
       Motion for Preliminary Injunction be Denied .........................................6

    B.    Plaintiff is Not Likely to Succeed on the Merits of its Claims ...............7

         1.    Plaintiff Cannot Establish a Likelihood of Confusion .................7

         2.    Even if Plaintiff Could Make a *Prima Facie* Case of
             Infringement, BioRx' Affirmative Defenses Preclude
             Injunctive Relief ........................................................................16

    C.    Plaintiff Will Not Suffer Irreparable Harm ...........................................17

    D.    A Balance of the Hardships Clearly Favors BioRx................................19

    E.    The Public Interest Would be Harmed if an Injunction is Granted.........20

V.      CONCLUSION ...................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,*
    616 F.2d 440 (9th Cir. 1980) ..................................................................... 11

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1993) ......................................................... 7, 11, 15

*Astra Pharmaceutical Products, Inc. v. Beckman Industries, Inc.,*
    718 F.2d 1201 (1st Cir. 1983) ................................................................... 14

*Barre-National, Inc. v. Barr Laboratories, Inc.,*
    773 F. Supp. 735 (D.N.J. 1991) ................................................................ 14

*Beech-Nut, Inc. v. Warner-Lambert Co.,*
    346 F. Supp. 547 (S.D.N.Y. 1972), aff'd, 480 F.2d 801 (2d Cir. 1973) .......................... 10

*Broadcom Corp. v. Qualcomm Inc.,*
    2005 WL 5925584, 6 (9th Cir. Oct. 19, 2005) .......................................... 18

*Calmar, Inc. v. Emson Research, Inc.,*
    838 F.Supp. 453 (C.D. Cal. 1993) ............................................................. 18

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir 1985) ....................................................................... 19

*Clear Channel Outdoor, Inc. v. City of Los Angeles,*
    340 F.3d 810 (9th Cir. 2003) ........................................................................ 7

*Cohn v. Petsmart, Inc.,*
    281 F.3d 837 (9th Cir. 2002) ..................................................................... 13

*Dreamwerks Productions, Inc. v. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) ..................................................................... 7

*Duluth News-Tribune v. Mesabi Publ. Co.,*
    84 F.3d 1093 (8th Cir. 1996) ..................................................................... 13

*Earth Island Inst. v. United States Forestry Service,*
    351 F.3d 1291 (9th Cir. 2003) ...................................................................... 7

*Entrepreneur Media, Inc. v. Smith,*
    279 F.3d 1135 (9th Cir. 2002) ................................................................... 13

*Freecycle Network, Inc. v. Oey,*
    505 F.3d 898 (9th Cir. 2007) ....................................................................... 7

*Gauber, S.P.A. v. Nutri-metics Intern'l, Inc.,*
    1991 U.S. App. LEXIS 10842 (Fed. Cir. 1991) ........................................ 12

*Gidatex S.r.L. v. Campaniello Imports, Ltd.,*
    13 F. Supp. 2d 417 (S.D.N.Y. 1996) ......................................................... 16

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702239.01/SD

(ii)

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**Page(s)**

*J.B. Williams Co., Inc. v. Lelonte Cosmetics,*
    523 F.2d 187 (9th Cir. 1975) ......................................................... 8

*Magnaflux Corp. v. Louisville Pecan Co.,*
    231 F.2d 669 (C.C.P.A. 1956) ....................................................... 14

*Nora Beverages, Inc. v. Perrier Group of America, Inc.,*
    269 F.3d 114 (2d Cir. 2001) ........................................................ 13

*Nutri/System, Inc. v. Con-Stan Industries, Inc.,*
    809 F.2d 601 (9th Cir. 1993) .................................................. 8, 9, 11

*Oakland Tribune, Inc. v. Chronicle Publishing Co.,*
    762 F.2d 1374 (9th Cir. 1985) ..................................................... 18

*Official Airline Guides, Inc. v. Gross,*
    6 F.3d 1385 (9th Cir. 1993) ......................................................... 11

*Pfizer Inc. v. Astra Pharmaceutical Products, Inc.,*
    858 F. Supp. 1305 (S.D.N.Y. 1994) ............................................. 14

*Sunbeam Lighting Co. v. Sunbeam Corp.,*
    183 F.2d 969 (9th Cir. 1950) ........................................................ 14

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n,*
    465 F.3d 1102 (9th Cir. 2006) ..................................................... 16

*United States v. Timken Roller Bearing Co.,*
    83 F. Supp. 284 (N.D. Ohio 1949) .............................................. 17

**Statutes**

15 U.S.C.A. § 1056 (West 2008) .......................................................... 9

**Other Authorities**

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
    (2008) ........................................................................................ 10

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 23 cmt. d (1995) ........................................... 13

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702239.01/SD

DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1    Defendant BioRx, LLC ("BioRx") hereby submits this memorandum in opposition to the

2 Motion ("Motion") of Plaintiff Nutrishare, Inc. ("Plaintiff" or "Nutrishare") for a Preliminary

3 Injunction.

4 **I.    INTRODUCTION**

5    The Court should deny Nutrishare's motion because Nutrishare is <u>not</u> likely to succeed on

6 the merits of its case, it cannot overcome BioRx's affirmative defenses and the balance of

7 hardships tips in favor of BioRx.  Nutrishare would have this Court believe that well-educated

8 consumers such as doctors and healthcare professionals, as well as patients advised by doctors and

9 healthcare professionals, are likely to be confused by the trademarks "Nutrishare" and

10 "NutriThrive" – despite the bevy of other companies and products in the market that also share the

11 "Nutri" prefix.  The premise itself is borderline frivolous.

12    There is no likelihood of confusion here and Nutrishare knows it – or it would have

13 contacted BioRx and objected to the NutriThrive name over a year ago when, at a major trade

14 show in which <u>both</u> companies participated, BioRx announced its use of the NutriThrive name.

15 Both companies then went head to head marketing their products in the same trade publications

16 for nearly a year without any claim by Nutrishare that the NutriThrive trademark would confuse

17 the public.  BioRx applied for and obtained a registered trademark for the "NutriThrive" name,

18 without any concerns at all from either the trademark office <u>or</u> Nutrishare.  Not until BioRx began

19 making inroads into a market dominated by Nutrishare did Nutrishare file this action in a belated

20 attempt to stifle its competition.  This case is not about likelihood of confusion, but about the

21 misuse of a registered trademark to try to cripple a new competitor.  Since there is no real

22 likelihood of confusion here, Nutrishare is not likely to succeed on the merits in this action.

23    Even if Nutrishare had a legitimate trademark case (which it does <u>not</u>), it is even less likely

24 to prevail on the merits because it cannot prevail against BioRx's laches defense.  Nutrishare

25 admits that it was present at the Oley tradeshow when BioRx rolled out the NutriThrive name.  It

26 admits that NutriThrive has been advertising in the same trade publications as Nutrishare for

27 nearly a year.  Now, after allowing NutriThrive to advertise the name without so much as an

28 objection for nearly a year, and after allowing NutriThrive to register the trademark and begin

1  gaining traction in the marketplace, Nutrishare cannot equitably obtain a preliminary injunction

2  preventing BioRx's use of the NutriThrive name.  Such an injunction would halt the sale of all

3  NutriThrive products until final resolution of this action, would destroy BioRx's momentum in the

4  market and would result in the loss of countless sales.  Indeed, BioRx's new entry into the market

5  would make it impossible to quantify adequately the full nature and scope of damages it would

6  suffer in the event an injunction issues.  Nutrishare, by contrast, has not shown the loss of a single

7  sale or customer as a result of purported confusion over the Nutrishare and NutriThrive

8  trademarks.  But then this case is not really about unfair competition through trademark confusion;

9  it is about stopping legitimate and healthy competition resulting from a new entrant into the

10  market.

11      The declaration of Nutrishare's president and co-founder, Rodney Okamoto, speaks

12  volumes about Nutrishare's misuse of the trademark laws and this lawsuit to shut down a nascent

13  competitor.  Mr. Okamoto testifies:

14      "Until last year, Nutrishare was the only company in the nation that focused
        exclusively on providing Home TPN products and services . . . . Now, there
15      are two companies – Nutrishare and BioRx's NutriThrive division – that
        focus on in-Home TPN products and services."  Declaration of Rodney
16      Okamoto in Supp. of Mot. for Preliminary Injunction ("Okamoto Decl.")
        (Doc. 7), ¶ 21.

17
        "Within the past six months, NutriThrive has begun encroaching on
18      Nutrishare's sales territory, and actually has solicited Nutrishare's customers
        and physician's colleague. . . ."  Okamoto Decl. (Doc. 7), ¶ 16.

19

20  The purpose of the trademark laws are to prevent consumer confusion and protect a company's

21  reputation and goodwill.  The trademark laws are not a legitimate vehicle for stifling competition

22  and, indeed, misuse of a trademark for monopolistic advantage is an affirmative defense to a claim

23  of trademark infringement – an affirmative defense that NutriThrive intends to assert here.  For

24  this reason too, Nutrishare is even less likely to prevail on the merits.

25      In short, when weighing Nutrishare's failure to establish a likelihood of success on the

26  merits, the irreparable injury BioRx would suffer if an injunction issues, the lack of any

27  appreciable hardship to Nutrishare if an injunction does not issue and Nutrishare's delay in

28  / / / / /

1  bringing this action, this is not even a close call:  the Motion for Preliminary injunction <u>must</u> be

2  denied.

3  **II.    FACTUAL BACKGROUND**

4      **A.    The Parties**

5          Plaintiff is a California company that is dedicated exclusively to providing TPN-related

6  products and services to long-term TPN consumers in their homes.  (Okamoto Decl. (Doc. 7), ¶ 2).

7  TPN (or, total parenteral nutrition) is the provision of services to patients that have clinical

8  nutritional deficiencies that require the infusion of nutritional formulas that bypass the normal

9  processes of eating and digestion.  (Declaration of Phillip Rielly in Supp. of Mot. to Dismiss

10  ("Rielly Decl.") (Doc. 27-3), ¶¶ 4-5).  According to Plaintiff, until 2007, it was the only company

11  in the nation that focused exclusively on providing Home TPN products and service.  (Okamoto

12  Decl. (Doc. 7), ¶ 21).

13          BioRx is an Ohio limited liability company, with its principal place of business in Ohio.

14  (Rielly Decl., ¶ 2).  BioRx is a national provider and distributor of specialty pharmaceuticals,

15  related supplies, and clinical and reimbursement support services. Currently BioRx has four

16  product offerings: 1) in-home hemophilia care, or the provision of hemophilia clotting factors and

17  highly customized support services, 2) in-home Immunoglobulin G (IgG) infusion; 3) in-office

18  infusion suite management services, primarily targeted at neurology and immunology practices,

19  and 4) TPN and enteral nutrition therapies.  (*Id.*, ¶ 3).  This last product line was launched in July,

20  2007, and is provided under the trade name, "NutriThrive."  (*Id.*, ¶ 4).

21          *The TPN products supplied by Plaintiff and BioRx are prescribed by physicians.  The*

22  *prescriptions are filled by licensed pharmacists and <u>then</u> provided to the ultimate consumers.*  The

23  company supplying the product then bills the relevant insurer.  (Declaration of Deborah Pfister in

24  Supp. of Opp. to Mot. for Preliminary Injunction ("Pfister Decl."), ¶ 12).

25      **B.    Development of NutriThrive**

26          BioRx began developing its TPN and enteral nutrition products in 2007.  BioRx hired three

27  independent graphic designers to produce names and logos that portrayed health, wellness and

28  vibrancy within the context of home nutrition support.  Fifty possible names were narrowed down

1   to eight names which were presented to a focus group of nutrition professionals. This group rated

2   the eight names and logos and overwhelmingly preferred "NutriThrive" due to the "THRIVE"

3   component and its ability to convey wellness and positive energy. (*Id.*, ¶ 4).

4       **C.    Unveiling of NutriThrive to the Market**

5       BioRx first used the NutriThrive mark in an enteral focus group in Boston, Massachusetts

6   on June 18, 2007. BioRx unveiled NutriThrive to the public during an Oley conference held in

7   Cape Cod, Massachusetts from June 27–30, 2007. (*Id.*, ¶ 6; Rielly Decl. (Doc. 27-3), ¶ 8).

8       The Oley Foundation is a national non-profit organization that supports patients having the

9   clinical deficiencies that require the services that NutriThrive provides. The Oley Foundation

10  sponsors a national conference for consumers and providers every summer. BioRx and

11  Nutrishare, among many other infusion providers, attended this June, 2007 conference, during

12  which BioRx announced to Nutrishare and to the world that it was establishing NutriThrive and

13  that it would provide the TPN and enteral services described above. (Rielly Decl. (Doc. 27-3), ¶

14  8). BioRx attended as a "Gold Medallion" sponsor. (Pfister Decl., ¶ 7). Plaintiff and BioRx were

15  both recognized with awards for sponsorship at the conference, and representatives from both

16  companies shared the podium to receive these awards. (*Id.*).

17      Plaintiff's President acknowledges that he attended the June, 2007 Oley Foundation

18  Conference in Cape Cod and that he learned at that time of BioRx's announcement and its plans to

19  establish a partially competing service known as NutriThrive. (Okamoto Decl. (Doc. 7), ¶ 13).

20  Plaintiff raised no objection at that time.

21      During the June, 2007 Oley conference, Craig Peterson and another employee of Plaintiff

22  who identified himself as Plaintiff's Vice President of Marketing spoke with BioRx

23  representatives about NutriThrive. Neither of these individuals made any reference or complaint

24  about confusion or similarity of the marks. (Pfister Decl., ¶ 7).

25      **D.    Registration of the NutriThrive Mark**

26      Following the June, 2007 Oley conference and the unveiling of the NutriThrive product

27  and name, BioRx applied for registration of two marks with the U.S. Patent and Trademark Office.

28  Application Serial No. 77/229275 for "medical services, namely, administration of nutritional

1   products for enteral therapy and total parenteral nutrition" was filed on July 17, 2007 and was

2   published for opposition on January 1, 2008. The U.S. PTO has completed its review of the mark

3   by an Examining Attorney, with no citation to the Nutrishare mark as being confusingly similar,

4   and without opposition by Plaintiff or any other party, and the mark is expected to be registered in

5   due course. Application Serial No. 77/229266 for "pharmaceutical preparations for enteral

6   therapy and total parenteral nutrition" was filed on July 17, 2007 and was published for opposition

7   on January 15, 2008. The U.S. PTO completed its review of the mark by an Examining Attorney,

8   with no citation to the Nutrishare mark as being confusingly similar, and a Notice of Allowance

9   was issued on April 8, 2008. (Declaration of Steven C. Coffaro in Supp. of Opp. to Mot. for

10  Preliminary Injunction ("Coffaro Decl."), ¶¶ 3-4, Exhibit B).

11       **E.      Rollout of NutriThrive**

12       BioRx began providing services under the NutriThrive name in June, 2007. As Plaintiff

13  admits, BioRx began advertising its NutriThrive products and services extensively soon thereafter.

14  (Okamoto Decl. (Doc. 7), ¶¶ 14-15). NutriThrive advertisements have appeared in the Oley

15  newsletter for the past year. (Pfister Decl., ¶ 8). From July 28–29, 2007, BioRx participated in a

16  conference of the Association of Gastric Motility Disorders (AGMD) in Burlington,

17  Massachusetts. Its NutriThrive exhibit was located directly across from Plaintiff's Nutrishare

18  exhibit. Reid Nishikawa, a Nutrishare representative, was stationed at Plaintiff's booth during the

19  conference. He did not express any concerns or make any comments about the NutriThrive name

20  or any alleged confusion caused by its use. (*Id.*, ¶ 9).

21       On February 8, 2008, at an Oley regional conference in Chicago, Illinois, both NutriThrive

22  and Nutrishare displayed side-by-side exhibits discussing their respective products and services.

23  Further, from February 9–13, 2008, both Plaintiff's Nutrishare and BioRx's NutriThrive products

24  were exhibited at an American Society of Parenteral and Enteral Nutrition (ASPEN) conference

25  attended by physicians and nurses in Chicago, Illinois. (*Id.*, ¶¶ 10-11) .

26       At present, a total of 36 customers receive NutriThrive products and services from BioRx.

27  Of those customers, 29 of them receive only enteral (feeding tube) services, as opposed to the TPN

28  services that Plaintiff exclusively provides. (*Id.*, ¶ 13).

### F.    Accreditation of NutriThrive

BioRx has received written confirmation from the Accreditation Commission for Health Care (ACHC) that confirms that NutriThrive is accredited by ACHC to provide parenteral and enteral nutrition therapies and has permission to use the ACHC logo in conjunction with the company business.  (*Id.*, ¶ 15, Exhibit C).

## III.    PROCEDURAL BACKGROUND

Plaintiff filed its Complaint in this action on June 4, 2008.  (Doc. 1).  It did not serve the Summons and Complaint until June 26, 2008, while Plaintiff and BioRx were attending the 2008 Oley conference in San Diego, California.  (Doc. 12).  Plaintiff filed its Motion for Preliminary Injunction on June 24, 2008.  (Doc. 6).  BioRx filed a motion to dismiss or to transfer for lack of personal jurisdiction on July 16, 2008.  (Doc. 27).

## IV.    ARGUMENT OF LAW

### A.    A Balancing of the Equities and Hardships Requires that Plaintiff's Motion for Preliminary Injunction be Denied

Plaintiff concedes that it took no action, and did not even raise a complaint, with respect to BioRx's NutriThrive name and products until approximately a year had passed after Plaintiff learned of their existence.  Mr. Okamoto further admits that the impetus for the filing of this action was Plaintiff's realization that NutriThrive has been encroaching on Plaintiff's sales territory "within the past six months." (Okamoto Decl. (Doc. 7), ¶ 16).  Mr. Okamoto's testimony reveals that this action was filed not as a legitimate effort to prevent confusion and trademark infringement, but instead to inhibit lawful competition and preserve Plaintiff's monopoly status as "the only company in the nation that focuses[es]" on providing TPN services.  The Court should not countenance these unlawful objectives.

Plaintiff seeks a broadly worded preliminary injunction that would prevent BioRx from: (1) using the "NutriThrive" name, or in fact any variation of the root "nutri;" (2) using the www.nutrithrive.com website or any other domain name using the root "nutri;" (3) make any reference to NutriThrive on any website; and (4) causing likelihood of confusion or mistake as to

1  the source, nature or quality of Defendant's products or services. (Pltf's Memo. of Ps & As in

2  Supp. of Mot. for Preliminary Injunction ("Pltf's Ps & As") (Doc. 6-1), p. 2).

3          In order to warrant the sweeping injunctive relief that it seeks, Plaintiff has the burden of

4  proving (under the "traditional" standard): (1) a strong likelihood of success on the merits; (2) the

5  possibility of irreparable injury if preliminary relief is not granted; (3) a balance of the hardships

6  favoring Plaintiff; and (4) advancement of the public interest. *Freecycle Network, Inc. v. Oey*, 505

7  F.3d 898, 902 (9th Cir. 2007) (quoting *Earth Island Inst. v. United States Forestry Service*, 351

8  F.3d 1291, 1297 (9th Cir. 2003)). Alternatively, the Court may grant the injunction if Plaintiff

9  demonstrates either a combination of probable success on the merits and the possibility of

10  irreparable injury or that serious questions are raised and the balance of hardships tips sharply in

11  its favor. *Id.* Under either standard, an injunction may not issue where the plaintiff fails even to

12  raise serious questions about its likelihood of success. *Id.* A district court abuses its discretion in

13  granting an injunction if its decision is based on clearly erroneous factual findings. *Id.* (quoting

14  *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

15          **B.    Plaintiff is Not Likely to Succeed on the Merits of its Claims**

16                 **1.    Plaintiff Cannot Establish a Likelihood of Confusion.**

17          The Ninth Circuit has identified eight factors relevant in determining likelihood of

18  confusion in a Lanham Act claim. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

19  1993). These factors are: 1) strength of plaintiff's mark; 2) relatedness or proximity of goods; 3)

20  similarity of the marks; 4) evidence of actual confusion; 5) marketing channels use; 6) type of

21  goods and likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8)

22  likelihood of expansion of product lines. *Id.* Plaintiff cannot succeed in establishing the existence

23  of a likelihood of confusion with BioRx's NutriThrive mark according to this standard. While, as

24  Plaintiff argues, each factor itself need "not be rigidly weighed," *Dreamwerks Productions, Inc. v.*

25  *SKG Studio*, 142 F.3d 1127 (9th Cir. 1998), an analysis of the *Sleekcraft* factors relevant in this

26  case overwhelmingly favors a finding of no likelihood of confusion.

27

28

### (a)    Strength of Plaintiff's Mark

Plaintiff stakes its entire case on a claim to exclusive use of the word/prefix "nutri" for total parenteral *nutrition* products. Total Parenteral Nutrition is the TPN service that both parties here provide – and it is the only service that Plaintiff provides. Plaintiff asks this Court not only to bar BioRx's use of its NutriThrive trademark, but also to bar any use "of the term 'nutri' as a source identifier" for NUTRITION products. (Pltf's Complaint (Doc. 1), Section 1(a) of the Prayer for Relief, p. 10). Plaintiff makes no suggestion that the use of a "thrive" formative trademark infringes its established trademarks. In fact, "thrive" and "share" are so dissimilar that, as a matter of law, there can be no likelihood of confusion between the two terms. The focus of Plaintiff's claim, then, is solely defendant's use of "nutri" for total parenteral *nutrition* products. Plaintiff took a name that contained a descriptive or even generic component and now asks the Court to put a fence around this prefix to assist it in foreclosing competition. Descriptive marks are weak and are entitled to little trademark protection. *See, J.B. Williams Co., Inc. v. Lelonte Cosmetics*, 523 F.2d 187, 192 (9th Cir. 1975).

Plaintiff's reliance on *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601 (9th Cir. 1993) for the contention that "nutri" is a strong mark is misplaced. In that case, the Ninth Circuit held that the "nutri" term "suggests, but falls short of explicitly describing, health and weight loss," and was weak. *Id.* at 605. The strength of a mark determines, in large part, the ability of the mark's owner to prevent others from using similar marks. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21, cmt 1 (1995). Even though the Ninth Circuit held that "nutri" was suggestive in the context of health and weight loss, it still ultimately held that a finding of weakness was correct and that the marks "Nutri/System" and "Nutri-Trim" could co-exist for directly competitive products. *Id.* at 605, 607. If the "nutri" prefix is weak for diet food and health products, it is far weaker (if not generic) for actual nutrition products.

Evidence of the weakness of "nutri" as a mark can also be found on the Principal Register. Attached as Exhibit A to the Declaration of Steven Coffaro is a listing of trademarks in which the Trademark Office required a disclaimer of "nutri/nutra" in connection with the identified goods. (Coffaro Decl., ¶ 2, Exhibit A). A disclaimer is required by the Trademark Office for any words

1  that are merely descriptive, and which should be available to all users. 15 U.S.C.A. § 1056 (West

2  2008). When a disclaimer is entered into the trademark register, the owner disclaims any

3  exclusive rights in those words, leaving them available for use by others. This list of disclaimed

4  Nutri/Nutra marks is further evidence that "nutri" is a weak source identifier for *nutrition*

5  products. The Trademark Office did not require a disclaimer of "nutri" in Plaintiff's mark or

6  BioRx's mark, likely because of the stylistic nature of each mark (*i.e.,* both marks are presented as

7  a single word). However, the fact remains that "nutri" must be considered very weak when used

8  in connection with nutrition products.

9         Further, Plaintiff's implication that their seventeen-year use of the "Nutrishare" mark

10  somehow transforms the "nutri" portion of their mark into a stronger mark, is false and

11  misleading. As the Ninth Circuit in the *Nutri/System* case noted, ten years of use and "extensive

12  advertising" did not transform a suggestive mark into a "strong or arbitrary one." *Nutri/System,*

13  809 F.2d at 605. Moreover, Plaintiff's statement that "no other existing TPN provider …uses the

14  term 'nutri' to identify its offerings" (Pltf's Ps & As (Doc. 6-1), section III.A.3, p. 16) is incorrect.

15  While Nutrishare offers in-home TPN services, the Principal Register discloses a number of other

16  entities offering parenteral nutrition-related products and services that currently use a "nutri"

17  prefix or which coexisted in the past with Nutrishare. For example, the following relevant

18  trademarks appear on the Trademark Register:

19         • NUTRI-FLO (U.S. Reg. No. 1,188,533; registered in 1988 and

20           cancelled in 2002) for "enteral and parenteral nutrition sets";

21         • NUTRILYTE (U.S. Reg. No. 1,806,998) for "Multi-electrolyte

22           concentrates for use in preparing parenteral nutrition solutions"; and

23         • NUTRIFORUM (U.S. Reg. No. 2,453,892; registered in 2000 and

24           cancelled in 2008) for "computer services, namely, providing an online

25           database with information about parenteral nutrition products for use by

26           healthcare professionals."

27  In addition, the marketplace includes other providers of nutritional therapies with similar names.

28  These include Nutrepletion Resources (www.nutrepletion.com) which provides nutritional support

1   therapies to end stage renal disease patients, and Nutricia (www.nutricia.com), which produces

2   enteral nutrition products.  (Pfister Decl., ¶ 18).  This evidence conclusively shows that, contrary

3   to Plaintiff's assertions, their use of "nutri" for parenteral nutrition-related products is neither

4   unique nor uncommon.

5          Plaintiff ignores the above cited marks, and also ignores the opinion of the US Patent and

6   Trademark Office, which examined the applications for NutriThrive filed by Defendant, and found

7   no likelihood of confusion with the Nutrishare marks already on the register.

8          The descriptive nature of the prefix "nutri" for nutrition-related products and the existence

9   of so many other users of the "nutri" prefix demonstrates that this portion of the mark is very weak

10  and is entitled to little, if any, protection.  The Trademark Office clearly recognized these facts in

11  allowing the NutriThrive marks to be published for opposition, and never citing as a potential

12  block to registration the Nutrishare marks of Plaintiff.

13         As McCarthy has noted, "[i]f a common portion of the two conflicting marks is a public

14  domain generic name, the emphasis of enquiry should be upon the confusing similarity of the non-

15  generic portion, with the ultimate issue determined by the confusing similarity of the total

16  impression of both marks"  4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR

17  COMPETITION § 23:49 (2008) (citing *Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F. Supp. 547

18  (S.D.N.Y. 1972), aff'd, 480 F.2d 801 (2d Cir. 1973)).  Here, as "nutri" is likely generic for

19  *nutrition* products, the focus should be on the non-generic "thrive" and "share" portions of the

20  respective marks.  Plaintiff does not even suggest that these portions are confusingly similar.

21                        *(b)*      *Similarity of the Marks*

22         The weakness of the mark is a vital consideration in the similarity analysis as well.  As

23  MCCARTHY has noted:

24              [i]f the common element of conflicting marks is a word that is
                "weak" then this reduces the likelihood of confusion.  A portion of a
25              mark may be "weak" in the sense that such portion is descriptive,
                highly suggestive, or is in common use by many other sellers in the
26              market.

27  MCCARTHY, *supra* § 23:48 (2008).

28

1    Plaintiff correctly observes that marks should not be dissected but rather should be viewed

2   as a whole to determine similarity.  *Official Airline Guides, Inc. v. Gross*, 6 F.3d 1385,1392 (9th

3   Cir. 1993).  However, Plaintiff proceeds to dissect the marks anyway, and focuses on the "nutri"

4   prefix alone.  Plaintiff asks this court to engage in this same disfavored dissection, examine only

5   the "nutri" portion, and ignore the fact that "thrive" and "share" are so different that, as a matter of

6   law, there can be no likelihood of confusion.

7    It is important to consider the similarity of sight, sound and meaning of the marks in

8   question.  *Sleekcraft* 599 F.2d at 351.  When considered as a whole, the marks are clearly very

9   different.  They sound very different when spoken.  They have very different meanings.  Unlike

10  the Trademark Office, which examines the marks based on the words before it, here the Court has

11  the added advantage of being able to see how the marks are actually presented in the marketplace

12  The Court can block use as well as registration if it finds that as USED the marks are too similar.

13  This generally happens when competitors use similar fonts, colors, or designs in their marketplace

14  presentation.  Here, a side-by-side comparison shows that the two marks appear very differently

15  and their colors, stylizations and designs are very distinguishable.  (Pfister Decl., Exhibit B)

16  When viewed as a whole, there is no doubt that the marks are quite dissimilar.

17   Plaintiff ignores directly analogous and binding case law on the similarity of two different

18  marks with a "nutri" prefix.  In *Nutri/System, supra,* the Ninth Circuit affirmed the District Court's

19  determination that the marks in question, Nutri/System and Nutri-Trim, were not confusingly

20  similar, despite offering competitive products and services to consumers seeking weight-loss

21  solutions.  The plaintiff argued that a side-by-side comparison of the marks as whole  was

22  improper since the "nutri" prefix was identical for each mark.  809 F.2d 601, 605.  The Ninth

23  Circuit, however, held that the "determination of 'similarity' involves consideration of 'the marks

24  and names in their entirety as they appear in the marketplace…" and thus the district court's

25  finding of dissimilarity was proper.  *Id.* at 605-06 (citing *Alpha Industries, Inc. v. Alpha Steel Tube

26  & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980) (holding that the common "alpha" prefix alone

27  was not sufficient to prove similarity)).

28

1    Plaintiff cites only one unreported case that held that "Nutromed" and "Nutri-metrics" were

2    confusingly similar. *Gauber, S.P.A. v. Nutri-metics Intern'l, Inc.,* 1991 U.S. App. LEXIS 10842

3    (Fed. Cir. 1991). In that case, however (which is not binding authority in this Court), the court

4    considered the marks in their entireties and refused to dissect the mark to consider only the "nutri"

5    portion of the mark. *Id.* at *5. The similarity of the prefix was only one factor in the Court's

6    finding of confusion, and the meanings of the two marks were the same. *Id.*

### (c)    *Evidence of Actual Confusion*

8    In the year that both Nutrishare and NutriThrive have been in the marketplace, Plaintiff has

9    been unable to gather any evidence that suggests actual confusion between the two marks.

10    Instead, Plaintiff relies upon declarations from various parties stating that they raised "questions"

11    as to whether Plaintiff and Defendant are connected. (Okamoto Decl. (Doc. 7), ¶ 16; Nishikawa

12    Decl. (Doc. 11), ¶ 4; Wallin Decl. (Doc. 9), ¶ 4; Messina Decl. (Doc. 34), ¶¶ 3-4). Even to the

13    extent that these declarations do not constitute inadmissible hearsay, they actually show that there

14    has been *no confusion* between the two marks, and that the third parties have actually recognized a

15    difference between them. For example, Mr. Nishikawa (who failed to raise any objection to

16    BioRx at the July, 2007 AGMD conference), details three instances in which three customers

17    asked him to clarify the relationship, if any, between NutriThrive and Nutrishare. (Nishikawa

18    Decl. (Doc. 11), ¶ 4). Additionally, Mr. Okamoto reports that a third party had told him that

19    coexistence of the two marks "could cause confusion." (Okamoto Decl. (Doc. 7), ¶ 16). While

20    Mr. Okamoto states that this is evidence that a third party had "actually become confused," the

21    language of the Declaration itself dispels the notion that any actual confusion resulted.

22    The Messina Declaration is even more telling because the declarant immediately discerned

23    that NutriThrive is a "new company," and stated only that she was "curious" about this "new

24    company." (Messina Decl. (Doc. 34), ¶¶ 3-4). Clearly, if Ms. Messina recognized NutriThrive as

25    a new company, there was no confusion. Her Declaration only proves that consumers are NOT

26    confused. Further, the Wallin Declaration shows that an unnamed discharge planner at an Illinois

27    hospital may or may not have been confused, may have misheard an order, or may simply be

28    insolent. (Wallin Decl. (Doc. 9), ¶ 4). The Wallin Declaration is certainly not evidence of actual

1    confusion.  In addition, Plaintiff's suggestion that the "owner" of Sullivan's Pharmacy expressed

2    confusion with regard to the NutriThrive name (Pltf's Ps & As (Doc. 6-1), p. 9) is dubious, to say

3    the least.  (Declaration of Timothy Fensky in Supp. of Opp. to Mot. for Preliminary Injunction

4    ("Fensky Decl."), ¶¶ 2-4).

5         Federal courts have observed that the types of questions raised by these declarants actually

6    "indicate[] a distinction in the mind of the questioner, rather than confusion."  *Duluth News-*

7    *Tribune v. Mesabi Publ. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996).  The Second Circuit has

8    observed that:

9              [i]nquiries about the relationship between an owner of a mark and an
               alleged infringer do not amount to actual confusion.  Indeed, such
10             inquires are arguably premised upon a *lack* of confusion between the
               products such as to inspire the inquiry itself.
11

12   *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 124 (2d Cir. 2001).  See

13   *also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 23 cmt. c (1995) ("Evidence of inquiries

14   by customers as to whether the plaintiff and the defendant are associated, however, may not

15   establish the existence of actual confusion if the nature of the inquiries indicates that consumers

16   perceive a difference between the designations and are skeptical of the existence of a connection

17   between the users.").  The Ninth Circuit has made similar observations.  *See Cohn v. Petsmart,*

18   *Inc.*, 281 F.3d 837 (9th Cir. 2002) (citing McCarthy, *supra* § 23:16; *Entrepreneur Media, Inc. v.*

19   *Smith*, 279 F.3d 1135 (9th Cir. 2002).

20        The evidence proffered by Plaintiff shows that these third parties actually *distinguished*

21   Nutrishare and NutriThrive.  Plaintiff has presented no instances of any third party actually

22   becoming confused about Plaintiff's sponsorship, approval or relationship with the sale of

23   NutriThrive products.  The lack of actual confusion is significant because, as Plaintiff argues, the

24   field of TPN is not a crowded one.  (Pltf's Ps & As (Doc. 6-1), section III.A.3, p. 16).  This fact

25   makes the lack of confusion more relevant than it would otherwise might be.  *See* RESTATEMENT

26   (THIRD) OF UNFAIR COMPETITION § 23 cmt. d (1995) ("[W]hen the parties have made significant

27   use of their respective designations in the same geographic market for a substantial period of time,

28

1  the absence of any evidence of actual confusion may in some cases justify an inference that the

2  actor's use does not create a likelihood of confusion.").

3            *(d)*      ***Types of Goods and Likely Degree of Purchaser Care***

4        The products and services offered by Plaintiff and BioRx are prescribed by physicians, and

5  pharmacists fill the orders. (Pfister Decl., ¶ 12). These are expensive, life-saving products and

6  confusion is less likely where goods or services are expensive and would only be "purchased after

7  careful consideration." *Magnaflux Corp. v. Louisville Pecan Co.*, 231 F.2d 669, 671 (C.C.P.A.

8  1956). TPN products and services are not fungible products, and decisions to purchase this type

9  of product would logically not be made on the basis of trademarks alone. On the contrary,

10  expensive goods would only be purchased after careful consideration, and even more

11  consideration will be given for products that are medically necessary.

12        Moreover, these products are purchased by careful, professional buyers (doctors and

13  pharmacists) that are providing a medically-important service to their patients. In numerous cases,

14  doctors and pharmacists have been deemed "professional" buyers and thus more sophisticated than

15  the average consumer. See, *e.g.*, *Astra Pharmaceutical Products, Inc. v. Beckman Industries, Inc.*,

16  718 F.2d 1201, 1209 (1st Cir. 1983); *Barre-National, Inc. v. Barr Laboratories, Inc.*, 773 F. Supp.

17  735, 742 (D. N.J. 1991) (pharmacists as "professional" buyers). In fact, one federal court called

18  doctors "as sophisticated a group as one could imagine." *Pfizer Inc. v. Astra Pharmaceutical*

19  *Products, Inc.*, 858 F. Supp. 1305, 1328 (S.D.N.Y. 1994). Where buyers are professional and

20  sophisticated, confusion is less likely. *Sunbeam Lighting Co. v. Sunbeam Corp.*, 183 F.2d 969,

21  973 (9th Cir. 1950). The Court of Appeals for the First Circuit has held that the "most critical

22  factor" in finding no likelihood confusion for identical marks was the sophistication of the

23  purchasers. *Beckman*, 718 F.2d at 1206.

24        In this case, doctors are ordering and pharmacists are filling products that are intended to

25  complement a patient's medical care. Not only are doctors and pharmacists professional,

26  sophisticated, and thus less likely to be confused, they can also be expected to use great care in

27  selecting such products for patients and are unlikely to make a decision on the basis of trademarks

28  alone. Moreover, the expense of the products will cause any buyer to carefully consider prior to

1  spending so much money for such an important and medically-necessary product. For similar

2  reasons, physicians are able to discern the difference between "Walmart" and "Walgreens," despite

3  the fact that these brands both provide pharmacy products and are often located literally across the

4  street from one another. Likewise, BioRx competes with other specialty pharmacy companies,

5  such as BioScripts, Biofusion and BioPartners.

6  *(e)    **Defendant's Intent in Selecting the Mark***

7  Plaintiff has presented no evidence whatsoever to suggest that BioRx had any intent to

8  infringe Plaintiff's trademark rights. Plaintiff argues that BioRx's mere adoption of a mark

9  containing a "Nutri" component, while having actual or constructive knowledge of Plaintiff's

10  mark, constitutes intent to deceive. To the contrary, however, the marks are so dissimilar, save for

11  the generic "nutri" portion of the mark, that no intent to deceive can logically be inferred. If every

12  entity that uses "nutri-" or "nutrition" for nutrition products were deemed to be bad faith

13  infringers, then Plaintiff has a case against hundreds, if not thousands of other trademark owners.

14  As detailed in the Declaration of Deborah Pfister, the NutriThrive name was chosen as a result of a

15  process that did not even reference Nutrishare as a competitor to the parties hired to develop the

16  company name and logo. (Pfister Decl., ¶ 4).

17  Moreover, BioRx has never directly solicited Plaintiff's customers as spokespersons, and

18  has only used customers that have come to BioRx for services not provided by Plaintiff. (*Id.*, ¶

19  14). Additionally, Plaintiff and BioRx have both advertised extensively in the same newsletters

20  and publications. These publications themselves show that certain words and phrases are very

21  common in the TPN field, and they provide a side-by-side comparison of the advertisement and

22  logo designs used by Plaintiff and BioRx. This comparison shows that BioRx had no intent to

23  deceive. This is not a case where BioRx carefully copied the colors, designs, look and feel of a

24  competitor's marks to play on the goodwill owned by that competitor. Here NutriThrive set out to

25  create its own distinctive look and presence in the marketplace, and it has done so.

26  Considering all of the *Sleekcraft* factors on balance, Plaintiff has failed to show a strong

27  likelihood of success on the merits of its claims. Plaintiff has not even raised serious questions

28  about its claims. Accordingly, its request for preliminary injunctive relief should be denied.

1    **2.    Even if Plaintiff Could Make a *Prima Facie* Case of Infringement,**

2    **BioRx' Affirmative Defenses Preclude Injunctive Relief.**

3    **(a)    *Estoppel by Laches***

4    Even if Plaintiff could establish infringement based on the foregoing factors, which, as

5    noted above, is unlikely, Plaintiff's inexcusable delay in filing this action will be fatal to Plaintiff's

6    likelihood of success. The equitable defense of laches is proper in, and applicable to, trademark

7    infringement suits. *See Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n,*

8    465 F.3d 1102, 1108-11 (9th Cir. 2006). It is abundantly clear in this case that Plaintiff

9    intentionally delayed filing a suit when it had numerous opportunities, at a very early stage, to

10    object to BioRx's use of the NutriThrive trademark. Plaintiff could have objected to BioRx's use

11    before BioRx had any customers, performed any marketing, and attended various conferences

12    promoting NutriThrive – all conferences that Plaintiff attended as well. Plaintiff could have filed

13    an opposition to registration of the NutriThrive marks with the U.S. PTO. Instead, Plaintiff waited

14    a full year after learning of BioRx's intentions in June, 2007 to object to the use of the NutriThrive

15    name. Plaintiff even failed to send a cease and desist letter to BioRx until *after* Plaintiff filed suit.

16    (*See* Declaration of Michael J. Thomas in Supp. of Mot. for Preliminary Injunction ("Thomas

17    Decl.") (Doc. 8), ¶ 2, Exhibit A).

18    These facts demonstrate that Plaintiff has no genuine belief that BioRx is infringing upon

19    its marks. If it did, it would have taken action immediately, rather than sitting back and allowing

20    BioRx to invest time, money and effort in NutriThrive before raising any inkling of an objection.

21    "A finding of inexcusable delay in trademark cases is most likely when the circumstances of the

22    case permit an inference that the owner of the mark has timed the request for injunctive relief so as

23    to inhibit competition." *Gidatex S.r.L. v. Campaniello Imports, Ltd.,* 13 F. Supp. 2d 417

24    (S.D.N.Y. 1996). This is precisely what occurred here, as reflected in Mr. Okamoto's Declaration

25    and the fact that Plaintiff timed the suit to coincide with BioRx's planned sponsorship and

26    participation at the San Diego Oley conference in June, 2008.

27

28

1

### (b)    *Improper Use of a Trademark*

2   Even if Plaintiff were to succeed in proving infringement *and* overcome its inexcusable

3 delay, Plaintiff is not likely to succeed on the merits because of its improper use of a trademark.

4 By Plaintiff's own admission, Plaintiff enjoyed a monopoly on in-home TPN services prior to the

5 entry of NutriThrive in the market. (Okamoto Decl. (Doc. 7), ¶¶ 16, 21). Plaintiff asks this Court

6 to prohibit BioRx (and presumably any other party) from using the "nutri" prefix in connection

7 with *nutrition* products. Plaintiff's requests and admissions leave no doubt that Plaintiff is

8 attempting to maintain its monopoly by prohibiting use of the "nutri" term in connection with total

9 parenteral *nutrition* products. This use is improper. As one court has stated:

10    [t]he trademark may become a detrimental weapon if it is used to
serve a harmful or injurious purpose. If it becomes a tool to

11    circumvent free enterprise and unbridled competition, public policy
dictates that the rights enjoyed by its ownership be kept within their

12    proper bounds.

13 *United States v. Timken Roller Bearing Co.*, 83 F. Supp. 284 (N.D. Ohio 1949). Here, Plaintiff's

14 attempt to monopolize use of a very likely generic term for *nutrition* products constitutes improper

15 use of a trademark, and further inhibits Plaintiff's ability to succeed on the merits.

16  **C. Plaintiff Will Not Suffer Irreparable Harm**

17   Plaintiff contends that it is entitled to a presumption of irreparable harm. It then proceeds

18 to malign BioRx's products and services and goes so far as to suggest – without any basis

19 whatsoever – that BioRx is posing a risk to the health and safety of consumers. (Pltf's Ps & As

20 (Doc. 6-1), p. 19). The Court should pause to inquire why, if BioRx is so prone to "failings," is

21 Plaintiff seeking the Court's protection to maintain its monopoly and to prevent BioRx from

22 profiting from its NutriThrive products and services? The answer is that BioRx has already

23 generated its own goodwill and, as Plaintiff concedes, has started to make inroads into Plaintiff's

24 monopolized market share. (Okamoto Decl. (Doc. 7), ¶¶ 16, 21). Plaintiff even suggests that

25 BioRx should be enjoined from providing enteral care and other infusion products and services –

26 despite Plaintiff's earlier acknowledgement that it provides <u>exclusively</u> TPN products and does

27 not compete with BioRx in these other areas.

28

1    Plaintiff simply has failed to make a showing that it will suffer irreparable harm in the

2  absence of the sweeping injunction that it seeks.  If there is any validity to Plaintiff's contention

3  that BioRx is unlawfully eroding its market share, Plaintiff's losses are capable of being redressed

4  though an award of the profits that Plaintiff proves it has lost as a result of any wrongdoing on the

5  part of BioRx.

6    Perhaps the most compelling reason that Plaintiff's motion should be denied, however, is

7  the lengthy delay between Plaintiff's discovery of the operative facts forming the basis for its

8  alleged claims and its commencement of this action.  Plaintiff admits – and it could not possibly

9  deny – that it learned no later than June, 2007 of BioRx's intention to launch a TPN service known

10  as NutriThrive.  Yet, Plaintiff raised no complaint or even a suggestion that this name was

11  confusing or improper.  Plaintiff then attended numerous exhibitions between June, 2007 and

12  June, 2008 where BioRx advertised and promoted its NutriThrive service.  Again, Plaintiff took no

13  action.  Plaintiff failed to raise any objection with the Patent and Trademark Office when BioRx

14  applied for trademark registrations in July, 2007 and when those applications were published in

15  January, 2008.

16    In sum, Plaintiff sat back for a full year and knowingly allowed BioRx to spend over

17  $500,000 in the development of NutriThrive, in its promotion of it, and in actually committing to

18  provide the service to numerous customers.  Having laid in the weeds for so long while raising not

19  the slightest hint of an objection, Plaintiff is estopped from now asserting that it is being

20  irreparably harmed by BioRx's use of the NutriThrive mark.  *See, e.g. Calmar, Inc. v. Emson*

21  *Research, Inc.*, 838 F.Supp. 453, 456 (C.D. Cal. 1993) (significant delay in applying for injunctive

22  relief tends to undercut an assertion of irreparable harm and can justify denial of preliminary

23  injunctive relief); *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th

24  Cir. 1985) (plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency

25  and irreparable harm); *Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 5925584, 6 (9th Cir. Oct. 19,

26  2005) (request for injunctive relief is barred by laches where moving party lacked diligence in

27  pursuing claim and opposing party incurred prejudice).[1]

28

---

[1]  This Court's own local rules authorize the Court to deny injunctive relief based upon laches

1    Further, as McCarthy has noted, most courts will deny a motion for a preliminary

2   injunction if more than a year has passed.  McCarthy, *supra* at §31:31.  One study of federal

3   circuit courts of appeal suggested that any delay of greater than six months brought a "significant

4   risk" that preliminary injunctive relief would be denied.  *Id.*  The theory behind such holdings is

5   that delay directly correlates to a lack of irreparable harm.  As the Second Circuit has held, a delay

6   "tends to neutralize any presumption that infringement alone will cause irreparable harm pending

7   trial." *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir 1985).  Here, Plaintiff's delay, and its

8   many opportunities to object to BioRx's use of NutriThrive, neutralizes any claim of irreparable

9   harm.

10    The record and the evidence are clearly sufficient to overcome any presumption of

11   irreparable harm to which Plaintiff claims that it is entitled.

12    **D.    A Balance of the Hardships Clearly Favors BioRx**

13    While the harm to Plaintiff in denying the motion for preliminary injunction would be

14   minimal, an injunction would be devastating and cause irreparable harm to BioRx.  An injunction

15   would accomplish exactly what Plaintiff set out to do, which is to eliminate NutriThrive as a

16   legitimate competitor and reinforce Plaintiff's monopoly power.  BioRx would be required to shut

17   down NutriThrive, to shut down the www.nutrithrive website, to terminate the employment of

18   seven employees and one independent contractor who are dedicated to NutriThrive, and to cease

19   providing its products and services to the enteral and TPN patients who have come to rely upon it.

20   The devastating impact of granting the requested injunction at this late stage further highlights the

21   inequitable nature of Plaintiff's conduct in failing to raise an objection to the NutriThrive name

22   much sooner, despite having numerous opportunities to do so.

23    In addition to the impacts upon BioRx's employees and patients, an injunction would have

24   a tremendous economic impact upon BioRx.  The company has spent more than $500,000 to date

25   in developing and promoting NutriThrive, all with the knowledge of Plaintiff.  Moreover,

26   NutriThrive is still in its relative infancy, and it would be extremely difficult at trial for BioRx to

27

28    where a delay in seeking injunctive relief contradicts the applicant's allegations of irreparable
injury.  (*See* L.R. Rule 65-231(b)).

1 prove with the requisite certainty the profits that it will have lost if it prevails on the merits of

2 Plaintiff's claims, such that injunctive relief should not have been granted.  Further, BioRx would

3 be faced with the task of getting NutriThrive and its enteral and TPN therapies re-established in

4 the marketplace, and would have to overcome the damage to its goodwill done by Plaintiff's

5 wrongful actions in bringing this action.

6      In summary, a balance of the hardships shows that BioRx would be irreparably injured if

7 the Court were to grant the requested injunctive relief, while Plaintiff will incur little or no harm if

8 the injunction is not granted.  For this reason, the injunction should be denied.

9      **E.      The Public Interest Would be Harmed if an Injunction is Granted**

10      As discussed above, the requested injunction would be harmful to the enteral and TPN

11 patients who currently use NutriThrive products and services and have come to rely upon them.

12 These patients could face a life-threatening situation if they are abruptly forced to search for

13 alternative therapies.  It would be nearly impossible to prevent physicians from writing

14 NutriThrive prescriptions for their patients, under the mistaken assumption that they will be able

15 to obtain NutriThrive as they have come to expect and as BioRx has represented to them.

16      In addition, the requested injunction would significantly eliminate competition and the

17 choices available to healthcare providers who prescribe enteral and TPN therapies for their

18 patients.  Plaintiff admits in the declarations filed in this case that it enjoyed a monopoly in the in-

19 home TPN market prior to the entry of NutriThrive into the marketplace.  An injunction would

20 return the market to this anticompetitive state of affairs and would significantly harm competition

21 and the public interest.

22      Contrary to Plaintiff's unsubstantiated allegation, there is no reason to believe that "dire"

23 consequences could result from the use of NutriThrive instead of Nutrishare.  The Court should

24 not be misled into believing that NutriThrive is somehow a dangerous or unproven product.

25 NutriThrive is an accredited product and its effectiveness and safety are not in question.

26 **V.      CONCLUSION**

27      For all of the foregoing reasons, Defendant, BioRx respectfully requests that this Court

28 deny Plaintiff's motion for a preliminary injunction in all respects.  In the event that the Court is

1   inclined to grant Plaintiff's motion in any part, then BioRx requests that Plaintiff post a bond in

2   the amount of $10 million in light of the substantial harm that BioRx will incur as a result of

3   compliance with such an order.  Given the detailed briefing and the exhibits presented, BioRx

4   does not request nor require oral testimony at the hearing, and anticipates the time necessary for

5   oral argument to be no more than fifteen minutes.

6

7   Dated:  August 4, 2008                          ALLEN MATKINS LECK GAMBLE
                                                     MALLORY & NATSIS LLP
8

9                                          By:          s/Amy Wintersheimer Findley
                                                     AMY WINTERSHEIMER FINDLEY
10                                                   MICHAEL R. ADELE
                                                     CHARLENE J. WILSON
11                                                   Attorneys for Defendant BioRx, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
MICHAEL R. ADELE (BAR NO. 138339)
CHARLENE J. WILSON (BAR NO. 222497)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail:   awintersheimer@allenmatkins.com
          madele@allenmatkins.com
          cwilson@allenmatkins.com

Attorneys for Defendant
BIORX, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRISHARE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BIORX, LLC, an Ohio Limited Liability Company,<br><br>Defendant. | Case No. 2:08-cv-01252-WBS-EFB<br><br>Complaint filed June 4, 2008<br><br>DECLARATION OF TIMOTHY FENSKY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>DATE:      August 18, 2008<br>TIME:      2:00 P.M.<br>CRTRM:   5<br>JUDGE:    Hon. William B. Shubb |

I, Timothy Fensky, hereby declare:

1.      I am the Director of Pharmacy Operations for Sullivan's Pharmacy in Boston, Massachusetts.

2.      I have reviewed statements in a Declaration from Rodney Okamoto of Nutrishare, Inc. in which he attributes to me the statement that the names "Nutrishare" and "NutriThrive" could cause confusion. I have also reviewed a filing by Nutrishare in which it states that the "owner" of Sullivan's Pharmacy reported that the names would cause confusion.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702174.01/SD

DECLARATION OF TIMOTHY FENSKY IN SUPPORT OF DEFENDANT'S
MOTION

1      3.    I do recall meeting with Mr. Okamoto and his associates earlier this year.  Prior to

2  the meeting, Sullivan's already had an established business relationship with BioRx and

3  NutriThrive.  I had never heard of Nutrishare before, and Sullivan's has no track record or

4  relationship with Nutrishare.  I was not confused by BioRx's use of the name NutriThrive.

5      4.    I am confident that the "owner" of Sullivan's did not meet with Mr. Okamoto or

6  discuss Nutrishare and NutriThrive with him because the owner does not become involved in

7  third-party contracting.

8      Executed this 4th day of August, 2008, at Boston, MA.

9

10                                TIMOTHY FENSKY

11

12

13    2598579.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Lock Gamble
Mallory & Natsis LLP

702174.01/SD

-2-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANTS'
MOTION

1   AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
    MICHAEL R. ADELE (BAR NO. 138339)
2   CHARLENE J. WILSON (BAR NO. 222497)
    ALLEN MATKINS LECK GAMBLE
3     MALLORY & NATSIS LLP
    501 West Broadway, 15th Floor
4   San Diego, California 92101-3541
    Phone:  (619) 233-1155
5   Fax:  (619) 233-1158
    E-Mail:    awintersheimer@allenmatkins.com
6              madele@allenmatkins.com
               cwilson@allenmatkins.com
7
    Attorneys for Defendant
8   BioRx, LLC

9                UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12  NUTRISHARE, INC., a California corporation,   Case No. 2:08-cv-01252-WBS-EFB

13            Plaintiff,                          Complaint filed June 4, 2008

14       v.                                       **DECLARATION OF DEBORAH PFISTER
                                                  IN SUPPORT OF DEFENDANT'S
15  BioRx, LLC, an Ohio Limited Liability         OPPOSITION TO PLAINTIFF'S MOTION
    Company,                                      FOR PRELIMINARY INJUNCTION**
16
            Defendant.                            DATE:      August 18, 2008
17                                                TIME:      2:00 p.m.
                                                  CRTM:      5
18                                                JUDGE:     Hon. William B. Shubb

19

20       I, Deborah Pfister, hereby declare:

21       1.      I am the Director of Nutrition for NutriThrive, which is a product line that is

22  offered by BioRx.  I have been employed in this capacity since April 30, 2007, and work and

23  reside in Littleton, Massachusetts.  The following facts are within my own personal knowledge

24  and, if called upon to do so, I could and would competently testify personally thereto under oath.

25       2.      I am a registered dietician and have worked in the field of home infusion therapy

26  for nineteen years.  In my role as Director of Nutrition for NutriThrive, I have responsibility for

27  program development, marketing, clinical management of patients and business management.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702176.01/SD

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    3.    Other BioRx employees with direct responsibility for NutriThrive are as follows:  a

2    nurse who serves as our clinical coordinator, a part-time dietician, and one full time sales

3    representative, all located in Boston; and three part-time consumer advocates, one located in

4    Massachusetts and two located in Ohio.  There is also an independent sales contractor located in

5    Salt Lake City, Utah.

6    4.    I was involved in the name selection process for NutriThrive.  Attached as Exhibit

7    A hereto is a true and correct copy of the Program Description given to three graphic designers

8    who were hired to produce name and logos which portrayed health, wellness and vibrancy within

9    the context of home nutrition support.  Fifty possible names were narrowed down to eight names

10   which were presented to a focus group of nutrition professionals.  This group rated the eight

11   names and logos and overwhelmingly preferred NutriThrive due to the THRIVE component and

12   its ability to convey wellness and positive energy.  The name "Nutrishare" was not disclosed to

13   these designers or to the focus group as a basis for reference.

14   5.    True and correct copies of the Nutrishare and NutriThrive logos currently in use are

15   attached hereto as Exhibit B.

16   6.    The NutriThrive mark was first used in an Enteral Focus Group in Boston,

17   Massachusetts on June 18, 2007.

18   7.    From June 27 – 30, 2007 the Oley Conference was held in Cape Cod,

19   Massachusetts.  All major infusion companies attended this event, including representatives from

20   Nutrishare.  NutriThrive participated as a Gold Medallion sponsor for the Oley Conference in both

21   2007 and 2008.  At the 2007 Conference in Cape Cod, I personally spoke with two employees of

22   Nutrishare about our company.  One individual with whom I spoke, identified himself as their

23   Vice President of Marketing.  The other individual was Craig Peterson, R.D.  At no time did either

24   of these individuals make any reference to confusion or similarity of the company names.  At the

25   Oley Conference both Nutrishare and NutriThrive received awards for sponsorship at a ceremony

26   in the Exhibit Hall.  Representatives from both companies shared the podium to receive these

27   awards.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702176.01/SD

-2-
DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    8.    NutriThrive ads have appeared in the Oley Newsletter with Nutrishare ads for the

2    past year.

3    9.    From July 28 – 29, 2007, BioRx participated in a conference of the Association of

4    Gastric Motility Disorders (AGMD) in Burlington, Massachusetts.  Its NutriThrive exhibit was

5    located directly across from Plaintiff's Nutrishare exhibit.  Reid Nishikawa, from Nutrishare, was

6    stationed at Plaintiff's booth and did not express any concerns or make any comments to me or

7    within my hearing, about the NutriThrive name.

8    10.    From February 9 – 13, 2008, both Plaintiff's Nutrishare and BioRx's NutriThrive

9    products were exhibited at an American Society of Parenteral and Enteral Nutrition (ASPEN)

10    conference attended by physicians and nurses in Chicago, Illinois.

11    11.    Also, on February 8, 2008, at an Oley regional conference in Chicago, Illinois, both

12    NutriThrive and Nutrishare displayed side-by-side exhibits discussing their respective products

13    and services..

14    12.    The products supplied by both NutriThrive and Nutrishare are prescribed by

15    physicians.  The prescriptions are filled by licensed pharmacists and then provided to the ultimate

16    consumers.  The company supplying the product then bills the relevant insurer.

17    13.    Currently, NutriThrive has a total of 36 customers to whom we provide services, 29

18    of which are "enteral only" customers.

19    14.    I have not made and am not aware of any efforts by anyone associated with

20    NutriThrive, to recruit former Nutrishare customers as spokespersons for NutriThrive.  We have

21    had former Nutrishare patients seek us out for services that Nutrishare did not provide, and we

22    have solicited testimonials from them.

23    15.    NutriThrive has received written confirmation from ACHC (Accreditation

24    Commission for Health Care) that confirms that NutriThrive is accredited by ACHC to provide

25    parenteral and enteral nutrition therapies and has permission to use the ACHC logo in conjunction

26    with the company business.  Attached hereto as Exhibit C is an e-mail dated November 19, 2007

27    from Matthew Hughes, Accreditation Supervisor for ACHC, confirming that the NutriThrive

28    division of BioRx is accredited.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702176.01/SD

-3-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

16.     I have had personal conversations with both the owner of Sullivan's Pharmacy in Boston, Dr. Samuel Kocoshis of Cincinnati Children's Hospital, and Dr. Leonel Rodriquez about NutriThrive.  None of these individuals expressed any confusion between Nutrishare and NutriThrive.  Dr. Rodriquez has, in fact, participated as a member of NutriThrive's Nutrition Advisory Board since March 2008.

17.     I am aware that Nutrishare does provide some limited enteral nutrition services to certain of its customers.  However, my understanding is that it provides those services only in conjunction with its TPN services and only for existing customers.  Nutrishare does not market enteral nutrition as a sole therapy offering, nor will Nutrishare provide enteral nutrition to customers who do not require TPN.  This is information that is commonly known by people in this industry.  I am also aware of this as a result of my communications with a NutriThrive customer who was formerly a Nutrishare TPN and enteral customer.  When he no longer required TPN and only required enteral nutrition, Nutrishare would no longer provide service to him.  As a result, he became a customer of NutriThrive.  This customer is located in Galloway, Ohio.

18.     In addition to Nutrishare and NutriThrive, I am aware of other providers of nutritional therapies with similar names, including Nutrepletion Resources (www.nutrepletion.com), which provides nutritional support therapies to end stage renal disease patients, and Nutricia (www.nutricia.com), which produces enteral nutrition products.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of August, 2008, at Boston, MA

_____
DEBORAH PFISTER

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

702176.01/SD

-4-

DECLARATION OF DEBORAH PFISTER IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# EXHIBIT A

# BioRx Nutrition Support Program
## Program Description

**Mission:**
To provide a high quality clinical nutrition program specializing in the provision of home enteral and parenteral nutrition. This program focus on nutrition support from a disease-management approach, providing highly individualized products, services and programs driven by customer needs.

**Customers:**
- ✓ Consumers of enteral and parenteral nutrition products and services who are non-acute ie: requiring prolonged therapy.
- ✓ Physicians and other clinicians who care for the above consumers, specifically in the areas of GI and oncology.

**Program Foundation:**
- ✓ Nutrition Support Team approach to care- Dietitians, Nurses and Pharmacists providing collaborative patient assessment and monitoring
- ✓ Highly skilled and credentialed clinicians who provide expert care
- ✓ Cutting-edge nutritional care driven by Evidence-Based Practice
- ✓ Comprehensive nutrition support disease-management
- ✓ Individualized treatment plans and attention

**Program Goal:**
To provide high quality clinical services aimed at maximizing nutritional outcomes, minimizing complications, reducing need for high-tech nutrition support and ultimately improving consumers' quality of life.

**Competitiors:**
- ✓ Apria Healthcare:  Apria Nutrition Advantage
  www.apria.com
- ✓ Coram: Advanced Nutrition Services
  www.coramhc.com
- ✓ Critical Care Systems: Specialize Nutrition Support Services,
  www.criticalcaresystem.com
- ✓ Optioncare: Home Infusion Therapy- National Reach, Local Touch
  www.optioncare.com
- ✓ Local mom-and-pops

# EXHIBIT B





# EXHIBIT C

From: Matt Hughes - ACHC [mailto:mhughes@achc.org]
Sent: Monday, November 19, 2007 10:35 AM
To: Peg Gruenemeier
Cc: 'Mark Kestler'
Subject: RE: BioRx

Good news Peg,

I talked to my supervisor and the additions that you have made do not constitute a service addition in our book.  You are simply adding services that fall into the same standards as what you are accredited in.  This is not requiring a visit and any additional cost to you.  The only question I do have is are you planning to competitively bid next year for your enteral?  If so, we will have to get you on the list for CMS to recognize you as accredited so your bid will count.

You can use our logo for your new division of BioRX.

I will need to check for the branch addition you submitted a while back, the cost for that was $800.00 and once I receive that, I can get your certificate printed and sent to you.

Let me know if you have any other questions.

Thanks,

Matthew Hughes
Accreditation Supervisor

From: Peg Gruenemeier [mailto:pgruenemeier@biorx.net]
Sent: Friday, November 16, 2007 4:20 PM
To: Matt Hughes - ACHC
Cc: 'Mark Kestler'
Subject: BioRx

Matt,
 I was working with Toinette a few months ago with our Iowa Pharmacy addition and a new service line in development for BioRx.
We started a division of nutrition division of BioRx called NutriThrive.  This company is focused on TPN and enteral therapies.  The pharmacy for this division will be the Cincinnati pharmacy although we will service patients across the country.   Our original survey was for pharmacy and specialty pharmacy services.
I have a few questions about the new service line.

*       I need to complete the "service addition" application and forward to ACHC but what is the cost?

*       Will this require an additional survey at the Cincinnati office or be incorporated into our next survey?

*       We continue to do minimal nursing throughout the country but I anticipate this growing as our business continues to develop, will this require an additional survey?

*       As a division of BioRx, can NutriThrive use the ACHC logo?

Thanks!

Peg Gruenemeier, RN, CRNI
Clinical Coordinator
BioRx
513-792-7080

1  AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
   MICHAEL R. ADELE (BAR NO. 138339)
2  CHARLENE J. WILSON (BAR NO. 222497)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   501 West Broadway, 15th Floor
4  San Diego, California 92101-3541
   Phone: (619) 233-1155
5  Fax: (619) 233-1158
   E-Mail:  awintersheimer@allenmatkins.com
6          madele@allenmatkins.com
           cwilson@allenmatkins.com
7
   Attorneys for Defendant
8  BioRx, LLC

9                UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12  NUTRISHARE, INC., a California corporation,  Case No. 2:08-cv-01252-WBS-EFB

13            Plaintiff,                         Complaint filed June 4, 2008

14       v.                                      DECLARATION OF STEVEN C.
                                                 COFFARO, ESQ. IN OPPOSITION TO
15  BioRx, LLC, an Ohio Limited Liability        PLAINTIFF'S MOTION FOR
    Company,                                     PRELIMINARY INJUNCTION
16
             Defendant.                          DATE:      August 18, 2008
17                                               TIME:      2:00 P.M.
                                                 CRTRM:     5
18                                               JUDGE:     Hon. William B. Shubb

19

20       I, Steven C. Coffaro, hereby declare:

21       1.      I am an attorney at law, licensed to practice in the State of Ohio.  I am a partner

22  with the firm of Keating, Muething & Klekamp, PLL in Cincinnati, Ohio.  Our firm is Ohio

23  counsel for BioRx, LLC, the named Defendant in this action.  Our firm also represented BioRx in

24  connection with the NutriThrive trademark applications referenced in paragraphs 3 and 4 of this

25  Declaration.

26       2.      Attached hereto as Exhibit A are documents obtained from the Principal Register of

27  the United States Patent and Trademark Office.  These documents reflect a sampling of the

28

1   references in which the Patent and Trademark Office has required a disclaimer of the phrase

2   "nutri" or "nutra" in connection with the identified goods.

3       3.      Attached hereto as Exhibit B are documents obtained from the United States Patent

4   and Trademark Office relating to the registration of two NutriThrive marks.  The records reflect

5   that Application Serial No. 77/229275 was filed on July 13, 2007 and was published for

6   opposition on January 1, 2008, and the Examining Attorney has completed its review without

7   opposition.

8       4.      Exhibit B further shows that Application Serial No. 77/229266 was filed on July

9   13, 2007 and was published for opposition on January 15, 2008.  The Examining Attorney has

10  completed its review without opposition, and a Notice of Allowance was issued on April 8, 2008.

11      Executed this 4th day of August, 2008, at Cincinnati, Ohio

12

13                                  _/s/ Steven C. Coffaro_
                                    Steven C. Coffaro

14

15  2599012.1

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP      702174.01/SD

-2-
DECLARATION OF STEVEN C. COFFARO, ESQ. IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

# EXHIBIT A



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSER DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | NUTRI VALUE |
| **Goods and Services** | (CANCELLED) IC 029. US 046. G & S: [shelled, roasted or otherwise processed almonds], powdered milk, processed, edible pumpkin seeds, sunflower seeds and [sesame seeds]. FIRST USE: 19940304. FIRST USE IN COMMERCE: 19940304 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | **74477205** |
| **Filing Date** | January 7, 1994 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | May 30, 1995 |
| **Registration Number** | 2079524 |
| **Registration Date** | July 15, 1997 |
| **Owner** | (REGISTRANT) Food For Health Co., Inc. CORPORATION ARIZONA P.O. Box 6710 3655 West Washington Street Phoenix ARIZONA 85009 |
| | (LAST LISTED OWNER) TREE OF LIFE, INC. CORPORATION BY ASSIGNMENT DELAWARE P.O. BOX 9000 SAINT AUGUSTINE FLORIDA 32085 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | ANJANETTE PLICHTA STINSON |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NUTRI" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | April 19, 2008 |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  TOP  HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

| Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | NUTRI VALUE |
| **Goods and Services** | (CANCELLED) IC 030. US 046. G & S: [ bran ], yeast, wheat germ, carob powder; [spices and seasonings]. FIRST USE: 19940304. FIRST USE IN COMMERCE: 19940304 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | **74477206** |
| **Filing Date** | January 7, 1994 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | June 6, 1995 |
| **Registration Number** | 2079525 |
| **Registration Date** | July 15, 1997 |
| **Owner** | (REGISTRANT) Food For Health Co., Inc. CORPORATION ARIZONA P.O. Box 6710 3655 West Washington Street Phoenix ARIZONA 85009 |
| | (LAST LISTED OWNER) TREE OF LIFE, INC CORPORATION BY ASSIGNMENT DELAWARE P.O. BOX 410 AUGUSTINE FLORIDA 32085 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | ANJANETTE PLICHTA STINSON |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NUTRI" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | April 19, 2008 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | NUTRI VALUE |
| **Goods and Services** | (CANCELLED) IC 016. US 002 005 022 023 029 037 038 050. G & S: Newsletter directed at retailers in the health and natural foods and dietary supplements industry, regarding nutrition, produce, natural foods, and health foods. FIRST USE: 19940116. FIRST USE IN COMMERCE: 19940116 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75565996 |
| **Filing Date** | October 7, 1998 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 3, 1999 |
| **Registration Number** | 2289040 |
| **Registration Date** | October 26, 1999 |
| **Owner** | (REGISTRANT) Food For Health Co., Inc. CORPORATION ARIZONA 3655 W. Washington Street Phoenix ARIZONA 85009 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Glenn S. Bacal |
| **Prior Registrations** | 2079524;2079525 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NUTRI" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | July 29, 2006 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

Trademark Electronic Search System (TESS)

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `BOTTOM`  `HELP`

`Logout`  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

`TARR Status`  `ASSIGN Status`  `TDR`  `TTAB Status`  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | CHANDLER NUTRA STIMULANT FERTILIZER |
| **Goods and Services** | IC 001. US 001 005 006 010 026 046. G & S: liquid plant food, fertilizer, biostimulants, and chelated micronutrients, all for agricultural and horticultural use. FIRST USE: 19910915. FIRST USE IN COMMERCE: 19910915 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | **75277929** |
| **Filing Date** | April 21, 1997 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 10, 1998 |
| **Registration Number** | 2161805 |
| **Registration Date** | June 2, 1998 |
| **Owner** | (REGISTRANT) CHANDLER SALES CO CORPORATION UTAH 370 N. Draper Lane Provo UTAH 84601 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NUTRA STIMULANT FERTILIZER" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `TOP`  `HELP`

|.HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TARR Status | ASSIGN Status | TDR | TTAB Status    ( *Use the "Back" button of the Internet Browser to return to TESS*)

# FEELIN GROOVY NUTRA

| | |
|---|---|
| **Word Mark** | FEELIN GROOVY NUTRA |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Retail store services in the field of vitamins and nutritional supplements; Online retail store services, catalog ordering services and electronic catalog services featuring vitamins and nutritional supplements |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78942356 |
| **Filing Date** | August 1, 2006 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 9, 2007 |
| **Owner** | (APPLICANT) U.S. Nutraceuticals, L.L.C. DBA Valensa International LTD LIAB CO FLORIDA 2751 Nutra Lane Eustis FLORIDA 32726 |
| **Attorney of Record** | David L. Sigalow |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NUTRA" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | NUTRA TRACK |
| **Goods and Services** | (ABANDONED) IC 009. US 021 023 026 036 038. G & S: Computer software and downloadable computer software for use in calculation of nutrition facts for the consumer. FIRST USE: 19970000. FIRST USE IN COMMERCE: 19970000 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76034543 |
| **Filing Date** | April 25, 2000 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) D'Urso, Joseph J. INDIVIDUAL UNITED STATES 3040 NE 16TH Ave. #408-A Ft. Lauderdale FLORIDA 33334 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TRACK, NUTRA AND NUTRITRAC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | September 9, 2002 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT B

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Aug 2 04:13:04 EDT 2008*

Please logout when you are done to release system resources allocated for you.

List At: [    ] OR [    ] to record: [    ] **Record 1 out of 2**

( Use the "Back" button of the Internet Browser to return to TESS)

# NUTRITHRIVE

| | |
|---|---|
| **Word Mark** | **NUTRITHRIVE** |
| **Goods and Services** | IC 044. US 100 101. G & S: Medical services, namely, administration of nutritional products for enteral therapy and total parenteral nutrition. FIRST USE: 20070618. FIRST USE IN COMMERCE: 20070618 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77229275 |
| **Filing Date** | July 13, 2007 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 1, 2008 |
| **Owner** | (APPLICANT) BioRX, LLC LTD LIAB CO OHIO 10828 Kenwood Road Cincinnati OHIO 45242 |
| **Attorney of Record** | Patricia B. Hogan |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |



|.HOME| SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Document Description: **Notice of Publication**
   Mail / Create Date: **12-Dec-2007**



Side - 1



## NOTICE OF PUBLICATION UNDER §12(a)
## MAILING DATE: Dec 12, 2007
## PUBLICATION DATE:  Jan 1, 2008

The mark identified below will be published in the Official Gazette on Jan 1, 2008.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Notice of Allowance.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

| | |
|---|---|
| **SERIAL NUMBER:** | **77229275** |
| **MARK:** | **NUTRITHRIVE** |
| **OWNER:** | **BioRX, LLC** |

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

| FIRST-CLASS MAIL |
|---|
| U.S POSTAGE |
| PAID |

PATRICIA B. HOGAN
KEATING MUETHING & KLEKAMP PLL
1 E 4TH ST STE 1400
CINCINNATI, OH  45202-3752

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer]

FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information**: Please e-mail *TrademarkAssistanceCenter@uspto.gov*, or telephone either *571-272-9250 or 1-800-786-9199.*
- **Technical help**: *For instructions on how to use TDR, or help in resolving **technical** glitches, please e-mail TDR@uspto.gov. If outside of the normal business hours of the USPTO, please e-mail Electronic Business Support, or call 1-800-786-9199.*
- **Questions about USPTO programs**: *Please e-mail USPTO Contact Center (UCC).*

**NOTE**: *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*

Document Description: **Notice of Allowance**
Mail / Create Date: **25-Mar-2008**



## U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Mar 25, 2008

PATRICIA B. HOGAN
KEATING MUETHING & KLEKAMP PLL
1 E 4TH ST STE 1400
CINCINNATI, OH 45202-3752

ATTORNEY
REFERENCE NUMBER

RE3848IP0001

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request").  If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed.  Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees.  Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information.  Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online.  If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

#### The following information should be reviewed for accuracy:

SERIAL NUMBER:         77/229275
MARK:                  NUTRITHRIVE (STANDARD CHARACTER MARK)
OWNER:                 BioRX, LLC
                       10828 Kenwood Road
                       Cincinnati , OHIO  45242

This application has the following bases, but not necessarily for all listed goods/services:

Section 1(a): NO              Section 1(b): YES              Section 44(e): NO

#### GOODS/SERVICES BY INTERNATIONAL CLASS

044 -    Medical services, namely, administration of nutritional products for enteral therapy and total parenteral nutrition – FIRST USE DATE: NONE; – USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

---

**ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS**

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer] FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information**: *Please e-mail TrademarkAssistanceCenter@uspto.gov, or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help**: *For instructions on how to use TDR, or help in resolving **technical** glitches, please e-mail TDR@uspto.gov. If outside of the normal business hours of the USPTO, please e-mail Electronic Business Support, or call 1-800-786-9199.*
- **Questions about USPTO programs**: *Please e-mail USPTO Contact Center (UCC).*

**NOTE**: *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Sat Aug 2 04:13:04 EDT 2008

Please logout when you are done to release system resources allocated for you.

List At: [          ] OR [       ] to record: [          ] **Record 2 out of 2**

[ TARR Status ] [ ASSIGN Status ] [ TDR ] [ TTAB Status ] *( Use the "Back" button of the Internet Browser to return to TESS)*

# NUTRITHRIVE

| | |
|---|---|
| **Word Mark** | **NUTRITHRIVE** |
| **Goods and Services** | IC 005. US 006 018 044 046 051 052. G & S: Pharmaceutical preparations for enteral therapy and total parenteral nutrition |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77229266 |
| **Filing Date** | July 13, 2007 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 15, 2008 |
| **Owner** | (APPLICANT) BioRX, LLC LTD LIAB CO OHIO 10828 Kenwood Road Cincinnati OHIO 45242 |
| **Attorney of Record** | Patricia B. Hogan |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



Document Description: **Notice of Publication**
   Mail / Create Date: **26-Dec-2007**

---

Side - 1



## NOTICE OF PUBLICATION UNDER §12(a)
## MAILING DATE: Dec 26, 2007
## PUBLICATION DATE:  Jan 15, 2008

The mark identified below will be published in the Official Gazette on Jan 15, 2008.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Notice of Allowance.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

**SERIAL NUMBER:**      **77229266**
**MARK:**               **NUTRITHRIVE**
**OWNER:**              **BioRX, LLC**

---

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

PATRICIA B. HOGAN
KEATING MUETHING & KLEKAMP PLL
1 E 4TH ST STE 1400
CINCINNATI, OH  45202-3752

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer]
FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information**: *Please e-mail* TrademarkAssistanceCenter@uspto.gov, *or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help**: *For instructions on how to use TDR, or help in resolving **technical** glitches, please e-mail* TDR@uspto.gov. *If outside of the normal business hours of the USPTO, please e-mail* Electronic Business Support, *or call 1-800-786-9199.*
- **Questions about USPTO programs**: *Please e-mail* USPTO Contact Center (UCC).

**NOTE**: *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*

Document Description: **Notice of Allowance**
Mail / Create Date: **08-Apr-2008**



## U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Apr 8, 2008

PATRICIA B. HOGAN                                        ATTORNEY
KEATING MUETHING & KLEKAMP PLL              REFERENCE NUMBER
1 E 4TH ST STE 1400
CINCINNATI, OH 45202-3752                              RE3848IP0001

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

#### The following information should be reviewed for accuracy:

SERIAL NUMBER:          77/229266
MARK:                          NUTRITHRIVE (STANDARD CHARACTER MARK)
OWNER:                       BioRX, LLC
                                    10828 Kenwood Road
                                    Cincinnati , OHIO  45242

This application has the following bases, but not necessarily for all listed goods/services:

   Section 1(a): NO                    Section 1(b): YES                    Section 44(e): NO

#### GOODS/SERVICES BY INTERNATIONAL CLASS

005 -     Pharmaceutical preparations for enteral therapy and total parenteral nutrition -- FIRST USE DATE: NONE; -- USE IN
             COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

**ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS**

<u>TDR Home</u>

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [<u>required PDF viewer</u>]
<u>FAQ: Are you seeing only the first page of this PDF document?</u>

*If you need help:*

- **General trademark information**: *Please e-mail <u>TrademarkAssistanceCenter@uspto.gov</u>, or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help**: *For instructions on how to use TDR, or help in resolving **technical** glitches, please e-mail <u>TDR@uspto.gov</u>. If outside of the normal business hours of the USPTO, please e-mail <u>Electronic Business Support</u>, or call 1-800-786-9199.*
- **Questions about USPTO programs**: *Please e-mail <u>USPTO Contact Center (UCC)</u>.*

**NOTE**: *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*