1 | AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
MICHAEL R. ADELE (BAR NO. 138339)
2 | CHARLENE J. WILSON (BAR NO. 222497)
ALLEN MATKINS LECK GAMBLE
3 |   MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
4 | San Diego, California 92101-3541
Phone: (619) 233-1155
5 | Fax: (619) 233-1158
E-Mail:   awintersheimer@allenmatkins.com
6 |           madele@allenmatkins.com
           cwilson@allenmatkins.com
7 |
Attorneys for Defendant
8 | BioRx, LLC

9 |               UNITED STATES DISTRICT COURT

10 |            EASTERN DISTRICT OF CALIFORNIA

11 |

12 | NUTRISHARE, INC., a California corporation,      Case No. 2:08-cv-01252-WBS-EFB

13 |             Plaintiff,                           Complaint filed June 4, 2008

14 |      v.                                          **DECLARATION OF DOUGLAS ERIC
                                                     HILL IN SUPPORT OF DEFENDANT'S
15 | BioRx, LLC, an Ohio Limited Liability            OPPOSITION TO MOTION FOR
Company,                                             PRELIMINARY INJUNCTION**

16 |
             Defendant.                              DATE:      August 18, 2008
17 |                                                  TIME:      2:00 p.m.
                                                     CRTRM:     5
18 |                                                  JUDGE:     Hon. William B. Shubb

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

852433.01/OC

DECLARATION OF DOUGLAS ERIC HILL IN
OPPOSITIONTO PRELIMINARY INJUNCTION MOTION

I, Douglas Eric Hill, hereby declare:

1.     I am the Vice President and a Member of BioRx, LLC, an Ohio limited liability company.  I work and reside in High Point, North Carolina.

2.     I oversee the operations of BioRx.  After reviewing the declaration of Rodney Okomoto submitted by Nutrishare in support of its preliminary injunction motion, I wrote to the ACHC to determine whether or not Mr. Okomoto accurately testified about his discussions with the ACHC.  A true and correct copy of my letter to the ACHC is attached hereto as Exhibit A.

3.     On August 6, I received a response to my letter from the ACHC.  A true and correct copy of that letter is attached hereto as Exhibit B.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of August, 2008, at High Point, NC.

_____
DOUGLAS ERIC HILL

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

852433.01/OC

-2-
DECLARATION OF DOUGLAS ERIC HILL IN
OPPOSITION TO PRELIMINARY INJUNCTION MOTION

# EXHIBIT A





August 1, 2008

Thomas E.Cesar
Accreditation Commission for Health Care, Inc.
4700 Falls of Neuse Rd., Suite 280
Raleigh, NC 27609

Dear Mr. Cesar;

I am the co-founder and Vice President of BioRx, an Ohio based home infusion provider which is accredited by your organization.

In 2007 (November 16, 2007) our company contacted your organization to inform them that we were starting a new "brand name" for our home total parenteral nutrion and enteral nutrition services ("TPN and "enteral"), NutriThrive™. As part of that communication our clinical management specifically asked for guidance on the use of our ACHC accreditation status and the appropriateness of the use and publication of our accreditation status related to our provision of TPN and enteral products in the home prior to us beginning providing service. I have attached the email communications from your organization affirming that, we were not required to be re-surveyed for the simple addition of a therapy and that our use of the ACHC logo was proper.

On July 8, 2007 Mr. Rodney Okamoto, the President of Nutrishare™ ( A CA based provider of TPN) filed the attached sworn statement with the US District Court, Eastern District Of California in which he alleges that he had a conversation with you on July 2, 2008 in which you personally told him that "Nutrithrive is not accredited" and that you were "investigating the matter". It appears to me that his statement also insinuates that you indicated agreement with him that our organization was improperly using the ACHC accreditation status despite the fact that your staff were made aware of our intent, and in fact, gave us specific approval to use the logo.

Additionally as you can see he also alleges that you said ***"in your opinion as the president of the leading organization that licenses in-home healthcare providers, it is dangerous and not in the best interest of the public for BioRx to continue to use the NutriThrive name given Nutrishare's similar name and nearly identical therapeutic specialty because it is likely to confuse the public."*** Again this is his attestation to a direct quote attributable to you filed in a CA court by Mr. Okamoto.

Mr. Cesar I would respectfully request that you respond to BioRx as to whether Mr. Okamoto's sworn statement is an accurate portrayal of your statements, comments, or ACHC's belief on the matter.





I do find it odd that he attributes a statement to you that indicates that ACHC "licenses" in-home healthcare providers when it is the various state Board's of Pharmacies and other state regulatory agencies, not ACHC, that license company's like ours.

None the less, if in fact Mr. Okamoto's description of your conversation provided to the California court is accurate, I would ask you to please respond to BioRx as to the following:

- ☐ Why would you indicate, insinuate or state that "NutriThrive is not accredited" when it is clear that we proactively asked for clarification on this matter and received clear approval from your staff that we were well within our right to indicate our ACHC accreditation status
- ☐ In light of the fact that our organization went through an exhaustive independent naming process and petitioned the US Trademark office with no conflicts, why would the President of ACHC have an interest in telling one of our competitors that "in your opinion …it is dangerous and not in the best interest of the public for BioRx to continue to use the NutriThrive name"

It should also be noted that other sectors of the home care industry use very similar naming standards.  In fact there are no less than 5 specialty pharmacies in the US that use "Bio" as the first part of their name, countless home health providers who use "home" or "in-home" in their name and an untold number of respiratory providers who use "$O_2$" in their name.  I know of no known untoward clinical outcomes in the US related to those examples or ours.  So if in fact you did make that statement, using those words, to Mr. Okamoto please respond to me why you would make these statements without speaking with our organization or provide the basis for which the statement was made.

Mr. Okamoto's company is making a trademark infringement claim (lawsuit) against our organization in which he is demanding a monetary award if he prevails.  It is clear he is using a sworn statement attesting to your, and your organization's beliefs, in order to bolster his trademark infringement claim and is asking a judge to grant an injunction requiring us to stop using the name on August 18, 2008 using your alleged statements as the basis for doing so.

I respectfully must receive a response from you as to whether you actually made these statements and if you did, what your basis for making them was.  In light of the fact that there is a hearing on this matter in just a few days, time is of the essence in your response.  If you did not make these statements, your organization's position is different, or you made statements that were different than indicated by Mr. Okamoto then that is important for us to understand as well.  I may be reached as follows:





ACHC
ACCREDITED

Eric Hill
BioRx, LLC.
200 W. Lexington Ave
Suite 203
High Point, NC 27262
ehill@biorx.net
336.688.4909

Thank you in advance for your help in clearing up this matter.  In light of the timing of this I would request that any response sent by mail also be copied to me via email.  I am sorry that you are having to spend time on this matter but I do feel that our organization and clinical management team acted with the utmost integrity and proactive intent by appropriately contacting your staff, informing them of our intent and gaining approval prior to moving forward with the provision of clinical and marketing activities over nine months ago.  I look forward to your response.

Regards,

Eric Hill
Vice President

Cc:  Patty Brogan, esq.

Attachments

# EXHIBIT B

**POYNER SPRUILL** LLP

ATTORNEYS-AT-LAW

Daniel G. Cahill
Attorney-at-Law

Direct Dial: 919.783.2902
dcahill@poynerspruill.com

www.poynerspruill.com

August 5, 2008

Other offices: Charlotte, Rocky Mount,
Southern Pines

**VIA E-MAIL AND U.S. MAIL**

Mr. Eric Hill (ehill@biorx.net)
Vice President
BioRx LLC
200 West Lexington Avenue
Suite 203
High Point, NC 27262

   Re: Response to Letter to Thomas E. Cesar dated August 1, 2008

Dear Mr. Hill:

   I am writing to follow up on my August 4th letter and in formal response to your August 1st correspondence to Mr. Thomas E. Cesar of the Accreditation Commission for Health Care, Inc. ("ACHC").

   I have studied your letter and attachments and investigated the events that your describe therein. First let me make it very clear that neither Tom Cesar, nor anyone at ACHC has done or said anything defamatory, incorrect or disparaging about you or your company.

   All of the material assertions of Mr. Okamoto that you address in your letter are inaccurate or are being taken out of context. Mr. Cesar did have a telephone conversation with Mr. Okamoto on or about July 2, 2008, but in response to Mr. Okamoto's question about whether NutriThrive was accredited, Mr. Cesar said he did not know if NutriThrive was accredited with ACHC, and that he would check. After checking with ACHC's Director of Accreditation and Clinical Compliance, Mr. Cesar called Mr. Okamoto back and told him that NutriThrive did not need to be accredited because it shared the same governing body with BioRx, an organization that already was accredited. Mr. Cesar has a distinct recollection of this second call because he reached Mr. Okamoto on his cell phone while Mr. Okamoto was attending a Los Angeles Angels baseball game. Therefore, neither Mr. Cesar nor ACHC made any incorrect or inaccurate statements concerning NutriThrive's accreditation. Mr. Cesar simply confirmed the lack of need for separate accreditation and NutriThrive's good status by virtue of BioRx's accreditation.

   The reference in Mr. Okamoto's declaration identifying Mr. Cesar as "the president of the leading organization that licenses in-home healthcare providers" is simply incorrect. As you are well aware, ACHC is an accrediting body and has no governmental licensing power.



August 5, 2008
Page 2


     Mr. Okamoto's recollection of Mr. Cesar saying "it is dangerous and not in the best interest of the public for BioRx to continue to use the NutriThrive name given Nutrishare's similar name and nearly identical therapeutic specialty because it is likely to confuse the public" is likewise not correct. Mr. Cesar made no statement about danger to the public nor what is in the public interest. All he did, in response to a specific question from Mr. Okamoto in this second telephone call, was simply to concede the possibility that the similarity of the two names might lead some consumers to be confused. He said nothing more. This comment was his expression of a personal opinion in response to a question by Mr. Okamoto.

     I trust this answers all of the questions contained in your letter. Should you desire to discuss this matter further, please do not hesitate to contact me directly.

Very truly yours,

Daniel G. Cahill

DGC:ke

cc:    Thomas E. Cesar
       William R. Shenton, Esq.