1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10
                          ----oo0oo----
11
NUTRISHARE, INC., a California
12 Corporation,
                                    NO. CIV. S-08-1252 WBS EFB
13          Plaintiff,
                                    MEMORANDUM AND ORDER RE:
14                                  MOTION TO DISMISS FOR LACK OF
                                    SUBJECT MATTER JURISDICTION;
15      v.                          MOTION TO DISMISS FOR IMPROPER
                                    VENUE OR, ALTERNATIVELY,
16                                  MOTION TO TRANSFER VENUE
BIORX, L.L.C., an Ohio Limited
17 Liability Company,

18          Defendant.
   _____/
19

20

21                        ----oo0oo----

22          Plaintiff Nutrishare, Inc. brought this action alleging

23 trademark infringement and unfair competition stemming from

24 defendant BioRx, L.L.C.'s use of its "NutriThrive" mark.

25 Defendant now moves to dismiss plaintiff's Complaint for a lack

26 of personal jurisdiction and improper venue or, alternatively,

27 transfer the action to another venue.

28 ///

                               1

I.    <u>Factual and Procedural Background</u>

Plaintiff, a corporation duly organized and existing under the laws of the State of California with its principal place of business in Elk Grove, California, specializes in the nationwide business of providing products and services related to "total parenteral nutrition" (TPN)[1] directly to consumers in their homes.  (Compl. ¶ 1.)  Proceeding under its "Nutrishare" designation since 1991, plaintiff formally registered the "Nutrishare" mark in the category of retail pharmacy and mail order services on September 3, 2002.  (<u>Id.</u> at ¶ 10.)  Throughout plaintiff's commerical existence, the mark has been prominently displayed on its products, letter head, invoices, advertising, and publications—either in standard characters or in conjunction with a logo depicting "Nutrishare" in block letters preceded by the stylized image of a bag and IV catheter.  (<u>Id.</u> at ¶ 12.)

Defendant, a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio, is a national provider and distributor of specialty pharmaceuticals, medical supplies, and clinical support services.  (<u>Id.</u> at ¶ 2; Rielly Decl. ¶ 3.)  On November 18, 2007, defendant formally launched its own TPN-related products and services division, designated "NutriThrive."  (Compl. ¶ 13.)

Based on defendant's use of the "NutriThrive" mark, plaintiff filed its Complaint on June 4, 2008 in the Eastern

---

[1]    TPN is the practice of supplying nutrients intravenously to individuals who suffer from ailments that deteriorate their gastrointestinal system to such a degree that they can no longer eat and digest foods.  (Compl. ¶ 1.)

2

District of California, alleging the following claims: (1)

Trademark Infringement--Lanham Act § 31(1), 15 U.S.C. § 1114(1);

(2) Common Law Trademark Infringement; (3) Unfair

Competition--Lanham Act § 43(a), 15 U.S.C. § 1125(a); and (4)

Unfair Competition--California Business and Professions Code §§

17200-17210.  On July 16, 2008, defendant filed a motion to

dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(2) for a lack of personal jurisdiction.  Should the court

determine personal jurisdiction in California to be proper,

defendant moves to dismiss the Complaint for improper venue

pursuant to Rule 12(b)(3) or, alternatively, transfer venue to

the Southern District of California.

II.  <u>Discussion</u>

 A. <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

  A plaintiff has the burden of establishing that the

court has personal jurisdiction over a defendant.  <u>Doe v Unocal

Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).  In assessing a

plaintiff's showing, the court may consider evidence presented in

affidavits as well as other evidence procured during discovery.

But when the court acts on the motion without holding a plenary

evidentiary hearing, as here, a plaintiff need only make a prima

facie showing of jurisdictional facts to withstand the motion to

dismiss.  <u>Id.</u>; <u>see also</u> <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580,

587 n.3 (9th Cir. 1993) (noting that where the district court

"relies solely on affidavits and discovery materials, the

plaintiff need only establish a prima facie case of

jurisdiction").  When not directly controverted, a plaintiff's

version of the facts must be taken as true and conflicts between

the facts contained in the parties' affidavits should be resolved
in favor of this plaintiff.  <u>Doe</u>, 248 F.3d at 922.  Once a
defendant has contradicted allegations contained in the
complaint, however, a plaintiff may not rest on the pleadings,
but must present admissible evidence which, if true, would
support the exercise of personal jurisdiction.  <u>Harris Rutsky &
Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122,
1129 (9th Cir. 2003).

In union with a plaintiff's burden, a federal court may
only exercise personal jurisdiction over a defendant when such
jurisdiction comports with the law of the state in which the
court sits and with the requirements of due process.  <u>Lee v City
of Los Angeles</u>, 250 F.3d 668, 692 (9th Cir. 2001).  "California
[law] permits the exercise of personal jurisdiction to the full
extent permitted by due process."  <u>Bancroft & Masters, Inc. v.
Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000); <u>see
also</u> Cal Civ. Proc. Code § 410.10 ("A court of this state may
exercise jurisdiction on any basis not inconsistent with the
Constitution of this state or of the United States.").

Due process requires a defendant to have certain
minimum contacts with the forum state so that permitting the suit
would not offend "traditional notions of fair play and
substantial justice."  <u>Int'l Shoe Co v. Washington</u>, 326 U.S. 310,
316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940));
<u>see also</u> <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 297
(1980) (holding that the defendant's "conduct and connection with
the forum state" must be such that the defendant "should
reasonably anticipate being haled into court there").  The nature

4

1  and quality of the contacts with the forum state necessary to

2  support personal jurisdiction depend upon whether the defendant

3  consents to jurisdiction or, alternatively, whether the plaintiff

4  asserts general or specific personal jurisdiction over the

5  defendant.  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316,

6  1320 (9th Cir. 1998).

7          1.   <u>Consent to Personal Jurisdiction</u>

8          Recognizing that "there are a 'variety of legal

9  arrangements' by which a litigant may give 'express or implied

10 consent' to the personal jurisdiction" of a state, <u>Burger King</u>

11 <u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 n.14 (1985) (citation

12 omitted), plaintiff argues that defendant consented to

13 jurisdiction in California as a matter of law when it registered

14 as a non-resident pharmacy with the California State Board of

15 Pharmacy and appointed an agent for service of process.  The

16 Ninth Circuit has not definitively stated whether a foreign

17 company's registration to do business in a state and appointment

18 of an agent for service of process are acts that equal consent to

19 personal jurisdiction in that state.  Other courts have decided

20 the issue both ways.  <u>Compare</u> <u>Ratliff v. Cooper Labs., Inc.</u>, 444

21 F.2d 745, 748 (4th Cir. 1971) (holding that "the application to

22 do business and the appointment of an agent for service . . . is

23 of no special weight in the [jurisdictional] context") <u>with</u>

24 <u>Knowlton v. Allied Van Lines, Inc.</u>, 900 F.2d 1196, 1199 (8th Cir.

25 1990) ("The whole purpose of requiring designation of an agent

26 for service is to make a nonresident suable in the local

27 courts.").

28          This jurisdictional conflict, however, is not entirely

applicable to the instant action.  Each case that plaintiff
relies upon to establish jurisdictional consent--and even the
cases that directly controvert its argument--deal with a foreign
corporation that had registered to do business within a
particular state and had appointed an agent for service in that
specific context.  Notably, defendant has never registered with
the California Secretary of State, as it would be required to do
if it were "doing business in" California as contemplated by
those cases.  See Cal. Corp. Code § 17451(a) ("Before transacting
intrastate business in this state, a foreign limited liability
company shall register with the Secretary of State.").  Rather,
defendant has only registered with the California State Board of
Pharmacy as it must to do in the event that it, like other
nonresident pharmacies subject to California's Pharmacy Law, Cal.
Bus. & Prof. Code §§ 4000-4480, chose to ship any controlled
substances to consumers in California from outside the state.  In
doing so, defendant was also required to designate a agent for
service of process by section 4112 of the California Business and
Professions Code.  Cal. Bus. & Prof. Code § 4111(c)(1).[2]

---

[2]    Additionally, in section 4120(d) of the California
Business and Professions Code, the statute declares that "[t]he
Legislature, by enacting this section, does not intend a license
issued to any nonresident pharmacy pursuant to this section to
serve as any evidence that the nonresident pharmacy is doing
business within this state."  Cal. Bus. & Prof. Code § 4120(d)
(emphasis added).  While it appears that the primary legislative
intent of this subsection was to distinguish between nonresident
pharmacies who conduct intrastate business from those who conduct
interstate business for licensure and taxation purposes,
Governor's Chaptered Bill File for Assembly Bill No. 2025 (1968
Reg. Sess.), Chapter 1463, it is nonetheless serves to further
separate defendant from plaintiff's proffered cases dealing
exclusively with defendants that were found to have explicitly
"registered to do business within" a particular state.

6

1    Moreover, plaintiff's argument that voluntary
2 compliance with any such state statute requiring registration and
3 appointment of an agent for service therein amounts to
4 substantial contact for jurisdictional purposes does not comport
5 with due process.  By registering with an agency of the state, a
6 foreign company "only potentially subjects itself to
7 jurisdiction; it does not subject itself to potential
8 jurisdiction."  Leonard v. USA Petroleum Corp., 829 F. Supp. 882,
9 888 (S.D. Tex. 1993); see also id. at 888-89 ("The designation of
10 an agent simply gives the company more efficient notice than
11 [other methods of] service. . . .  In complying with the [forum
12 state's] registration statute, [defendant] consented to personal
13 jurisdiction in [the forum state] only if the jurisdiction were
14 constitutional.") (emphasis added).  "Registration to do business
15 and appointment of an agent for service of process, especially
16 when done to fulfill state law requirements, . . . do not
17 constitute a general business presence or consent to suit in [the
18 forum state's] courts on every matter." Id. at 889; see also
19 Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir.
20 1992) ("Not only does the mere act of registering an agent not
21 create [defendant's] general business presence in [the forum
22 state], it also does not act as consent to be hauled into [the
23 forum state's] courts on any dispute with any party anywhere
24 concerning any matter.").

25    Consequently, because due process is the cornerstone of
26 personal jurisdiction, this court is not permitted to haul a
27 nonresident company like defendant across state lines on the
28 fiction that it somehow consented to jurisdiction in California.

7

1    See Leonard, 829 F. Supp. at 889 ("The idea that a foreign

2    corporation consents to jurisdiction in [the forum state] by

3    completing a state-required form, without having Contact with

4    [forum state], is entirely fictional.  Due process is central to

5    consent; it is not waived lightly.  A waiver through consent must

6    be willful, thoughtful, and fair.  'Extorted actual consent' and

7    'equally unwilling implied consent' are not the stuff of due

8    process.") (citation omitted); see also Ratliff v. Cooper Labs.,

9    Inc., 444 F.2d 745, 748 (4th Cir. S.C. 1971) ("The principles of

10    due process require a firmer foundation than mere compliance with

11    state domestication statutes.").

12            2.   General Jurisdiction

13            Under general jurisdiction, a defendant whose contacts

14    with a state are "substantial" or "continuous and systematic" can

15    be brought into court in that state in any action, even if the

16    action is unrelated to those contacts.  See Helicopteros

17    Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984).

18    "This is an exacting standard, as it should be, because a finding

19    of general jurisdiction permits a defendant to be haled into

20    court in the forum state to answer for any of its activities

21    anywhere in the world."  Schwarzenegger v. Fred Martin Motor Co.,

22    374 F.3d 797, 801 (9th Cir. 2004); see also Bancroft & Masters,

23    Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)

24    ("The standard for establishing general jurisdiction is 'fairly

25    high,' and requires that the defendant's contacts be of the sort

26    that approximate physical presence.") (internal citations

27    omitted).

28            Here, the court cannot exercise general jurisdiction

8

1  over defendant because its contacts do not qualify as either

2  substantial or continuous and systematic.  It is uncontested that

3  defendant's principal place of business is in Ohio, owns no

4  property in California, owes no taxes in California, and

5  maintains no employees or bank accounts in California.  (Hill

6  Decl. ¶¶ 9, 10; Pfister Decl. ¶ 13; Def.'s Reply Mem. in Supp. of

7  Mot. to Dismiss 2:8-10.)  Although it has the burden of

8  establishing general jurisdiction, plaintiff has asserted little

9  to this effect, save conclusory assertions that defendant

10 maintains relationships with business partners and nursing

11 agencies in the state.  Defendant categorically denies these

12 assertions, and has presented substantial evidence to the

13 contrary.  (Hill Decl. ¶ 5; Pfister Decl. ¶ 13); see also

14 Schwarzenegger, 374 F.3d at 800 (finding that "plaintiff cannot

15 'simply rest on the bare allegations of its complaint'" because

16 only "uncontroverted allegations in the complaint must be taken

17 as true.") (citations omitted).

18      Given the paucity of plaintiff's contentions concerning

19 substantial activity between defendant and California, it is

20 apparent that defendant's activities in the forum state "were

21 more occasional than continuous, and more infrequent than

22 systematic."  Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331

23 (9th Cir. 1984).  Even assuming that plaintiff could provide

24 evidence that defendant maintained such scarce contacts, it is

25 evident that plaintiff's allegations would still fall well short

26 of demonstrating the "'continuous and systematic' contacts that

27 the Supreme Court and [the Ninth Circuit] have held to constitute

28 sufficient presence' to warrant general jurisdiction."

1  <u>Schwarzenegger</u>, 374 F.3d at 801; <u>see, e.g.</u>, <u>Helicopteros</u>

2  <u>Nacionales de Colombia, S.A.</u>, 466 U.S. at 416 (no jurisdiction

3  over foreign corporation that sent officer to forum for one

4  negotiating session, accepted checks drawn on a forum bank,

5  purchased equipment from the forum, and sent personnel to the

6  forum to be trained); <u>Cubbage v. Merchant</u>, 744 F.2d 665, 667-68

7  (9th Cir. 1984) (no jurisdiction over doctors despite significant

8  numbers of patients in forum, use of forum's state medical

9  insurance system and telephone directory listing that reached

10 forum); <u>Gates Learjet Corp.</u>, 743 F.2d at 1330-31 (no jurisdiction

11 over defendants despite several visits and purchases in forum,

12 solicitation of contract in forum that included choice of law

13 provision favoring forum, and extensive communication with

14 forum); <u>Congoleum Corp. v. DLW Aktiengesellschaft</u>, 729 F.2d 1240,

15 1243 (9th Cir. 1984) (developing sales force in forum state

16 insufficient); <u>Cornelison v. Chaney</u>, 16 Cal. 3d 143, 149 (1976)

17 (holding that--despite the defendant's activity in California

18 consisting of some twenty trips a year into the state over the

19 past seven years to deliver and obtain goods, an independent

20 contractor relationship with a local broker, and a Public

21 Utilities Commission license--"these contacts are not sufficient

22 to justify the exercise of jurisdiction over defendant without

23 regard to whether plaintiff's cause of action is relevant to

24 California activity").

25         3.   <u>Specific Jurisdiction</u>

26         Having concluded both that defendant did not consent to

27 personal jurisdiction and that the court does not have general

28 jurisdiction over defendant, the court next examines plaintiff's

allegations through the analytical lens of specific jurisdiction. The following three-part test dictates whether specific jurisdiction can be exercised over defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; <u>or</u> perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987) (emphasis added).  The plaintiff bears the burden of satisfying the first two prongs of the test.  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-78 (1985).

> a.    <u>Purposefully Avail/Direct</u>

    This prong of the specific jurisdiction test has been further subdivided into two distinct questions: whether BioRx either (1) "purposefully availed" itself of the privilege of conducting activities in the forum, or (2) "purposefully directed" its activities toward the forum.  See <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004) ("We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts.  A purposeful availment analysis is most often used in

11

1   suits sounding in contract.  A purposeful direction analysis, on

2   the other hand, is most often used in suits sounding in tort.")

3   (internal citations omitted).

4                        i.    Purposeful Availment Generally

5           A showing that a defendant purposefully availed itself

6   of the privilege of doing business in a forum state typically

7   consists of evidence of the defendant's contacts or actions in

8   the forum.  By making such contacts or taking such actions, a

9   defendant "purposefully avails itself of the privilege of

10  conducting activities within the forum State, thus invoking the

11  benefits and protections of its laws."  Hanson v. Denckla, 357

12  U.S. 235, 253 (1958).  In return for these "benefits and

13  protections," a defendant must "submit to the burdens of

14  litigation in that forum."  Burger King, 471 U.S. at 476; see

15  also Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986)

16  ("[P]ersonal jurisdiction over nonresidents of a state is a quid

17  for a quo that consists of the state's extending protection or

18  other services to the nonresident.").

19          With respect to this inquiry, plaintiff merely

20  reiterates the above-addressed argument that defendant

21  purposefully availed itself of the benefits and privileges of

22  California when it registered with the California State Board of

23  Pharmacy and therein appointed an agent for service of process.

24  Because the court has acknowledged that due process does not

25  permit it to haul defendant across state lines simply based upon

26  its compliance with a state statute, the traditional

27  justification for finding purposeful availment thus does not

28  apply.  See supra, Section II.A.  To the extent that defendant's

                                  12

1  conduct might justify the exercise of personal jurisdiction in

2  California, therefore, such conduct must have been purposefully

3  directed at California.

4                    ii.  Purposeful Direction

5          In contrast to purposeful availment, a showing that a

6  defendant purposefully directed his conduct toward a forum state

7  usually consists of evidence of the defendant's actions outside

8  the forum state that are directed at the forum, such as the

9  distribution in the forum state of goods originating elsewhere.

10 Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75 (1984);

11 see also World-Wide Volkswagen, 444 U.S. at 297-98 (noting that a

12 "forum State does not exceed its powers under the Due Process

13 Clause if it asserts personal jurisdiction over a corporation

14 that delivers its products into the stream of commerce with the

15 expectation that they will be purchased by consumers in the forum

16 State"); Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 899

17 (9th Cir. 2002) (finding purposeful direction where the defendant

18 distributed its pop music albums from Europe in the forum state).

19 Significantly, due process permits the exercise of personal

20 jurisdiction over a defendant who "purposefully directs" his

21 activities at residents of a forum, even in the "absence of

22 physical contacts" with the forum.  Burger King, 471 U.S. at 476

23 (citation omitted).

24          Purposeful direction is evaluated under the three-part

25 "effects" test traceable to the United States Supreme Court's

26 decision in Calder v. Jones, 465 U.S. 783 (1984).  Schwarzenegger

27 v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. Cal. 2004).

28 Under Calder, "the 'effects' test requires that the defendant

                              13

allegedly have (1) committed an intentional act, (2) expressly
aimed at the forum state, (3) causing harm that the defendant
knows is likely to be suffered in the forum state." Dole Food
Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  However,
courts in this circuit are warned not to focus too narrowly on
the test's third prong--the effects prong--holding that
"something more" is needed in addition to a mere foreseeable
effect.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir.
2006).  In other words, courts must recognize that the "effects"
test cannot stand for the broad proposition that a foreign act
with foreseeable effects in the forum state will always give rise
to specific jurisdiction, but rather must demonstrate "something
more"--i.e., "what the Supreme Court described as 'express
aiming' at the forum state." Id. (citation omitted).  Thus, the
pertinent inquiry here is whether defendant's conduct was
expressly aimed at California.

Obligated only to present a prima facie case, see Data
Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th
Cir. Cal. 1977) ("Any greater burden . . . would permit a
defendant to obtain a dismissal simply by controverting the facts
established by a plaintiff."), plaintiff sufficiently alleges
that defendant acted intentionally in selecting the "NutriThrive"
mark to promote its TPN-related product line with full knowledge
of plaintiff and its "Nutrishare" mark.  See Dole Foods Co., 303
F.3d at 1111 ("Because [the plaintiff] has sufficiently alleged
that [the defendants] acted intentionally, we skip to the
'express aiming' requirement.").

Plaintiff contends that at least three grounds exist

14

whereby defendant's conduct satisfies the "expressly aimed" requirement, which is met when the defendant is alleged to have engaged in conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.  <u>Id.</u>  Specifically, plaintiff asserts that defendant maintains an interactive website that reaches out to California residents, actively solicits new California customers, and has ongoing commercial relationships with California customers.

Whether defendant's maintenance of its website constitutes purposeful direction necessitates application of the "sliding scale" approach approved by the Ninth Circuit in <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414 (9th Cir. 1997). <u>See id.</u> at 419 (adopting the test originated by the district court in <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997)).  Under the sliding scale approach, "the likelihood [that] personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." <u>Zippo Mfg. Co.</u>, 952 F. Supp. at 1124.

At one end of this sliding scale, the defendant conducts online business transactions over the Internet with residents of the forum.  <u>Id.</u>  "In such situations, jurisdiction is almost always proper" because the defendant has asserted itself "into the forum and made actual contact, often commercial, with a forum resident." <u>Callaway Golf Corp. v. Royal Canadian Golf Ass'n</u>, 125 F. Supp. 2d 1194, 1202 (C.D. Cal. 2000) (citation omitted).  At the other end of the scale are "passive" websites, through which the defendant simply posts information to those who

access the site, such as advertisements and informational pieces
about the website's host. _Id._; _see_ _id._ ("A passive Web site that
does little more than make information available to those who are
interested in it is not grounds for the exercise of personal
jurisdiction.") (citation omitted).  In the middle of the sliding
scale are "interactive" websites that, for example, allow the
user to exchange information with the defendant host site.  _Zippo_
_Mfg. Co._, 952 F. Supp. at 1124.  With respect to "interactive"
websites, courts must examine "the level of interactivity and
commercial nature of the exchange of information that occurs on
the Web site" to determine if the defendant has purposefully
availed itself of the forum to make the exercise of jurisdiction
comport with traditional notions of fair play and substantial
justice.  _Cybersell_, 130 F.3d at 420 (citing _Zippo Mfg. Co._, 952
F. Supp. at 1124).

          Here, defendant's website falls somewhere in the
middle, with certain features implicating both the passive and
business transaction ends of the sliding scale continuum.
Specifically, the website serves predominantly as a large-scale,
static advertisement for defendant's products and/or services,
and defendant does not conduct instant online transactions by
allowing prospective browsers to purchase "NutriThrive" supplies
and/or services directly over the Internet.  The website does,
however, present prospective browsers with a series of
interactive functions that elevate it beyond the scope of an
archetype "passive" website, including a "discussion board" in
which any user can post messages or chat on-line with one of one
of defendant's "consumer advocates"-- i.e., employees who are

16

also consumers of "NutriThrive" products and/or services (Okamoto Decl., Ex. B.); a "Referral" section where any browser can sign up to become a "NutriThrive consumer" or refer a patient to become a "NutriThrive consumer" (Id.); and a "Contact Us" email interface page that gives prospective browsers the ability to request further information online regarding defendant's supplies and/or services. (Id. at Ex. A.) Thus, while defendant's website does not possess many of the characteristics of websites that are undeniably sufficient to demonstrate purposeful direction at the forum state, it nonetheless could qualify as an interactive website because "even a cursory glance at the [website] clearly illustrates that the site mainly serves to advertise and promote sales of the [defendant's] service." WebZero, LLC v. ClicVU, Inc., No. 08-0504, 2008 WL 1734702, at *6 (C.D. Cal. Apr. 4, 2008); see also id. ("Despite the absence of [explicit means of business transactions], the Court finds that the site is fundamentally a commercial website because it purports to offer and provide services to visitors."); cf. Rubbercraft Corp. of Cal. v. Rubbercraft, Inc., No. 97-4070, 1997 WL 835442, at *3 (C.D. Cal. Dec. 17, 1997) (finding purposeful availment/direction based partially on the fact that defendant's used national advertising, maintained an 800 number, and operated a web-page that advertised defendant's product and gathered customer information).

        Although the website demonstrates a significant level of interactivity, defendant's stand-alone maintenance of it does not conclusively constitute purposeful direction. See Cybersell, 130 F.3d at 419-20 (declining to exercise personal jurisdiction

17

over a defendant whose website allowed users to list their
addresses with the site, indicate an interest in the defendant's
services, and view advertisements and other information posted on
the site).  However, plaintiff has sufficiently alleged
additional conduct directly targeting California--thus satisfying
the requirement of "something more."  See Rio Props. v. Rio Int'l
Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002) ("While
[defendant's] assertion [that it operates only a passive website]
may be true, operating even a passive website in conjunction with
'something more'--conduct directly targeting the forum--is
sufficient to confer personal jurisdiction.").  Specifically,
defendant's website explicitly targets California consumers with
an announcement in the "NEWS AND EVENTS" section--prominently
displayed as the centerpiece of defendant's "NutriThrive"
homepage--that it will be attending the 2008 Oley Conference held
in San Diego, California between June 26 and June 29, 2008.[3]
(Okamoto Decl. Ex. B.)  Because the majority of the Oley
Conference attendees are local home infusion customers that

---

[3]     Plaintiff also argues that defendant's subsequent
participation in the June 26-29 Oley Conference constitutes
further evidence of purposeful availment/direction for purposes
of the jurisdictional analysis.  (Okamoto Decl. ¶ 7-12.)  Because
the Oley Conference took place after plaintiff filed its
Complaint on June 4, 2008, however, the court cannot consider
allegations stemming directly from defendant's actual
participation in the event.  See Farmers Ins. Exch. v. Portage La
Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) ("Only
contacts occurring prior to the event causing the litigation may
be considered."); see also Klinghoffer v. S.N.C. Achille Lauro Ed
Altri-Gestione, 937 F.2d 44, 52 (2d Cir. 1991) (refusing to
recognize post-filing allegations for jurisdictional purposes
"because personal jurisdiction depends on the defendant's
contacts with the forum state at the time the lawsuit was
filed."); accord McFarlane v. Esquire Magazine, 74 F.3d 1296,
1301 (D.C. Cir. 1996).

1  benefit from TPN-related products and services, this

2  California-based conference serves as a crucial marketing

3  exhibition for national home infusion companies such as the

4  parties to this lawsuit.  (Okamoto Decl. ¶ 7.)  Thus, it is fair

5  to say that "[t]he website's content suggests that [defendant]

6  was looking to attract [customers] in California" insofar as it

7  "targeted specific markets including California."  <u>In-N-Out</u>

8  <u>Burgers v. Basso</u>, No. 05-1231, 2005 WL 5337562, at *2 (C.D. Cal.

9  June 27, 2005); <u>see</u> <u>id.</u> ("[B]ecause the defendant deliberately

10 directed its advertising and solicitation efforts toward

11 California residents, the purposeful availment prong is

12 satisfied."); <u>Ind. Plumbing Supply, Inc. v. Standard of Lynn,</u>

13 <u>Inc.</u>, 880 F. Supp. 743, 747 n.2 (C.D. Cal. 1995) (finding that,

14 given the California-based features apparent in its national

15 advertisement, "the defendant could reasonably anticipate that it

16 would receive some interest from California customers").

17       Defendant's alleged conduct constituting "something

18 more" is also evinced by its concession that it maintains

19 commercial relationships with two Southern California-based

20 "NutriThrive" customers.[4]  <u>See</u> <u>id.</u> at 747 (holding that the

21

---

22       [4]  Defendant contends that both of its California-based
   customers use "NutriThrive" products for enteral purposes only--a
23 method of nutrient delivery where fluid is given directly into
   the gastrointestinal tract--and thus do not compete with
24 plaintiff's TPN-related services.  This argument fails on two
   grounds.  First, plaintiff asserts that it also provides
25 competing enteral products and services to its TPN-customers
   under its "Nutrishare" mark.  (Okamoto Decl. ¶ 14.)  Second,
26 because both enteral and TPN products and services relate to
   digestive/ gastrointestinal compications, the two methods share a
27 close proximity to one another and could reasonably implicate
   customer confusion.  <u>See</u> <u>Entrepreneur Media v. Smith</u>, 279 F.3d
28 1135, 1147 (9th Cir. 2002) ("Related goods are those products

plaintiff demonstrated "something more" in order to base
jurisdiction in California when, in addition to its generic
national marketing campaign that was alleged to have infringed
plaintiff's trademark, "Defendant has also made two California
sales since the challenged advertisements began running."].
Moreover, plaintiff has submitted a declaration from a Southern
Californian resident who contacted defendant via the toll-free
number listed on its website. (Bundy Decl. ¶ 3.)  After simply
inquiring whether defendant offered its services in California,
defendant's head TPN pharmacist purportedly offered to send one
of defendant's nurses to California to assist the declarant with
her TPN setup.[5]  (Id.)  Subsequently, the declarant asserts that
defendant sent her a "start-up" packet, including a binder
containing "NutriThrive" promotional materials and a business

---

which would be reasonably thought by the buying public to come
from the same source if sold under the same mark.").

[5]    Defendant has objected to admission of Ms. Bundy's
conversation with defendant's head TPN pharmacist on grounds of
hearsay, lack of foundation, and lack of personal knowledge.
(Def.'s Objections to Evid. # 11.)  Ms. Bundy's declaration,
however, sufficiently establishes personal knowledge and
foundation where it provides that Ms. Bundy placed the phone
calls herself, the date she placed the calls, and the number she
dialed.  Fed. R. Evid. 104, 602.  Additionally, statements from
defendant's head TPN pharmacist are not hearsay because
communications made by defendant's employees constitute party
admissions.  Id. 801(d)(2).
        Overall, defendant raised fifteen evidentiary
objections to plaintiff's opposition and supporting materials,
made primarily on the grounds that the statements and/or
materials at issue constitute inadmissable personal opinions or
hearsay, lack personal knowledge, and/or are irrelevant.  The
court finds that the majority of these objections, made as usual
after the other side has no realistic opportunity before the
hearing to cure the alleged defects, are spurious and thereby
immaterial to the court's analysis of the motions.  To the extent
that any objected-to-evidence is relevant and relied on by the
court herein, the court overrules any asserted objections to that
evidence.

card.  (Id.); see W. Corp. v. Superior Court, 116 Cal. App. 4th
1167, 1176 (2004) (finding that marketer who "upsells" by
offering additional products or services to customer who
initially contacts marketer, knowing that customer is California
resident, avails itself of California for business even though
customer placed initial call).

          Consequently, because plaintiff sufficiently alleges
that defendant's operation of an interactive website--
supplemented by its direct marketing toward California and
ongoing relationships with California-based consumers--has caused
plaintiff harm in the state of its "principal place of business,"
Excel Plas, Inc. v. Sigmax Co., Ltd., No. 07-0578, 2007 WL
2853932, at *6 (S.D. Cal. Sept. 27, 2007), defendant has
purposefully availed/directed itself to jurisdiction in
California.  See Tech Heads, Inc. v. Desktop Serv. Ctr., 105 F.
Supp. 2d 1142, 1151 (D. Or. 2000) (holding that defendant
"intentionally availed itself of jurisdiction" by "posting a
highly commercial, highly interactive Web site on the World Wide
Web, engaging in Internet commerce with at least one [forum
state] resident, advertising in a national newspaper"); Stomp,
Inc. v. Neato L.L.C., 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999)
(finding that, by advertising its products for over the Internet,
the defendant purposefully availed itself of the forum state,
even though only two sales had been consummated with forum
residents).

                    b.    Claims Arising Out of/Related to Defendant's
                          Forum-Related Activities

          The second requirement for specific jurisdiction is

that the claims asserted in the litigation arise out of a
defendant's forum related activities.  Panavision Int'l, L.P. v.
Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).  To determine
whether a plaintiff's claims arise out of forum-related
activities, courts apply a "but for" test--i.e., but for the
defendant's forum-related activities through which it
purposefully avails itself of the forum, the plaintiff would not
have suffered injury.  Doe v. Unocal Corp., 248 F.3d 915, 925
(9th Cir. 2001).

        Here, because the purported injuries that led plaintiff
to assert its trademark and unfair competition claims against
defendant arise directly from defendant's allegedly infringing
conduct in California, plaintiff has similarly satisfied the
second requirement for specific jurisdiction.  See Rio Props. v.
Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002) ("[T]his
requirement was satisfied where [defendant's misappropriation] of
[plaintiff's] trademark had the effect of injuring [plaintiff] in
California, its home state."); Dole Food Co. v. Watts, 303 F.3d
1104, 1114 (9th Cir. 2002) ("It is obvious that [plaintiff's]
claims against [defendants] arise directly out of their contacts
with the forum [where] the contacts between [defendants] and the
forum state are integral and essential parts of the alleged
fraudulent scheme on which [plaintiff] bases its suit.");
WebZero, L.L.C. v. ClicVU, Inc., No. 08-0504, 2008 WL 1734702, at
*7 (C.D. Cal. Apr. 4, 2008) ("[I]t is plainly evident that
[plaintiff's] patent infringement suit directly relates to
ClivVU's allegedly infringing services . . . in California.").
                c.    Reasonableness of Exercising Jurisdiction

                                22

Because plaintiff has succeeded in satisfying both of the first two prongs in the specific jurisdiction analysis, defendant now has the burden of convincing the court that jurisdiction is nonetheless unreasonable.  See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) ("To avoid jurisdiction, [the defendant] must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985))).  The Ninth Circuit has articulated the following seven factors to determine whether the exercise of jurisdiction over a non-resident defendant comports with fair play and substantial justice, none of which is dispositive:

> (1) the extent of the [defendant's] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the [defendant's] state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

### i.    Defendant's Purposeful Interjection

A district court must usually begin by considering the extent to which the defendant, by its alleged activities, purposefully interjected itself into the forum.  Id. at 1488.  As defendant acknowledges, however, because the Ninth Circuit has found that "[t]he factor of purposeful interjection is analogous to the purposeful direction analysis" discussed above, this factor does not weigh against jurisdiction where the court has

23

already determined that defendant purposefully directed its
activities at the forum state.  Sinatra v. Nat'l Enquirer, Inc.,
854 F.2d 1191, 1199 (9th Cir. 1988); see also Roth v. Garcia
Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (finding that "[i]n
light of the first prong of purposeful availment, analysis of
this first factor in the third prong would be redundant" and thus
"there is no need to analyze this first factor separately");
Corp. Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 790 (9th Cir.
1987) ("Ninth Circuit cases give the 'purposeful interjectment'
factor no weight once it is shown that the defendant purposefully
directed its activities to the forum state . . . .").

ii.  Defendant's Burden of Litigating in

California

The court must also consider the burden that litigating
in the forum state places on the nonresident defendant.  Callaway
Golf Corp. v. Royal Canadian Golf Ass'n, 125 F. Supp. 2d 1194,
1205 (C.D. Cal. 2000).  While acknowledging that defendant, whose
principal place of business is in Ohio, would be inconvenienced
by having to defend itself in California, "with the advances in
transportation and telecommunications and the increasing
interstate practice of law, any burden is substantially less than
in days past."[6]  Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir.
2007); see also Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d
126, 128-29 (9th Cir. 1995) (noting that unless the

---

[6]  In fact, the court takes judicial notice of the fact
that defendant's counsel is headquartered in San Diego,
California.  See Fed. R. Evid. 201 (allowing courts to take
judicial notice of matters that are "capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned").

24

1  "inconvenience is so great as to constitute a deprivation of due

2  process, it will not overcome clear justifications for the

3  exercise of jurisdiction.") (citation omitted).  Thus, any weight

4  gleaned from this factor in defendant's favor is negligible.

5  iii. <u>Sovereignty Interests</u>

6  Both parties agree that, to the extent the court must

7  consider whether the exercise of jurisdiction in California would

8  conflict with the sovereignty interests of defendant's

9  alternative forum of Ohio, <u>Panavision Int'l, L.P. v. Toeppen</u>, 141

10 F.3d 1316, 1323 (9th Cir. 1998), this factor is inapplicable

11 "because there is no conflict between the sovereignty of Ohio

12 and California."  (Pl.'s Opp'n to Def.'s Mot. to Dismiss

13 23:12-13; Def.'s Reply in Supp. of Mot. to Dismiss 15:3-5.)

14 iv.  <u>State's Interest</u>

15 Because "California maintains a strong interest in

16 providing an effective means of redress for its residents [who

17 are] tortiously injured," <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11

18 F.3d 1482, 1489 (9th Cir. 1993) (internal citations omitted),

19 this factor weighs in plaintiff's favor.  <u>See</u> <u>Dole Food Co. v.</u>

20 <u>Watts</u>, 303 F.3d 1104, 1116 (9th Cir. 2002) ("Since [plaintiff's]

21 principal place of business is California, this factor favors

22 plaintiff."); <u>accord</u> <u>Panavision Int'l, L.P.</u>, 141 F.3d at 1323.

23 v.  <u>Efficiency of the Forum</u>

24 The "efficiency of the forum" factor focuses on "where

25 the witnesses and the evidence are likely to be located."

26 <u>Core-Vent Corp.</u>, 11 F.3d at 1489.  The court recognizes that

27 witnesses will presumably come from both California and Ohio, but

28 the majority of witnesses, as well as evidence related to

defendant's infringing conduct, appear to be located in California. Thus, this factor also weighs in favor of plaintiff.

### vi. Convenience and Effectiveness of Relief for Plaintiff

"Although the importance of the forum to the plaintiff nominally remains part of this test, cases have cast doubt on its significance." Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995) (citing Core-Vent Corp., 11 F.3d at 1490). As the Ninth Circuit has previously stated, "[n]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." Roth v. Garcia Marquez, 942 F.2d 617, 624 (9th Cir. 1991); see also Dole Food Co., Inc., 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's convenience is not of paramount importance."). Consequently, this factor does not significantly influence the court's analysis.

### vii. Availability of an Alternative Forum

Plaintiff fails to demonstrate that an alternative forum, presumably Ohio, is either unavailable or unable to effectively adjudicate the instant dispute. Defendant has not, however, identified a "regulatory or policy interest[ that would be] served by the exercise of jurisdiction in [the alternative forum], making it unlikely that [the alternative forum] possesses a strong interest in providing a forum to resolve this suit." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1201 (9th Cir. 1988). Moreover, "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." Id. (citation omitted).

1    In balancing the reasonableness factors, the court

2 concludes that defendant has failed to present a compelling case

3 that the exercise of jurisdiction in California would be

4 unreasonable.  See Caruth, 59 F.3d at 128 ("Since [defendant]

5 purposefully availed itself of the forum state, we begin with a

6 presumption of reasonableness which can only be overcome by a

7 'compelling case that the presence of some other considerations

8 would render jurisdiction unreasonable.'") (citation omitted).

9 Accordingly, because plaintiff's claims arise from defendant's

10 purposefully directed, forum-related conduct, the court will deny

11 defendant's motion to dismiss for lack of personal jurisdiction.

12    B.    Motion to Dismiss for Improper Venue or, Alternatively,

13          Motion to Transfer Venue

14    Defendant next argues that, even if susceptible to

15 personal jurisdiction in California, plaintiff's assertion of

16 venue in this district is nonetheless improper and the court

17 should dismiss the action or, alternatively, transfer it to the

18 Southern District of California pursuant to 28 U.S.C. § 1406(a).

19 Under § 1406(a), if an action is filed in the wrong district, the

20 court must, upon timely motion, dismiss the action or, if it be

21 in the interest of justice, order transfer to any district where

22 the "action could have been brought."  28 U.S.C. § 1406(a); see

23 also Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d

24 1174, 1181 (9th Cir. 2004) ("A defendant over whom personal

25 jurisdiction exists but for whom venue is improper may move for

26 dismissal or transfer for improper venue under 28 U.S.C. §

27 1406(a).").  When venue is challenged under § 1406(a), the

28 plaintiff bears the burden of establishing that venue is in the

27

proper forum.  See Airola v. King, 505 F. Supp. 30, 31 (D. Az.
1980); see also Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235,
1243 (E.D. Cal. 2005) ("Plaintiff has the burden of proving that
venue is proper in the district in which the suit was
initiated.").

          Venue in federal Lanham Act cases is governed by the
general venue statute, 28 U.S.C. § 1391(b), which states that
venue is proper in a judicial district (1) in which any defendant
resides, if all defendants reside in the same state; (2) in which
a substantial part of the events or omissions giving rise to the
claim occurred; or (3) in which any defendant may be found, if
there is no other district in which the action may be brought.
Id. § 1391(b)(1)-(3).  "[A] defendant that is a corporation shall
be deemed to reside in any judicial district in which it is
subject to personal jurisdiction at the time the action is
commenced."  Id. § 1391(c).  However, "this does not mean that
venue is proper in any district where defendant could be
subjected to service."  Johnson Creative Arts v. Wool Masters,
743 F.2d 947, 950 (1st Cir. 1984).  Rather, in states like
California that have more than one judicial district, "such
corporation shall be deemed to reside in any district in that
State within which its contacts would be sufficient to subject it
to personal jurisdiction if that district were a separate State."
28 U.S.C. § 1391(c).  "This effectively turns the venue question
into a personal jurisdiction analysis, treating the Eastern
District of California as a state."  Honor Plastic Indus. v.
Lollicup USA, Inc., No. 06-0707, 2006 WL 2792812, at *5 (E.D.
Cal. Sept. 26, 2006).

Given § 1391(c)'s express instruction, plaintiff must satisfy its burden by demonstrating the existence of substantial contacts or purposeful avialment/direction by which defendant has subjected itself to personal jurisdiction in the Eastern District of California.[7] Plaintiff's "demonstration" of such contacts and/or conduct is limited to its conclusory assertions that personal jurisdiction exists in this district because (1) defendant has registered with the California State Board of Pharmacy in Sacramento and appointed an agent for service of process, and (2) a woman named "Jessi" from Redding, California purportedly posted an online message indicating that she had engaged in discussions with defendant about possible treatment.

First, as thoroughly addressed above, see supra, Section II.A.1, substantial due process concerns prevent the exercise of personal jurisdiction over defendant based solely on compliance with a state statute such as the one at issue here-- particularly when registration and agent designation took place in Sacramento purely because Sacramento, as the State capital, is

_____

[7]    In the event the court remained unconvinced as to the propriety of either personal jurisdiction or venue after its consideration of plaintiff's evidence and arguments, plaintiff had initially requested a continuance for additional discovery related solely to jurisdiction and/or venue. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 27:10-12); see also Bulldog W. Equip. v. Mapcon, Inc., No. 06-2183, 2007 WL 973970, at *8 (D. Ariz. Mar. 30, 2007) ("[U]pon a request to permit discovery or an evidentiary hearing on a matter of personal jurisdiction, 'the trial court is vested with broad discretion [to deny such request] and will not be reversed except upon the clearest of showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'" (quoting Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977))).    During subsequent oral argument on the instant motions, however, plaintiff's counsel explicitly withdrew this request and instead elected to have the court decide the matter based on the already-submitted materials.

1  home to the California State Board of Pharmacy.  <u>See, e.g.</u>,

2  <u>Ratliff v. Cooper Labs., Inc.</u>, 444 F.2d 745, 748 (4th Cir. 1971)

3  ("The principles of due process require a firmer foundation than

4  mere compliance with state domestication statutes.").

5        Second, plaintiff has failed to present the court with

6  a declaration from, or any actual relevant evidence ascertaining

7  the identity or whereabouts of, "Jessi."  Instead, plaintiff

8  offers nothing more than a printout of an online bulletin board

9  from a third-party website (www.parent-2-parent.com) on which

10  several thousand users have posted messages, one of which is

11  submitted under the username "Jessi" and indicates that this user

12  has been in contact with defendant.[8]  (Okamoto Decl. Ex. D); <u>cf.</u>

13  <u>Earth Prods., Inc. v. Meynard Designs, Inc.</u>, No. 05-1326, 2006 WL

14  2192124, at *2 (W.D. Wash. July 31, 2006) (finding that venue in

15  the district was improper where the defendant's letter to a

16  retailer in the district "constitutes the only evidence regarding

17  [defendant's] use of the allegedly infringing trademark in [the

18  district]").  Defendant categorically denies plaintiff's

19  assertions that it has initiated contact and/or entered into

20  commercial relationships with any prospective customers in this

21  district, including "Jessi."  (Rielly Decl. ¶ 13; Pfister Decl. ¶

22  8.)  Defendant further reasserts under the penalty of perjury

23  that it only has had three California-based customers in its

24  _____

25      [8]   Even if the court was inclined to bestow any weight to
    "Jessi's" purported bulletin board posting, such evidence must be
26  rejected on hearsay grounds because plaintiff is offering the
    online statement for the truth of the matter asserted--i.e., that
27  "Jessi" had been in contact with defendant.  <u>See</u> Fed. R. of Evid.
    801(c) ("'Hearsay' is a statement, other than one made by the
28  declarant while testifying at the trial or hearing, offered in
    evidence to prove the truth of the matter asserted.").

existence, all of whom are based in Southern California and only two of which use "NutriThrive" products. (Rielly Decl. ¶ 13); see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (finding that "plaintiff cannot 'simply rest on [] bare allegations'") (citation omitted); Jaliwa v. Concerned Citizens of S. Cent. L.A., No. 06-2617, 2007 WL 2021818, at *4 (S.D. Cal. July 10, 2007) ("[Plaintiff's] bare assertion of belief that [defendant] resides in this district is insufficient to satisfy Plaintiff's burden of establishing that [defendant] resides in this district.").

Consequently, because it is "essentially uncontroverted that defendant's business contacts with the [Eastern] District have been extremely limited" (general jurisdiction) and "there have been minimal, if any, 'events or omissions' by defendant in the [Eastern] District giving rise to plaintiff's claims" (specific jurisdiction), the Eastern District--as a hypothetical separate state--could not exercise personal jurisdiction over defendant and thus plaintiff has failed to demonstrate that venue is proper in this district. Jamba Juice Co. v. Jamba Group, No. 01-4846, 2002 WL 1034040, at *2-3 (N.D. Cal. May 15, 2002); see also Kelly v. Qualitest Pharms., Inc., No. 06-0116, 2006 WL 2536627, at *11 (E.D. Cal. Aug. 31, 2006) (finding that, because "[t]he burden was on Plaintiff to show that venue was proper" and "the allegations indicate [only] attenuated conduct by Defendant," "Plaintiff has failed to meet her burden of showing that venue is proper in the Eastern District of California"); Injen Tech. Co. Ltd. v. Advanced Engine Mgmt., 270 F. Supp. 2d 1189, 1196 (S.D. Cal. 2003) (holding that because defendant did

31

1  not sell infringing products in the Southern District of
2  California, "the Court concludes that if the Southern District of
3  California were a separate forum state, the defendant's contacts
4  with the district would be insufficient to justify the Court's
5  exercise of specific jurisdiction"); <u>Jamba Juice Co.</u>, 2002 WL
6  1034040, at *3 (finding that plaintiff failed to demonstrate
7  proper venue in the Northern District of California where the
8  only evidence submitted to supplement plaintiff's bare
9  allegations showed that "defendant had no clients in northern
10  California in its client database[, d]efendant does not advertise
11  in the yellow pages in the Northern District[, d]efendant does no
12  direct advertising in northern California, nor does defendant
13  send any advertising mailers, brochures or letters into northern
14  California. . . . Defendant, in short, does not direct any
15  business activities at the Northern District, nor profit from any
16  business activities in this district").

17      Because plaintiff has failed to meet its burden, the
18  court, in the interests of justice, will exercise its discretion
19  to transfer the action under 28 U.S.C. § 1406(a) to a venue that
20  is appropriate. <u>See</u> <u>Shell v. Shell Oil Co.</u>, 165 F. Supp. 2d
21  1096, 1103 (C.D. Cal. 2001) (noting that, under § 1406(a), "[i]f
22  a plaintiff commences an action in a district in which venue is
23  not proper," "[t]he court has some discretion in choosing between
24  [dismissing or transferring], though generally it is preferred to
25  transfer the case rather than dismissing it altogether"). "If
26  the Court's decision is to transfer, rather than dismiss, the
27  transfer shall be made pursuant to a proper determination of
28  venue pursuant to 28 U.S.C. § 1391[(b)]." <u>Da Cruz v. Princess</u>

Cruise Lines, Inc., No. 00-0867, 2000 WL 1585695, at *2 (N.D. Cal. Oct. 12, 2000).

Defendant has requested transfer under § 1406(a) to the Southern District of California, and the court agrees that this venue is proper under § 1391(b) because a "substantial part of the events or omissions giving rise to the claim occurred" in San Diego particularly and Southern California generally.  28 U.S.C. § 1391(b)(2).  Specifically, the "passing off" of defendant's allegedly infringing trademark would have occurred in the context of defendant's sales of its "NutriThrive" products and/or services to its California customers, all of whom are located in Southern California.  See Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases of trade-mark infringement and unfair competition, the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's [product].");  see also Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) ("The place where the alleged passing off occurred . . . provides an obviously correct venue.").

Additionally, defendant's advertisement announcing its upcoming presence at San Diego's Oley Conference--prominently featured on defendant's website as an opportunity for local attendees to meet and associate with "NutriThrive" representatives--also implicates the very events and circumstances giving rise to plaintiff's instant claims.  Chiu v. Mann, No. 02-4590, 2003 WL 716247, at *3 (N.D. Cal. Feb. 24, 2003) ("Venue is also improper in the Northern District of California, because the events giving rise to plaintiff's claims

33

occurred . . . within the Central District of California."). Finally, although plaintiff has submitted a declaration from Kathryn Bundy stating that defendant's solicited her and therein sent her a catalog of its services, it is nonetheless undisputed that Ms. Bundy also resides in Southern California.  (Bundy Decl. ¶ 1.)

Accordingly, because the interests of justice favor the intrastate transfer of this action to a proper venue pursuant to § 1406(a) as opposed to plenary dismissal, the court will deny defendant's motion to dismiss but grant defendant's motion to transfer to the Southern District of California.  See, e.g., Jaliwa v. Concerned Citizens of S. Cent. L.A., No. 06-2617, 2007 WL 2021818, at *4 (S.D. Cal. July 10, 2007) (transferring case from the Southern District of California pursuant to § 1406(a) based on plaintiff's failure to establish proper venue and because "[t]his action could have been, and should have been, brought in the Central District of California . . . where the events that are the subject of this Complaint took place"); Injen Tech. Co. Ltd. v. Advanced Engine Mgmt., 270 F. Supp. 2d 1189, 1195 (S.D. Cal. 2003) (transferring infringement case where "Defendant [] does not 'reside' in the Southern District of California for purposes of 28 U.S.C. § 1391(c) and, therefore, venue in this district is improper[; v]enue, however, clearly is proper in the Central District of California"); Jamba Juice Co. v. Jamba Group, No. 01-4846, 2002 WL 1034040, at *3 (N.D. Cal. May 15, 2002) (transferring action from the Northern District of California pursuant to § 1406(a) after a finding of improper venue because "[v]enue is undoubtedly proper in the Central

34

District of California"); <u>Da Cruz v. Princess Cruise Lines, Inc.</u>,
No. 00-0867, 2000 WL 1585695, at *5 (N.D. Cal. Oct. 12, 2000)
(exercising discretion under § 1406(a) to transfer the case from
Northern District of California, where venue was deemed improper,
because "it appears to this Court that venue properly lies in the
Central District of California, since defendant could be said to
'reside' there in accordance with the test for general personal
jurisdiction described above").

IT IS THEREFORE ORDERED that:

(1) defendant's motion to dismiss plaintiff's Complaint
for lack of personal jurisdiction be, and the same hereby is,
DENIED; and

(2) defendant's motion to transfer based on improper
venue be, and the same hereby is, GRANTED.

Pursuant to the provisions of 28 U.S.C. § 1406(a), this
case is hereby ordered TRANSFERRED to the United States District
Court for the Southern District of California for all further
proceedings.

DATED:  August 14, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE