1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

NUTRISHARE, INC., a California
corporation,

CASE NO. 08 CV 1493 JM (BLM)

12

Plaintiff,

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION

13

vs.

14

BIORx, LLC, an Ohio Limited Liability
Company,

15

Defendant.

16
17

## I. Background

18

Plaintiff Nutrishare, Inc. (hereinafter "Nutrishare") brought this action alleging trademark

19

infringement and unfair competition stemming from Defendant BioRx, LLC's use of its "NutriThrive"

20

mark.[1]  Plaintiff filed its complaint in the Eastern District of California on June 4, 2008, and served

21

Defendant on June 26, 2008. Doc. Nos. 1, 12.  Based on Defendant BioRx's motion contesting venue,

22

the case was transferred to the Southern District of California by order entered August 14, 2008. Doc.

23

No. 63.  Plaintiff's motion for preliminary injunction was filed June 24, 2008, and with delays

24
25
26
27
28

[1]Nutrishare and BioRx (under its NutriThrive label) both provide pharmacy products and services to individuals requiring total parenteral nutrition ("TPN") in their homes.  TPN involves intravenous administration of nutrients to those whose gastrointestinal systems have deteriorated to such a degree they can no longer eat and digest food. Compl. ¶ 1.  BioRx also markets products and services in the enteral nutrition area, which involves administration through a tube placed in the nose, stomach or small intestine. Compl. ¶ 1.

08cv1493

associated with the transfer of venue, was heard before this court on September 29, 2008.  Doc. No. 6.  Nutrishare seeks a preliminary injunction prohibiting BioRx from:

- using the name "NutriThrive," or any variation of the term "nutri," as a source identifier for itself, any related entities, or the products and services it offers;

- using the domain name www.nutrithrive.com or any other domain name involving the term "nutri" or any variation thereof;

- making any references to the term "NutriThrive" on any websites, including but not limited to www.nutrithrive.com, www.biorx.com, and any other websites;

- causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of Defendant's products and services; or

- otherwise infringing Nutrishare's mark.

## II.  Legal Standards for Preliminary Injunction

To prevail on a motion for preliminary injunction, Plaintiff Nutrishare must show:  (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury if preliminary relief is not granted; (3) a balance of the hardships favoring Plaintiff; and (4) advancement of the public interest, where warranted.  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)(quoting *Earth Island Inst. v. U.S. Forestry Service*, 351 F.3d 1291, 1297 (9th Cir. 2003)).  Under the Ninth Circuit's alternative test, the court may grant the injunction if Nutrishare demonstrates either:  (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions are raised and the balance of hardships tips sharply in its favor.  *Id.*

## III.  Likelihood of Success on the Merits

Nutrishare seeks an injunction based on BioRx's alleged violation of sections 32(1) and 43(a) of the Lanham Act.  15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1).  To demonstrate a likelihood of success under either of these statutes, Nutrishare must establish a likelihood of confusion due to BioRx's use of a mark that is similar to a valid, protectable trademark of Nutrishare.  See *Brookfield*

*Commc'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999)(citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).

### A.   "Nutrishare" as a Valid, Protectable Mark

Nutrishare registered its marks on the Principal Register at the USPTO.  Pl. Mem. 12:1-2. These registrations constitute *prima facie* evidence of the validity of the marks and of Nutrishare's exclusive domestic right to use the marks on the goods and services specified in the registration.  See 15 U.S.C. §§ 1057(b); 1072; 1115(a).  BioRx does not dispute the validity of Nutrishare's trademarks.

### B.   Likelihood of Confusion

In assessing the likelihood of consumer confusion, the Ninth Circuit looks to the eight *Sleekcraft* factors to guide its analysis.  These factors are:  (1) strength of the plaintiff's mark; (2) relatedness or proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  *Sleekcraft*, 599 F.2d at 348-49; *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  "The confusion must 'be probable, not simply a possibility.'"  *Murray v. Cable Nat. Broadcasting Co.*, 86 F.3d 858 (9th Cir.1996), cert. denied, 519 U.S. 1058 (1997)(quoting *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987)).

*1.  Strength of Plaintiff's Mark*

While arbitrary and fanciful marks are "strong," entitled to maximum protection, descriptive and suggestive marks are considered "weak" and are afforded limited trademark protection. *Sleekcraft*, 599 F.2d at 349.  Nutrishare's mark qualifies as a suggestive, rather than arbitrary, term for TPN products. Pl. Mem. 16:8-10; *Nutri/System, Inc. v. Con-Stan Industries*, 809 F.2d 601 (9th Cir. 1993)("nutri" prefix for nutritional products is suggestive).  Nutrishare contends its years of advertising and promotion increased the strength of its mark, affording it greater protection.  Pl. Mem. 16:8-10.  However, in *Sleekcraft*, the court expressly rejected the idea that extensive advertising automatically transforms a suggestive mark into a strong one.  *Sleekcraft*, 599 F.2d at 350.

Advertising is just one of many factors relevant to a determination of a mark's overall strength. *Nutri/System*, 809 F.2d at 605. Given that Nutrishare has been the only exclusive home-based TPN provider for 17 years, and has expended significant time and resources building its unique position in the marketplace, its promotional efforts may have strengthened its mark to some degree. This factor is neutral, favoring neither party.

### 2. Relatedness or Proximity of the Goods

Here, the products and services offered by the parties substantially overlap. Both companies use their trademarks to sell TPN products, services, website support, and educational products, to home-based TPN consumers. This factor favors BioRx.

### 3. Similarity of the Marks

The similarity of marks "has always been considered a critical question in the likelihood-of-confusion analysis." See *GoTo.com*, 202 F.3d at 1205. Similarity of marks is assessed "in terms of their sight, sound, and meaning." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir.1993)(citations omitted). Moreover, the "validity and distinctiveness of a composite trademark" is not judged by an examination of its parts, but rather "by viewing the trademark as a whole, as it appears in the marketplace." *Id.*

Nevertheless, Nutrishare first parses the marks into components and argues common use of the "nutri" prefix renders the marks confusingly similar. While use of the same "first term of a composite mark fosters confusion, this characteristic alone does not resolve the similarity analysis." *Russell v. Caesar*, 62 U.S.P.Q.2d 1125, 1129 (N.D. Cal. 2001)("RABBIT RIDGE" and "RABBIT HILL" for wine). The *Russell* court expressly noted the term "Rabbit" was given greater weight because it is "wholly and uniquely distinctive" when used in connection with wine. *Id.* at 1129 (citing *E. & J. Gallo Winery*, 782 F.Supp. 457, 464 (N.D.Cal. 1991)). On facts more closely aligned with the present case, the *Nutri/System* court found "Nutri-System" and "Nutri-Trim" were not confusingly similar, despite their use of the same, *suggestive*, prefix. *Nutri/System*, 809 F.2d at 605.

As required under *Official Airline*, 6 F.3d at 1392, Nutrishare does address analysis of the marks as a whole, as they are found in the marketplace, but maintains they are still confusingly similar.  However, despite the common use of the "nutri" prefix, the marks differ in their overall pronunciations and  connotation.[2] See *Guaber, S.P.A. v. Nutri-metics Int'l, Inc.*, 1991 U.S. App. LEXIS 10842, *3 (Fed. Cir. 1991)("NEUTROMED" and "NUTRI-METRICS" for personal care products were confusingly similar because of the common prefix plus the marks' virtually identical pronunciations and confusingly similar connotations).  Examination of the actual logos reveals significant differences:  Nutrishare's includes a stylized IV bag and tubing and a person's face, whereas NutriThrive's logo employs a different font, a slogan, and an artistic arc of circles connecting the two "i" letters in the company name. Pfister Decl. Ex. B.  That the parties use similar terms of art in their ads ("clinical outcomes," "quality of life"), place ads in the same Oley Foundation newsletter, and target the same customers, are functions of the small and specific area of business the parties have chosen.  These contextual issues seem more relevant to the relatedness of goods factor, and should not bear significantly on the similarity of the marks themselves.

Here, the marks used by the parties, viewed as a whole, are not significantly similar.  Although it is a close question, this factor favors BioRx.

*4.  Evidence of Actual Confusion*

In support of this factor, Nutrishare presents the declarations of several medical professionals alleging actual confusion already exists in the marketplace.  See Okamoto Decl., Nishikawa Decl., Wallin Decl., Stone Decl.  In the majority of the offered declarations, reports of confusion are second-hand, and involve medical professionals seeking clarification of the relationship between Nutrishare and NutriThrive.  In only one declaration does Nutrishare provide a first-person account which attributes any confusion between the products to the similarity of the company names.  Stone Decl. Where parties use an allegedly similar mark in the same market for the same goods, "several dozen inquiries over the years about whether the parties were related," standing alone, were found to be "too

_____

[2]The records shows BioRx chose NutriThrive in particular for the "thrive" component's ability to convey wellness and positive energy.  Opp. 4:1-3.

ambiguous to demonstrate actual confusion."   *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842, fn.7 (9th

Cir. 2002); See *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1451 (9th Cir.

1988).  Absent further development of the record, this factor is neutral, favoring neither party.

### 5.  Marketing Channels Used

The parties use identical marketing channels, including attendance at the Oley Foundation

Conference, sponsorship of the foundation, advertising in the foundation newsletter, maintaining an

interactive website, and in-person meetings with health care professionals.  Pl. Mem. 16:22-26.  In

such a specialized market, there do not appear to be any alternative marketing channels.  However,

since Defendant makes no arguments on this point, the factor weighs in favor of Nutrishare.

### 6.  Type of Goods and Degree of Care Exercised by Purchasers

A showing of greater complexity of the goods and sophistication of consumers weighs against

a likelihood of confusion.  As specialized, expensive, nutritional products that meet a critical medical

need, the parties' products are generally purchased with great care.  Opp. 14:5-7, 12-13.  Regardless

of whether the intended customers are doctors or patients, consumers of such products are generally

experienced buyers who are educated about their conditions, and are therefore more sophisticated than

the average consumer.  Opp. 14.  This factor weighs in favor of BioRx.

### 7.  Defendant's Intent in Selecting the Mark

Nutrishare strenuously argues BioRx selected "NutriThrive" as its mark intentionally in order

to capitalize on Nutrishare's goodwill and reputation in the TPN field.  Pl. Mem. 17-18.  "An intent

to confuse consumers is not required for a finding of trademark infringement."  *Brookfield*, 174 F.3d

at 1059.  However, "the presence of intent can constitute strong evidence of confusion."  *Daddy's*

*Junky Music Stores v. Big Daddy's Family Music*, 109 F.3d 275, 287 (9th Cir. 1997).

According to Nutrishare, BioRx's adoption of a mark comprising the prefix "nutri," made with

actual and constructive knowledge of Plaintiff's mark, constitutes an intent to deceive.  *Id.*; Pl. Mem.

17:10-18.  Such a presumption may be appropriate for an arbitrary or fanciful mark, but it is less so for a weaker mark.

Nutrishare points to similarities in the parties' advertising language (which both include terms of art such as "quality of life" and "clinical outcomes"), selection of advertising media (sponsorship of the non-profit Oley Foundation and advertising in its newsletter), and website content ("family" of patients, online forum for patients), as evidence of BioRx's intent.  Pl. Mem. 17-18.  However, Nutrishare has made no copyright claims, and in such a tight, specialized field, there are limited marketing avenues and terms of art.

Finally, from a comparison of the parties' logos and advertisements, BioRx appears to have attempted to distinguish its branding from Nutrishare, within the confines of a specialized medical field.  See Pfister Decl. Exh. B; Okamoto Decl. Exh. E.  BioRx chose its mark from a pool of fifty possible names, with assistance from a focus group of nutrition professionals, which chose the name based on its connotation of "wellness and positive energy."  Opp. 3-4.

The evidence on the record fails to show convincingly that BioRx selected NutriThrive to free-ride off Plaintiff's goodwill; therefore, this factor is neutral.

*8.  Likelihood of Expansion of Product Lines*

As the parties' product lines already overlap in the TPN field, this factor is less relevant to the likelihood of confusion analysis.

Based on an analysis of the *Sleekcraft* factors, Plaintiff fails to demonstrate a strong or probable likelihood of success on the merits.

**IV.  Irreparable Harm**

Although "irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim," Nutrishare failed to demonstrate a strong or probable likelihood of success, and is not entitled to the presumption. *Brookfield*, 174 F.3d at 1066.  Nutrishare alleges it will suffer irreparable harm because of:  1) its 15-year investment in the "Nutrishare" name;

2) some minor differences in the range of product and services offerings between the two companies; and 3) unsubstantiated allegations that NutriThrive products are inferior, unaccredited by the Accreditation Commission for Health Care (ACHC), and potentially dangerous to consumers.  Pl. Mem. 19, 21.  On the other hand, BioRx argues Plaintiff's motivation stems not from actual concern about its reputation, but from NutriThrive's success in an arena Nutrishare once monopolized.  Opp. 2.  Nutrishare delayed one year after BioRx announced NutriThrive, and six months after the line was launched to file and serve its complaint, and did not oppose NutriThrive's trademark registration, nor seek a temporary restraining order.  Opp. 16, 18.  These facts, while not conclusive, weigh against a showing of irreparable harm, particularly in light of the exceedingly broad scope of the injunction it seeks.

## V.  Balance of Hardships

The balance of hardships does not weigh strongly in favor of Nutrishare.  Although BioRx may overstate the effects a preliminary injunction would have on NutriThrive ("BioRx would be required to shut down NutriThrive, to shut down the ... website, to terminate the employment of seven employees and one independent contractor ..., and to cease providing its products and services..." Opp. 19:16-19), its new business would be severely impacted.  BioRx would face choosing between halting production and services, and re-branding its newly launched NutriThrive business.  Just as Nutrishare has invested significant time and money over two decades developing its brand, so has NutriThrive, albeit on a smaller scale, over more than a year's time.  Opp. 19:24-25 ("The company has spent more than $500,000 to date in developing and promoting NutriThrive.").  Plaintiff fails to show money damages would be an inadequate remedy.

## VI.  Protection of the Public Interest

Nutrishare argued the strong public interest in avoiding confusion in the medical marketplace warrants imposition of a preliminary injunction.  Pl. Mem. 21:2-3.  On the other hand, BioRx pointed out the potential impact an injunction would have on the enteral and TPN patients who rely on its products.  In addition, healthy competition in the market would be stifled.  Opp. 20:10-12.  As both

positions have some merit, the overall effect of the public interest factor on the overall analysis is not substantial.

**VII.  Conclusion**

Nutrishare fails to demonstrate a strong or probable likelihood of success on its trademark claims or that it will suffer irreparable harm if a preliminary injunction is not granted.  The balance of hardships does not tip strongly in Nutrishare's favor.  For these reasons, the court hereby **DENIES** Nutrishare's motion for preliminary injunction (Doc. No. 6).

**IT IS SO ORDERED.**

DATED:  October 23, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties